**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| TAKEOFF TECHNOLOGIES, INC., *et al.*,[1] | ) | Case No. 24-11106 (___) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |

**DEBTORS' MOTION FOR ENTRY OF INTERIM AND**
**FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO (A)**
**CONTINUE TO OPERATE THEIR CASH MANAGEMENT SYSTEM, (B)**
**HONOR CERTAIN PREPETITION OBLIGATIONS RELATED THERETO,**
**(C) MAINTAIN EXISTING BUSINESS FORMS, (D) CONTINUE INTERCOMPANY**
**TRANSACTIONS; (II) CONFIRMING ADMINISTRATIVE EXPENSE PRIORITY FOR**
**POSTPETITION INTERCOMPANY CLAIMS; AND (III) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors")

respectfully state as follows in support of this motion ("Motion"):[2]

**Relief Requested**

1.      By this Motion, the Debtors respectfully request the entry of interim and final

orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B** (respectively, the

"Interim Order" and the "Final Order"):  (a) authorizing the Debtors to (i) continue operating the

Cash Management System (as defined herein), (ii) honor and pay the Bank Fees (as defined herein)

in the normal course, (iii) maintain existing business forms, (iv) continue to perform under and

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of the Debtors federal tax identification numbers, as applicable, are:  Takeoff Technologies, Inc. (0552); Takeoff Technologies Canada, Inc.; Takeoff Technologies Australia Pty Ltd. (ACN 639 288 958); Takeoff Technologies FZE; Takeoff International Subco India Private Limited; and Takeoff International Subco, LLC.  The location of the Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is 203 Crescent Street, Suite 203, Waltham, Massachusetts 02453.

[2]     A detailed description of the Debtors and their business, including the facts and circumstances giving rise to the Debtors' chapter 11 cases, is set forth in the *Declaration of Brett M. Anderson in Support of Chapter 11 Petitions and First Day Pleadings* filed contemporaneously herewith (the "First Day Declaration").  Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the First Day Declaration.

honor Intercompany Transactions (as defined herein) in the ordinary course of business, in their business judgment and at their sole discretion; and (b) confirming administrative expense priority for post-petition intercompany claims; and (c) granting related relief. In addition, the Debtors request that the Court schedule a final hearing within approximately twenty-eight days of the commencement of these chapter 11 cases to consider approval of this Motion on a final basis.

## Jurisdiction and Venue

2. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent, pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The statutory bases for the relief requested herein are sections 105, 345, and 363 of title 11 of the United States Code, 101–1532 (the "Bankruptcy Code"), Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rules 2015-2 and 9013-1(m).

## Background

5. Founded in 2016 by a group of former grocery executives, the Debtors operate one of the leading eGrocery, micro-fulfillment solution companies in the world. The Debtors' business

model centers around the sale, subsequent maintenance, and support of the equipment and software needed to operate micro-fulfillment centers—i.e., small, automated, robotic warehouses called micro-fulfillment centers, either placed in grocery stores or near the end-shoppers.

6.    Headquartered in Waltham, Massachusetts, with international subsidiaries organized in Canada, Australia, India, and the United Arab Emirates, the Debtors' business is global.  At their peak, the Debtors had over 300 employees working on dozens of sites across eight countries and four continents.  However, despite generating strong revenue, the Debtors failed to make material progress towards achieving profitability and suffered significant operating losses in 2022 and 2023 due to the cost pressures associated with an early-stage software company.

7.    On May 30, 2024 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.   The Debtors have contemporaneously filed a motion for procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b) and Local Rule 1015-1.  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no official committees have been appointed or designated.

**The Debtors' Cash Management System and Bank Accounts**

8.    As described in the First Day Declaration, in the ordinary course of business, the Debtors utilize an integrated, centralized cash management system to collect, concentrate, and disburse funds generated by their operations (the "Cash Management System").   The Cash Management System enables the Debtors to efficiently collect and disburse cash generated by their business, pay their financial obligations, centrally control and monitor corporate funds and available cash, reduce administrative expenses, and efficiently obtain accurate account balances and other financial data.  It is critical that the Cash Management System remain intact during these

chapter 11 cases to ensure seamless continuation of transactions and uninterrupted collection of revenues.

9.      As of the Petition Date, the Debtors maintain eighteen bank accounts (the "Bank Accounts") at the following banks: Bank of America, Chase Bank, J.P. Morgan, Silicon Valley Bank ("SVB"),[3] and US Century Bank (collectively, the "Banks").[4]  Payments to creditors are made from the Bank Accounts, in a variety of ways, including checks, drafts, wire transfers, credit cards, and automated clearinghouse ("ACH") transfers.

### Description of Cash Management System

10.     Below is a summary of the Bank Accounts with a short description for the purpose of each type of account:[5]

| BANK ACCOUNTS[6] | |
| --- | --- |
| **Category** | **Description** |
| **Main Concentration Account**<br><br>**Chase ****0972** | This account serves as the Debtors' main bank account for operations.  Funds from this account are used to fund payment obligations in the ZBA Payables Account, ZBA Payroll Account; as well as fund operational expenses payable out of the Foreign Subsidiary Operating Accounts, and investments in the Investment Account.<br><br>This account is funded primarily by customer payments and accounts receivables that are swept into it from the ZBA Customer Collections Account. |

---

[3]   Following SVB's collapse in March 2023, the FDIC was appointed as receiver.  On March 27, 2023, First Citizens Bank & Trust Company assumed all customer deposits of SVB from the FDIC and began operating all SVB branches.  First Citizens is an authorized U.S. Trustee depository: https://www.justice.gov/d9/pages/attachments/2023/05/02/r03_authorized_depository.pdf. SVB now operates as a division of First Citizens. *See* https://www.firstcitizens.com/m-a/svb.

[4]   A list and description of each of the Debtors' Bank Accounts  is attached hereto as **Exhibit C**.

[5]   A general diagram of the movement of funds within the Cash Management System is attached hereto as **Exhibit D**.

[6]   The Debtors also maintain six (6) dormant accounts at SVB (****6644, ****3645, ****0340), US Century Bank (****7854), and Bank of America (****3867, ****7631).  The aggregate balance of these accounts total approximately $7,091.  More information related to these Bank Accounts is set forth in **Exhibit C.**

| | |
|---|---|
| **ZBA Customer Collection Account**<br><br>**Chase ****7697** | This is a zero balance account that collects customer payments, accounts receivable and deposits, which is swept into the Main Concentration Account daily. |
| **ZBA Payables Account**<br><br>**Chase ****2533** | This is a zero balance account that pulls funds from the Main Concentration Account to fund payments to vendors and other operating expenses. |
| **ZBA Payroll Account**<br><br>**Chase****7606** | This is a zero balance account that pulls funds from the Main Concentration Account to fund payroll-related payments for employee wages and benefits for employees located in the United States. |
| **Payables Account**<br><br>**Bank of America ****9770** | This account funds payments to certain vendors of the Debtors, as well as operational expenses of certain foreign non debtor subsidiaries of the Debtors. |
| **Customer Collection Account**<br><br>**Bank of America ****1965** | This account collects certain customer payments, accounts receivable and deposits.  Funds from this account is used to fund payments from the Payables Account. |
| **Foreign Subsidiary Operating Accounts**<br><br>**Commonwealth Bank ****0855** | Commonwealth Bank Account ****0855 is the main operating account for Takeoff Technologies Australia Pty Ltd. (ACN 639 288 958).  It is funded by either the Main Concentration Account or Payables Account.  This account is used to fund payroll-related payments for employee wages and benefits for employees located in Australia.  It is also used to fund local tax payments in Australia as well as pay certain foreign vendors and professional service providers. |
| **Royal Bank of Canada ****4246** | Royal Bank of Canada Account ****4246 is the main operating account for Takeoff Technologies Canada, Inc.  It is funded by either the Main Concentration Account or Payables Account.  This account is primarily used to fund payroll-related payments for employee wages and benefits for employees located in Canada. |
| **ICICI Bank ****5319** | ICICI Bank ****5319 is the main operating account for Takeoff International Subco India Private Limited.  It is funded by either the Main Concentration Account or Payables Account.  This account is used to fund payroll-related payments for employee wages and benefits for employees located in India.  It is also used to fund local tax payments in India as well as pay certain foreign vendors and professional service providers. |
| **Savings Account**<br><br>**Commonwealth Bank ****0871** | |

| | Takeoff Technologies Australia Pty Ltd. (ACN 639 288 958) maintains one interest-bearing savings account at Commonwealth Bank with a nominal balance. |
|---|---|
| **Investment Account**<br><br>**JPMorgan Chase Bank ****2979** | This account is used to hold cash in excess of operating needs in accordance with the Company's investment policy.  It is funded by either the Main Concentration Account or Payables Account. |
| **International Wire and Foreign Exchange Account**<br><br>**Bank of America ****0010** | This account was established to receive international wires and execute foreign currency exchanges.  It has minimal activity. |

11. The Debtors request authority to maintain and continue to use the Bank Accounts during these Chapter 11 Cases in the ordinary course of their business, including depositing funds in, and withdrawing funds from, the Bank Accounts by usual means, including check, wire transfer, ACH transfer, draft, electronic fund transfer, centralized lockbox, or other items presented, issued, or drawn on the Bank Accounts.

## Bank Fees

12. The Debtors incur certain fees and charges in connection with the ordinary course operation of the Cash Management System, including, without limitation, those fees specified in the prepetition agreements entered into between the Debtors and the Banks (collectively, the "Bank Fees").  The Bank Fees include account maintenance charges, charges relating to ACH and wire transfers, lockbox and depository service charges, and other customary miscellaneous charges.  On average, the Debtors incur approximately $2,500 in Bank Fees per month.  In the ordinary course of business and typically on a monthly basis, the Banks charge the Debtors and deduct from the appropriate bank accounts certain service charges, and other fees, costs, and expenses.  The Debtors believe there are approximately $2,500 in Bank Fees that have accrued prepetition and are outstanding as of the Petition Date.  Accordingly, the Debtors seek approval to

pay prepetition Bank Fees up to $2,500 and to pay any post-petition Bank Fees and, for the Banks to deduct, any such Bank Fees in the ordinary course when due.

**Intercompany Transactions and Claims**

13.     In the ordinary course of business, the Debtors engage in routine business transactions with each other (the "Intercompany Transactions") resulting in intercompany receivables and payables (the "Intercompany Claims").  Accordingly, at any given time, there may be Intercompany Claims owed by one Debtor to another Debtor.  For example, Takeoff Technologies, Inc. regularly transfers cash from the Main Concentration Account and Payables Account to the Foreign Subsidiary Operating Accounts, as applicable, to cover among other things, business operations and costs such as employee payroll and benefits, payments to vendors, taxes, credit cards, insurance, and expenses incurred by the foreign Debtor.  The Intercompany Claims are reflected as journal entry receivables and payables, as applicable, in the respective Debtors' accounting systems.

14.     Intercompany Claims are not settled by actual transfers of cash by the Debtors.  The Debtors track all Intercompany Transactions electronically in their accounting system, which transactions are concurrently recorded on the applicable Debtors' balance sheet as a payable or receivable, as applicable.

15.     The Debtors maintain all records of all transactions processed through their Cash Management System and are able to ascertain, trace, and account for all Intercompany Transactions.  The Debtors will continue to track all Intercompany Transactions on a postpetition basis.  Disallowing the continued use of Intercompany Transactions would unnecessarily disrupt the Cash Management System and consequently the Debtors' operations to the detriment of the

Debtors and their creditors and other stakeholders. Accordingly, the Debtors seek authority to continue the Intercompany Transactions in the ordinary course of business.

## Business Forms

16. The Debtors utilize numerous preprinted business forms in the ordinary course of their business (including, without limitation, letterhead, purchase orders, invoices, and checks), including in connection with their Cash Management System. The Debtors would be required by the United States Trustee (the "U.S. Trustee") under the U.S. Trustee's *Operating Guidelines for Chapter 11 Cases* (the "U.S. Trustee Guidelines") to incur the expense and delay of ordering entirely new business forms referencing the Debtors' status as debtors-in-possession absent relief from the Court. To the extent necessary, the Debtors seek authority to use pre-existing business forms without such a reference in order to minimize expense to the estate. The Debtors submit that parties in interest will not be prejudiced if such relief is granted because parties doing business with the Debtors will likely be aware of their status as debtors-in-possession and, therefore, changing business forms is unnecessary and would be unduly burdensome. In accordance with Local Rule 2015-2(a), to the extent the Debtors exhaust their existing supply of checks, the Debtors will reissue checks with the designation "Debtor-in-Possession" and the corresponding case number.

## Compliance With Section 345 of the Bankruptcy Code

17. Pursuant to the U.S. Trustee Guidelines, the U.S. Trustee generally requires chapter 11 debtors to, among other things, deposit all estate funds into an account with an authorized depository (each an "Authorized Depository") that agrees to comply with the requirements of the U.S. Trustee's office.

18.     Further, section 345(a) of the Bankruptcy Code governs a debtor's cash deposits during a chapter 11 case and authorizes deposits of money as "will yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment." 11 U.S.C. § 345(b).  Section 345(b) requires a debtor's bank to post a bond, unless a debtor's funds are "insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the full faith and credit of the United States." 11 U.S.C. § 345(b).

19.     The majority of the Debtors' financial transactions—including, but not limited to, payroll for employees located in the United States, local, state and federal tax payments, and vendor payments—are transacted through Bank Accounts maintained at Authorized Depositories under the U.S. Trustee Guidelines, including the Debtors' Main Concentration Account.  The Foreign Subsidiary Operating Accounts, however, are not Authorized Depositories.  The Debtors submit, however, that the Foreign Operating Accounts are in substantial compliance with the requirements of section 345(b) of the Bankruptcy Code because these Bank Accounts are maintained at Banks that are well capitalized, financially stable, and insured by an applicable foreign agency.[7]

20.     The Cash Management System is complex and critical to the ongoing stability of the Debtors' businesses.  Relocating the Cash Management Systems, including the Foreign Subsidiary Operating Accounts, to new accounts and/or an Authorized Depository would impose an unnecessary and excessive administrative burden on the Debtors at a critical time when

---

[7]     More specifically, the Debtors' Bank Accounts at Commonwealth Bank (****0855) and (****0871) are insured up to $250,000 for each account holder under the Foreign Claims Scheme, the Australian deposit protection scheme, and has also received competitive investment-grade ratings (AA by S&P, Aa3 by Moody's, and A+ by Fitch).  The Debtors' Bank Account at Royal Bank of Canada (****4246) is similarly insured up to CAD $100,000 by the Canada Deposit Insurance Corporation, and has also received competitive investment-grade ratings (AA by S&P, AA by Moody's, and AA by Fitch).  The Debtors' Bank Account at ICIC Bank (****5319) is also insured up to INR $1,000,000 by the Deposit Insurance and Credit Guarantee Corporation, and has also received competitive investment-grade ratings (BBB by S&P, Baa3 by Moody's, and BB+ by Fitch).

management must be solely focused on consummating a value-maximizing strategic transaction for the benefit of all stakeholders in these chapter 11 cases. Therefore, the Debtors submit that the *de minimis* risk associated with those accounts is far outweighed by the harm to the Debtors and their estates from the significant disruption to the Debtors' business that would be caused by closing them. The Debtors, of course, will continue to work in good faith with the U.S. Trustee to address any concerns regarding the use of these accounts on a postpetition basis.

21.    To the extent that any of the Bank Accounts cease to comply with, or do not comply with, the requirements of section 345(b) of the Bankruptcy Code during these Chapter 11 Cases, the Debtors request that the Court grant the Debtors a forty-five day suspension, without prejudice to the Debtors' right to seek an additional suspension after the entry of the Interim Order, to either (a) bring the applicable Bank Accounts into compliance with section 345(b) of the Bankruptcy Code or (b) seek appropriate relief from the Court.[8]

**Basis for Relief**

**A.    Maintaining the Existing Cash Management System is Essential to Debtors' Operational Stability**

22.    The U.S. Trustee Guidelines require a debtor-in-possession to, among other things:

i.    establish one debtor-in-possession bank account for all estate monies required for the payment of taxes, including payroll taxes;

ii.    close all existing bank accounts and open new debtor-in-possession accounts;

iii.    maintain a separate debtor-in-possession account for cash collateral; and

iv.    obtain checks that bear the designation "debtor-in-possession" and reference the bankruptcy case number and type of account on such checks.

---

[8]    The Debtors also maintain, four dormant Bank Accounts with *de minimis* account balances at two depositories that not Authorized Depositories—SVB and US Century Bank. As discussed more fully below, since no financial transactions are processed through these accounts, the Debtors submit that "cause" exists to allow the Debtors to continue maintain these existing Bank Accounts consistent with historical practices.

23.     These requirements are designed to provide a clear line of demarcation between prepetition and postpetition claims and payments, and help protect against the inadvertent payment of prepetition claims by preventing banks from honoring checks drawn before the Petition Date. Enforcement of this provision of the U.S. Trustee Guidelines during these chapter 11 cases would severely disrupt the administration of the Debtors' estates.  Accordingly, the Debtors respectfully request authorization to operate the Bank Accounts in the same manner as was maintained in the ordinary course of business prior to the Petition Date.

24.     Continuation of the Cash Management System is permitted pursuant to section 363(c)(1) of the Bankruptcy Code, which authorizes the debtor-in-possession to "use property of the estate in the ordinary course of business without notice or a hearing."  11 U.S.C. § 363(c)(1). Additionally, courts in this and other districts have recognized that an integrated cash management system "allows efficient utilization of cash resources and recognizes the impracticalities of maintaining separate cash accounts for the many different purposes that require cash."  *In re Columbia Gas Sys.*, 136 B.R. 930, 934 (Bankr. D. Del. 1992), *aff'd in part and rev'd in part*, 997 F.2d 1039 (3d Cir. 1993).  The Third Circuit has agreed, emphasizing that requiring a debtor to maintain separate accounts "would be a huge administrative burden and economically inefficient." *Columbia Gas*, 997 F.2d at 1061; *see also Southmark Corp. v. Grosz (In re Southmark Corp.)*, 49 F.3d 1111, 1114 (5th Cir. 1995) (finding cash management system allows a debtor "to administer more efficiently and effectively its financial operations and assets").

25.     Here, continued use of the Cash Management System will facilitate these chapter 11 cases by, among other things, avoiding administrative inefficiencies and expenses associated with disrupting this system and minimizing delays in the payment of postpetition obligations.  The Debtors respectfully submit that parties in interest will not be harmed by the maintenance of the

existing Cash Management System because the Debtors employ appropriate mechanisms and internal control procedures to prevent unauthorized payments on account of obligations incurred before the Petition Date.  As such, maintaining the Cash Management System is in the best interests of the Debtors' estates.

26.     Courts in this and other districts have regularly allowed debtors in chapter 11 cases to maintain their existing cash management systems and such relief generally is non-controversial. *See, e.g.*, *In re SiO2 Medical Prods., Inc.*, 23-10366 (JTD) (Bankr. D. Del. Mar. 30, 2023) (authorizing the debtors to continue using the cash management system maintained by the debtors prepetition); *In re Carestream Health, Inc.*, No. 22-10778 (JKS) (Bankr. D. Del. Sept. 22, 2022) (same); *In re Riverbed Tech., Inc.*, No. 21-11503 (CTG) (Bankr. D. Del. Nov. 18, 2021) (same); *In re Alex and Ani, LLC*, No. 21-10918 (CTG) (Bankr. D. Del. July 14, 2021) (same); *In re HighPoint Res. Corp.*, No. 21-10565 (CSS) (Bankr. D. Del. Mar. 26, 2021) (same).[9]

27.     Furthermore, as discussed above, in the ordinary course of business, the Debtors conduct transactions through electronic wire transfers and other similar methods.  If the Debtors' ability to conduct transactions by debit, wire, credit card, ACH transfer, or other similar methods is impaired, their estates will incur additional and unnecessary costs.  Accordingly, the Debtors submit that it is in the best interests of all stakeholders for the Court to grant further relief from the U.S. Trustee Guidelines to the extent they require the Debtors to make all disbursements by check.

---

[9]    Because of the voluminous nature of the orders cited herein, such orders have not been attached to this motion. Copies of these orders are available upon request to the Debtors' proposed counsel.

**B.**     **Authorizing (i) the Banks to Continue to Maintain, Service, and Administer the Bank Accounts and (ii) the Debtors to Pay Bank Fees, Each in the Ordinary Course of Business, Is Warranted**

28.     The Debtors respectfully request that the Court authorize the Bank to continue to maintain, service, and administer the Bank Accounts as an account of the Debtors as debtors-in-possession, without interruption and in the ordinary course of business.  In this regard, the Banks should be authorized to receive, process, honor, and pay any and all checks, ACH transfers, other instructions, and drafts payable through, drawn, or directed on such Bank Accounts after the Petition Date by holders, makers, or other parties entitled to issue instructions with respect thereto; *provided*, *however*, that any check, advise, draft, or other notification that the Debtors advised the Bank to have been drawn, issued, or otherwise presented before the Petition Date may be honored by the Bank only to the extent authorized by order of the Court.

29.     The Debtors further request that the Court authorize the Banks to accept and honor all representations from the Debtors as to which checks, drafts, wires, or ACH transfers should be honored or dishonored consistent with any order of the Court and governing law, whether such checks, drafts, wires, or ACH transfers are dated before or subsequent to the Petition Date.  The Debtors also request that, to the extent the Banks honor a prepetition check or other item drawn on any account either (i) at the direction of the Debtors, (ii) in a good-faith belief that the Court has authorized such prepetition check or item to be honored, or (iii) as a result of an innocent mistake made despite the above-described protective measures, the Banks will not be deemed to be liable to the Debtors or their estates on account of such prepetition check or other item honored postpetition.  The Debtors respectfully submit that such relief is reasonable and appropriate because the Banks are not in a position to independently verify or audit whether a particular item may be paid in accordance with a Court order or otherwise.

30.     The Debtors further request that the Court authorize them to pay the Bank Fees and authorize the Banks to (i) continue to charge the Bank Fees and (ii) charge-back returned items to the applicable Bank Account, whether such items are dated before, on, or subsequent to the Petition Date, in the ordinary course of business.  The Debtors' inability to pay the prepetition Bank Fees or to continue to pay the Bank Fees in the ordinary course of business postpetition could hinder their ability to manage the Cash Management System to the detriment of the Debtors' estates.

31.     Courts in this district routinely have waived the U.S. Trustee Operating Guidelines in operating chapter 11 cases with ongoing business operations and restructuring efforts. *See, e.g.,, In re SiO2 Medical Prods., Inc.*, 23-10366 (JTD) (Bankr. D. Del. Mar. 30, 2023) (authorizing the debtors' continued use of existing bank accounts); *In re Carestream Health, Inc.*, No. 22-10778 (JKS) (Bankr. D. Del. Sept. 22, 2022) (same); *In re Riverbed Tech., Inc.*, No. 21-11503 (CTG) (Bankr. D. Del. Nov. 18, 2021) (same); *In re Alex and Ani, LLC*, No. 21-10918 (CTG) (Bankr. D. Del. July 14, 2021) (same); *In re HighPoint Res. Corp.*, No. 21-10565 (CSS) (Bankr. D. Del. Mar. 26, 2021) (same).

## C.     The Court Should Authorize Payment of Fees and Prepetition Obligations Related to the Debtor Bank Accounts

32.     Courts have recognized that it is appropriate to authorize the payment of prepetition obligations where necessary to protect and preserve the estate, including an operating business's going-concern value.  *See, e.g.*, *In re Just for Feet, Inc.*, 242 B.R. 821, 825-26 (D. Del. 1999); *see also In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175-76 (Bankr. S.D.N.Y. 1989); *Armstrong World Indus., Inc. v. James A. Phillips, Inc. (In re James A. Phillips, Inc.)*, 29 B.R. 391, 398 (S.D.N.Y. 1983).  In so doing, these courts acknowledge that several legal theories rooted in sections 105(a) and 363(b) of the Bankruptcy Code support the payment of prepetition claims.

-14-

33.     Section 363(b) of the Bankruptcy Code permits a bankruptcy court, after notice and a hearing, to authorize a debtor to "use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). "In determining whether to authorize the use, sale or lease of property of the estate under this section, courts require the debtor to show that a sound business purpose justifies such actions." *Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (D. Del. 1999) (collecting cases); *see also Armstrong World*, 29 B.R. at 397 (relying on section 363 to allow a debtor to pay prepetition claims of suppliers who were potential lien claimants because the payments were necessary for general contractors to release funds owed to debtors); *In re Ionosphere Clubs*, 98 B.R. at 175 (finding that a sound business justification existed to justify payment of certain prepetition wages); *In re Phx. Steel Corp.*, 82 B.R. 334, 335-36 (Bankr. D. Del. 1987) (requiring the debtor to show a "good business reason" for a proposed transaction under section 363(b)).

34.     Courts also authorize payment of prepetition claims in appropriate circumstances based on section 105(a) of the Bankruptcy Code. Section 105(a) of the Bankruptcy Code codifies a bankruptcy court's inherent equitable powers to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Under section 105(a), courts may authorize pre-plan payments of prepetition obligations when essential to the continued operation of a debtor's business. *See In re Just for Feet*, 242 B.R. at 825-26. Specifically, a court may use its power under section 105(a) of the Bankruptcy Code to authorize payment of prepetition obligations pursuant to the "necessity of payment" rule (also referred to as the "doctrine of necessity"). *See, e.g.*, *In re Ionosphere Clubs*, 98 B.R. at 176; *In re Lehigh & New England Ry Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (stating that courts may authorize payment of

prepetition claims when there "is the possibility that the creditor will employ an immediate economic sanction, failing such payment"); *see also In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191-92 (Bankr. D. Del. 1994) (noting that, in the Third Circuit, debtors may pay prepetition claims that are essential to the continued operation of the business). A bankruptcy court's use of its equitable powers to "authorize the payment of prepetition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept." *In re Ionosphere Clubs*, 98 B.R. at 175-76 (citing *Miltenberger v. Logansport, C. & S.W. Ry. Co.*, 106 U.S. 286 (1882)). Indeed, at least one court has recognized that there are instances when a debtor's fiduciary duty can "only be fulfilled by the preplan satisfaction of a prepetition claim." *In re CoServ*, 273 B.R. at 497.

35.     These standards are satisfied here because the payment of fees, including Bank Fees, and related prepetition obligations are necessary to maintain the Cash Management System and avoid any disruption in the administration of the Bank Accounts. The Debtors request authority to continue to pay the Bank Fees, including any prepetition Bank Fees, in the ordinary course of business, in light of the material benefit of maintaining the Cash Management System. The relief requested represents a sound exercise of the Debtors' business judgment, is necessary to avoid immediate and irreparable harm to the Debtors' estates, and is therefore justified under sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rule 6003.

**E.      Authorizing the Debtors to Continue Performing Under and Honoring Intercompany Transactions and Claims is Necessary and Appropriate**

36.     Because the Debtors engage in Intercompany Transactions on a regular basis and such transaction are common among enterprises similar to the Debtors, the Debtors believe the Intercompany Transactions are ordinary course transactions within the meaning of section 363(c)(1) of the Bankruptcy Code and, thus, do not require the Court's approval. Nonetheless, out of an abundance of caution, the Debtors are seeking express authority to engage in such

transactions on a postpetition basis.   The continued performance of the ordinary course Intercompany Transactions are integral to ensuring the Debtors' ability to operate their business as debtors in possession.

**F.      Granting Administrative Expense Priority to Postpetition Intercompany Claims is Necessary and Appropriate**

37.      The Debtors' funds are aggregated in the Cash Management System.  The Debtors track all fund transfers in their accounting system and have the ability to account for all Intercompany Transactions.   Continuation of the Intercompany Transactions in the Cash Management System is in the best interests of the Debtors, their estates, and all parties in interest. To ensure each individual Debtor will not fund, at the expense of its creditors, the operations of another Debtor, the Debtors request that all Intercompany Claims arising after the Petition Date be accorded administrative expense priority pursuant to sections 503(b)(1) and 364(b) of the Bankruptcy Code.

38.      Indeed, courts in this, and other, districts specifically have granted administrative expense priority to such postpetition intercompany claims.  *See, e.g.*, *In re Casa Systems, Inc.,* No. 24-10695 (KBO) (Bankr. D. Del. Apr. 5, 2024) (authorizing postpetition intercompany transactions and granting administrative expense priority to postpetition intercompany claims); *JoAnn Inc.,* No. 24-10418 (CTG) (Bankr. D. Del. Mar 19, 2024) (same); *In re PGX Holdings*, Case No. 23-10718 (CTG) (Bankr. D. Del. Jun. 4, 2023) (same); *In re Lannett Co., Inc.*, Case No. 23-10559 (JKS) (Bankr. D. Del. May 2, 2023) (same); *In re SiO2 Medical Prods. Inc.*, Case No. 23-10366 (JTD) (Bankr. D. Del. Mar. 29, 2023).

**G.      Modifying Certain Requirements of Section 345(b) Is Warranted**

39.      To the extent that the Cash Management System does not strictly comply with section 345 of the Bankruptcy Code, the Debtors seek a waiver of the deposit and investment

requirements set forth therein for a forty-five day period commencing upon entry of the Interim

Order, without prejudice to the Debtors' right to seek further modifications or extensions of time.

40.     Section 345(a) of the Bankruptcy Code authorizes a debtor in possession to make

deposits or investments of estate money in a manner "as will yield the maximum reasonable net

return on such money, taking into account the safety of such deposit or investment."  11 U.S.C. §

345(a).  For deposits or investments that are not "insured or guaranteed by the United States or by

a department, agency, or instrumentality of the United States or backed by the full faith and credit

of the United States," section 345(b) of the Bankruptcy Code provides that the estate must require

from the entity with which the money is deposited or invested a bond in favor of the United States

secured by the undertaking of an adequate corporate surety, "unless the court for cause orders

otherwise."  *Id.* § 345(b).  Additionally, under the U.S. Trustee Guidelines, debtors in possession

must, among other things, close prepetition bank accounts and open new "debtor in possession"

operating, payroll, and tax accounts at one or more authorized depositories.

41.     A court may, however, relieve a debtor in possession of the restrictions imposed by

section 345(b) of the Bankruptcy Code for "cause."  11 U.S.C. § 345(b).  In evaluating whether

"cause" exists, courts have considered a number of factors, including:

- the sophistication of the debtor's business;

- the size of the debtor's business operations;

- the amount of the investments involved;

- the bank ratings (Moody's and Standard & Poor) of the financial institutions where the debtor in possession funds are held;

- the complexity of the case;

- the safeguards in place within the debtor's own business for ensuring the safety of the funds;

- the debtor's ability to reorganize in the face of a failure of one or more of the financial institutions;

- the benefit to the debtor;

- the harm, if any, to the debtor;

- the harm, if any, to the estate; and

- the reasonableness of the debtor's request for relief from section 345(b) of the Bankruptcy Code requirements in light of the overall circumstances of the case.

*In re Serv. Mech. Co., Inc.*, 240 B.R. 894, 896 (Bankr. M.D. Tenn. 1999).

42.     Additionally, Local Rule 2015-2(b) provides that if a motion for a suspension of the restrictions imposed by section 345(b) "is filed on the first day of a chapter 11 case in which there are more than 200 creditors, the Court may grant an interim suspension until a hearing on the debtor's motion can be held." Del. Bankr. L.R. 2015-2(b). As this Motion is being filed on the Petition Date and the Debtors have in excess of 200 creditors, the Debtors request that the Court enter the Interim Order suspending, on an interim basis, for a period of forty-five (45) days from the date of entry of the Interim Order, the requirements of section 345(b) of the Bankruptcy Code.

43.     As set forth above, the Debtors believe that they are in substantial compliance with the requirements of section 345(b) of the Bankruptcy Code and the U.S. Trustee Guidelines with respect to each of the Bank Accounts, or, that cause exists to grant a waiver of such requirements. The majority of Bank Accounts through which financial transactions are processed, are maintained with a bank on the U.S. Trustee's list of authorized depositories for the District of Delaware. Moreover, even though the Debtors' Foreign Subsidiary Operating Accounts are not designated as authorized depositories by the U.S. Trustee, these Bank Accounts are insured by the governments of the countries in which such banks originate, and maintain investment grade ratings from Moody's, S&P and Fitch. As such, the Debtors believe that they can maintain their Foreign Subsidiary Operating Accounts at these institutions without jeopardizing any parties in interest.

The principal basis for exclusion of certain of these financial institutions from the U.S. Trustee Guidelines is location, not financial soundness or stability. Indeed, many of these institutions are simply based outside of the United States and, thus, are less likely to be identified by the U.S. Trustee as Authorized Depositories. Such financial institutions are well-positioned to perform the depository and cash management functions during these Chapter 11 Cases. Therefore, the Debtors believe that any funds deposited in the Bank Accounts are secure and well-positioned to continue to perform depository and cash management functions during these chapter 11 cases.[10]

44.    Accordingly, the Debtors request an interim suspension of the requirements of section 345(b) of the Bankruptcy Code to the extent such requirements are inconsistent with the Debtor's current practices. Given the complexity and security of the Debtors' Cash Management System, the Debtors submit that cause exists to grant an interim suspension of the requirements of section 345(b) in the manner requested herein.

45.    Indeed, courts in this, and other, districts specifically have granted waivers or suspensions of the requirements of section 345 of the Bankruptcy Code under similar circumstances. *See, e.g.*, *In re BHCosmetics Holdings, LLC*, No. 22-10050 (CSS) (Bankr. D. Del. Jan. 18, 2022); *In re BL Santa Fe*, LLC, No. 21-11190 (MFW) (Bankr. D. Del. Aug. 31, 2021); In *re Permian Holdco 1, Inc.,* No. 20-11822 (MFW) (Bankr. D. Del. July 21, 2020); ;

---

[10]    Additionally, the Debtors maintain four dormant Bank Accounts with *de minimis* account balances at two banks that are not Authorized Depositories—SVB and US Century Bank—however, the Debtors' submit that these Bank Accounts are in substantial compliance with the requirements of section 345(b) of the Bankruptcy Code. Indeed, since March 27, 2023, First Citizens Bank & Trust Company assumed all customer deposits of SVB from the FDIC and began operating all SVB branches. First Citizens is an authorized U.S. Trustee depository. Additionally, the Bank Account at US Century Bank is insured by the United States, through the Federal Deposit Insurance Corporation. Accordingly, the Debtors submit that "cause" similarly exists to suspend the Debtor's compliance with restrictions imposed by section 345(b) of the Bankruptcy Code as to these Bank Accounts.

**H.**     **The Court Should Authorize the Debtors to Continue Using Their Existing Business Forms**

46.     To avoid disruption of the Cash Management System and unnecessary expenses, pursuant to Local Rule 2015-2(a), the Debtors request authorization to continue to use their business forms substantially in the form existing immediately before the Petition Date, without reference to the Debtors' status as debtors-in-possession.  The Debtors submit that parties in interest will not be prejudiced if such relief is granted because parties doing business with the Debtors will likely be aware of their status as debtors-in-possession and, thus, changing business forms is unnecessary and would be unduly burdensome.  In accordance with Local Rule 2015-2(a), to the extent the Debtors exhaust their existing supply of checks, the Debtors will reissue checks with the designation "Debtor-in-Possession" and the case number.

47.     In other chapter 11 cases, courts in this district have allowed debtors to use their prepetition business forms without the "debtor in possession" label.  *See, e.g.*, *In re SiO2 Medical Prods, Inc.*, 23-10366 (JTD) (Bankr. D. Del. Mar. 30, 2023); (authorizing the debtors' continued use of preprinted check stock without a "Debtor in Possession" marking); *In re Carestream Health, Inc.*, No. 22-10778 (JKS) (Bankr. D. Del. Sept. 22, 2022); *In re Riverbed Tech., Inc.*, No. 21-11503 (CTG) (Bankr. D. Del. Nov. 18, 2021) (same); *In re Alex and Ani, LLC*, No. 21-10918 (CTG) (Bankr. D. Del. July 14, 2021) (same); *In re HighPoint Res. Corp.*, No. 21-10565 (CSS) (Bankr. D. Del. Mar. 26, 2021) (same).

### The Requirements of Bankruptcy Rule 6003(b) Are Satisfied

48.     The Debtors submit that any disruption to the Cash Management System would cause immediate and irreparable harm.  Pursuant to Bankruptcy Rule 6003, "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, issue an order granting the following: . . . (b) a motion to use, sell,

lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition, but not a motion under Rule 4001." The Debtors submit that for the reasons already set forth herein, the relief requested in this Motion is necessary to avoid immediate and irreparable harm.  For reasons discussed above, the relief requested herein is integral to the Debtors' administrative activities in these chapter 11 cases and necessary to preserve the value of their business and maximize the value of their estates for the benefit of all stakeholders.  Failure to receive such authorization and other relief during the first twenty-one (21) days of these chapter 11 cases would severely disrupt the administration of the Debtors' estates at this critical juncture.  Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested herein.

**<u>Reservation of Rights</u>**

49.      Nothing contained in this Motion or any order granting the relief requested in this Motion, and no action taken by the Debtors pursuant to the relief requested or granted (including any payment made in accordance with any such order), is intended as or shall be construed or deemed to be: (a) an admission as to the amount of, basis for, priority, or validity of any claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission or finding that any particular claim is an administrative expense claim, other priority claim or otherwise of a type specified or defined in this motion or any order granting the relief requested by this motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors'

estates; or (g) a waiver or limitation of any claims, causes of action or other rights of the Debtors or any other party in interest against any person or entity under the Bankruptcy Code or any other applicable law.  If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity, priority, or amount of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

### Waiver of Bankruptcy Rule 6004

50.    The Debtors seek a waiver of any stay of the effectiveness of any order approving this Motion. Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." As set forth in the Motion, the relief requested herein is essential to prevent immediate and irreparable harm to the Debtors' business operations. Accordingly, the Debtors submit that ample cause exists to justify a waiver of the fourteen (14) day stay imposed by Bankruptcy Rule 6004(h), to the extent that it applies.

### Notice

51.    The Debtors will provide notice of this Motion to:  (a) the United States Trustee; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) the office of the attorney general for each of the states in which the Debtors operate; (d) the United States Attorney's Office for the District of Delaware; (e) the Internal Revenue Service; (f) the United States Department of Justice; (g) the Banks; (h) counsel to the DIP Lenders; and (i) any party that has requested notice pursuant to Bankruptcy Rule 2002.  As this Motion is seeking "first day" relief, within 2 business days of the hearing on this Motion, the Debtors will serve copies of this Motion and any order entered with respect to this Motion as required by Local

Rule 9013-1(m).  In light of the nature of the relief requests, no other or further notice need be given.

[*Remainder of Page Intentionally Left Blank*]

WHEREFORE, the Debtors respectfully request entry of the Interim Order and Final Order, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B**, (a) granting the relief requested herein, and (b) granting such other relief as the Court deems appropriate under the circumstances.

Dated: May 30, 2024
Wilmington, Delaware

/s/ *Joseph M. Mulvihill*

**YOUNG, CONAWAY, STARGATT & TAYLOR LLP**
Joseph M. Mulvihill (Del. Bar No. 6061)
Shella Borovinskaya (Del. Bar No. 6758)
Kristin L. McElroy (Del. Bar No. 6871)
Rodney Square
1000 North King Street
Wilmington, DE 19801
Telephone:     (302) 571-6600
Facsimile:      (302) 571-1253
Email:            jmulvihill@ycst.com
                       sborovinskaya@ycst.com
                       kmcelroy@ycst.com

*Proposed Co-Counsel for the Debtors and Debtors in Possession*

**SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**
Justin Bernbrock (*pro hac vice* pending)
Robert B. McLellarn (*pro hac vice* pending)
321 North Clark Street, 32nd Floor
Chicago, Illinois 60654
Telephone:     (312) 499-6300
Facsimile:      (312) 499-6301
Email:            jbernbrock@sheppardmullin.com
                       rmclellarn@sheppardmullin.com

-and-

Alexandria G. Lattner (*pro hac vice* pending)
650 Town Center Drive, 10th Floor
Costa Mesa, California 92626
Telephone:     (714) 513-5100
Facsimile:      (714) 513-5130
Email:            alattner@sheppardmullin.com

*Proposed Co-Counsel for the Debtors and Debtors in Possession*

**<u>Exhibit A</u>**

**Proposed Interim Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| TAKEOFF TECHNOLOGIES, INC., *et al.*,[1] | ) | Case No. 24-11106 (___) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |
| | ) | **Ref. Docket No.** |

**INTERIM ORDER (I) AUTHORIZING THE DEBTORS
TO (A) CONTINUE OPERATING CASH MANAGEMENT SYSTEM,
(B) HONOR CERTAIN PREPETITION OBLIGATIONS RELATED THERETO,
(C) MAINTAIN EXISTING BUSINESS FORMS; (D); CONTINUE INTERCOMPANY
TRANSACTIONS; (II) CONFIRMING ADMINISTRATIVE EXPENSE PRIORITY FOR
POSTPETITION INTERCOMPANY CLAIMS; AND (III) GRANTING RELATED RELIEF**

Upon the Motion[2] of the above-captioned debtors and debtors in possession (collectively,

the "Debtors") for the entry of an interim order (this "Interim Order"): (a) authorizing the Debtors

to (i) continue operating the Cash Management System (as defined herein), (ii) honor and pay the

Bank Fees (as defined herein) in the normal course, (iii) maintain existing business forms, (iv)

continue to perform under and honor Intercompany Transactions (as defined herein) in the ordinary

course of business, in their business judgment and at their sole discretion; and (b) confirming

administrative expense priority for post-petition intercompany claims; and (c) granting related

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of the Debtors federal tax identification numbers, as applicable, are:  Takeoff Technologies, Inc. (0552); Takeoff Technologies Canada, Inc.; Takeoff Technologies Australia Pty Ltd. (ACN 639 288 958); Takeoff Technologies FZE; Takeoff International Subco India Private Limited; and Takeoff International Subco, LLC.  The location of the Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is 203 Crescent Street, Suite 203, Waltham, Massachusetts 02453.

[2]   Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors' to (A) Continue to Operate Their Cash Management System, (B) Honor Certain Prepetition Obligations Related Thereto, (C) Maintain Existing Business Forms, (D) Continue Intercompany Transactions; (II) Confirming Administrative Expense Priority for Postpetition Intercompany Claims; and (III) Granting Related Relief* (the "Motion").

relief, all as more fully set forth in the Motion; and upon consideration of the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is granted on an interim basis as set forth herein.

2.      The final hearing (the "Final Hearing") on the Motion shall be held on _____, 2024, at__:__ _.m., prevailing Eastern Time.  Any objections or responses to entry of a final order on the Motion shall be filed on or before 4:00 p.m., prevailing Eastern Time, on _____, 2024 and shall be served on: (a) proposed counsel to the Debtors (i) Sheppard, Mullin, Richter & Hampton LLP, 321 North Clark Street, 32nd Floor, Chicago, Illinois 60654, Attn.: Justin

Bernbrock and Robert B. McLellarn, and (ii) Young, Conaway, Stargatt & Taylor LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801, Attn.: Joseph M. Mulvihill, Shella Borovinskaya, Kristin L. McElroy; and (b) the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attn.: Jon Lipshie (Jon.Lipshie@usdoj.gov).

3.       In the event no objections to entry of the Final Order on the Motion are timely received, this Court may enter such Final Order without need for the Final Hearing.

4.       Subject to the provisions of this Order, the Debtors are authorized, but not directed, to: (a) continue operating the Cash Management System, substantially as identified on **Exhibit D** to the Motion and as described in the Motion, including intercompany funding among the Debtor affiliates; (b) subject to the Approved Budget (as defined in the order approving post-petition financing), honor their prepetition obligations related thereto; (c) use, in their present form, all preprinted correspondence and Business Forms (including letterhead) without reference to the Debtors' status as debtors in possession; (d) continue to use, with the same account numbers, the Bank Accounts in existence as of the Petition Date, including those accounts identified on **Exhibit C** to the Motion, and need not comply with certain guidelines relating to bank accounts set forth in the U.S. Trustee Guidelines (to the extent applicable); (e) treat the Debtor Bank Accounts for all purposes as accounts of the Debtors as debtors in possession; (f) deposit funds in and withdraw funds from the Bank Accounts by all usual means, including checks, wire transfers, and other debits; and (g) subject to compliance with the Approved Budget, pay the Bank Fees, including any prepetition amounts and any ordinary course Bank Fees incurred in connection with the Bank Accounts and to otherwise perform their obligations under the documents governing the Bank

Accounts; *provided* that in the case of each of (a) through (g), such action is taken in the ordinary course of business and consistent with historical practices.

5.      The Banks are authorized to continue to maintain, service, and administer the Bank Accounts as accounts of the Debtors as debtors in possession, without interruption and in the ordinary course of business consistent with historical practices, and to receive, process, honor, and pay, to the extent of available funds, any and all checks, drafts, wires, credit card payments, and ACH transfers issued and drawn on the Bank Accounts after the Petition Date by the holders or makers thereof, as the case may be, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Interim Order; *provided* that the Debtors shall only instruct or request any Banks to pay or honor any check, draft, or other payment item issued on a Bank Account prior to the Petition Date but presented to such Bank for payment after the Petition Date as authorized by an order of the Court.

6.      The Banks are authorized to debit the Debtors' accounts in the ordinary course of business, consistent with historical practices, without the need for further order of this Court for: (a) all checks drawn on the Debtors' accounts which are cashed at such Bank's counters or exchanged for cashier's checks by the payees thereof prior to the Petition Date; (b) all checks or other items deposited in one of Debtors' accounts with such Bank prior to the Petition Date which have been dishonored or returned unpaid for any reason, together with any fees and costs in connection therewith, to the same extent the Debtor was responsible for such items prior to the Petition Date; and (c) all undisputed prepetition amounts outstanding as of the date hereof, if any, owed to any Bank as service charges for the maintenance of the Cash Management System.

7.     The Debtors are authorized and empowered to continue performing under and honoring Intercompany Transactions subject to the terms of the Debtors' debtor-in-possession financing facility in accordance with the DIP Orders, including, without limitation, the Approved Budget under, and as defined in, the DIP Orders; provided that the Debtors shall not be authorized to undertake any Intercompany Transactions that are not on the same terms as, or materially consistent with, the Debtors' operation of their business in the ordinary course during the prepetition period; provided, further, that the Debtors shall (a) keep records of any postpetition Intercompany Transactions that occur during these chapter 11 cases and (b) implement accounting procedures to identify and distinguish between prepetition and postpetition Intercompany Transactions.

8.     In accordance with sections 503(b)(1), 507(a)(2), and 364(b) of the Bankruptcy Code, all Intercompany Claims arising after the Petition Date shall be accorded administrative expense priority, subject and junior to the claims, including adequate protection claims, granted in connection with the Debtors' debtor-in-possession financing facility in accordance with the DIP Orders.

9.     Any existing agreements between or among the Debtors, the Banks, and other parties shall continue to govern the postpetition cash management relationship between the Debtors and the Banks, and all of the provisions of such agreements, including, without limitation, the termination, fee provisions, rights, benefits, offset rights, and remedies afforded under such agreements shall remain in full force and effect unless otherwise ordered by the Court, and the Debtors and the Banks may, subject to the provisions of this Order and without further order of this Court, agree to and implement changes to the Cash Management System and cash management

procedures in the ordinary course of business, consistent with historical practices, including, without limitation, the opening and closing of bank accounts.

10.     The Debtors' time to comply with section 345(b) of the Bankruptcy Code is hereby extended for a period of thirty (30) days from the date of this Interim Order (the "Extension Period"), provided, however, that such extension is without prejudice to the Debtors' right to request a further extension of the Extension Period or a final waiver of the requirements of section 345(b) in these chapter 11 cases.

11.     For the Banks at which the Debtors hold Bank Accounts that are party to a Uniform Depository Agreement with the U.S. Trustee, immediately after entry of this Interim Order, the Debtors shall (a) contact such bank, (b) provide such bank with each of the Debtors' employer identification numbers, (c) identify each of their Bank Accounts held at such bank as being held by a debtor in possession in the Debtors' bankruptcy cases; and (d) serve a copy this Interim Order on each Bank.  For any Bank at which the Debtors hold Bank Accounts that are not party to a Uniform Depository Agreement with the U.S. Trustee, the Debtors shall use their good-faith efforts to cause the Bank to execute a Uniform Depository Agreement in a form prescribed by the U.S. Trustee within thirty (30) days of the date of this Interim Order.

12.     Subject to the terms hereof the Debtors are authorized, but not directed, in the ordinary course of business consistent with historical practices, to open any new bank accounts or close any existing Bank Accounts and enter into any ancillary agreements, including deposit account control agreements, related to the foregoing, as they may deem necessary and appropriate, provided that the Debtors give notice to the U.S. Trustee and any official committees appointed in these chapter 11 cases within 15 days of opening or closing a bank account.  The relief granted in this Interim Order is extended to any new bank account opened by the Debtors in the ordinary

course of business after the date hereof, which account shall be deemed a "Bank Account," and to the bank at which such account is opened, which bank shall be deemed a "Bank," provided that any new domestic bank account opened by the Debtors shall be established at an institution that is a party to a Uniform Depository Agreement with the U.S. Trustee or is willing to immediately execute such a Uniform Depository Agreement.

13.     All banks maintaining any of the Bank Accounts that are provided with notice of this Interim Order shall not honor or pay any bank payments drawn on the listed Bank Accounts or otherwise issued before the Petition Date; *provided*, *however*, that any such bank shall not be found to be in violation of this Interim Order nor liable to the Debtors or their estates should any such bank honor or pay any bank payment (a) in a good faith belief that the Court has authorized such payment to be honored, or (b) as the result of a mistake made despite implementation of customary item handling procedures.

14.     The Banks are authorized, without further order of this Court, to deduct any applicable fees from the applicable Bank Accounts in the ordinary course of business consistent with historical practices and pursuant to the applicable agreements governing each Bank Account.

15.     The Banks are authorized, without further order of this Court, to charge back to the appropriate accounts of the Debtors any amounts resulting from returned checks or other returned items, including returned items that result from ACH transactions, wire transfers, or other electronic transfers of any kind, regardless of whether such returned items were deposited or transferred prepetition or postpetition and regardless of whether the returned items relate to prepetition or postpetition items or transfers, including, without limitation, on account of checks that have been dishonored or returned as a result of insufficient funds in the Bank Accounts, in each case to the same extent the Debtors were responsible for such items prior to the Petition Date.

16.     Subject to the terms set forth herein, any bank, including the Banks, may rely upon the representations of the Debtors with respect to whether any check, draft, wire, or other transfer drawn or issued by the Debtors prior to the Petition Date should be honored pursuant to any order of this Court, and no bank that honors a prepetition check or other item drawn on any account that is the subject of this Interim Order (a) at the direction of the Debtors, (b) in a good-faith belief that this Court has authorized such prepetition check or item to be honored, or (c) as a result of a mistake made despite implementation of reasonable customary handling procedures, shall be deemed to be nor shall be liable to the Debtors, their estates, or any other party on account of such prepetition check or other item being honored postpetition, or otherwise deemed to be in violation of this Interim Order.

17.     Any banks, including the Banks, are further authorized to honor the Debtors' directions with respect to the opening and closing of any Bank Account and accept and hold, or invest, the Debtors' funds in accordance with the Debtors' instructions; provided that the Banks shall not have any liability to any party for relying on such representations to the extent such reliance otherwise complies with applicable law.

18.     Notwithstanding anything contained herein, the Debtors shall calculate quarterly fees under 28 U.S.C. section 1930(a)(6) based on the disbursements of each debtor, regardless of who pays those disbursements.

19.     Nothing contained in the Motion or this Interim Order shall be construed to (a) create or perfect, in favor of any person or entity, any interest in cash of a Debtor that did not exist as of the Petition Date or (b) alter or impair the validity, priority, enforceability, or perfection of any security interest or lien or setoff right, in favor of any person or entity, that existed as of the Petition Date.

20.     Nothing contained in the Motion or this Interim Order, and no action taken pursuant to the relief requested or granted (including any payment made in accordance with this Interim Order), is intended as or shall be construed or deemed to be: (a) an admission as to the amount of, basis for, or validity of any claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission or finding that any particular claim is an administrative expense claim, other priority claim or otherwise of a type specified or defined in the Motion or this Interim Order; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; or (g) a waiver or limitation of any claims, causes of action or other rights of the Debtors or any other party in interest against any person or entity under the Bankruptcy Code or any other applicable law.

21.     The Debtors are authorized, but not directed, to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with the relief granted herein.

22.     Nothing in this Interim Order authorizes the Debtors to accelerate any payments not otherwise due.

23.     The Debtors have demonstrated that the requested relief is "necessary to avoid immediate and irreparable harm," as contemplated by Bankruptcy Rule 6003.

24.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order are immediately effective and enforceable upon its entry.

25.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order.

26.     This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

**<u>Exhibit B</u>**

**Proposed Final Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

---

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| TAKEOFF TECHNOLOGIES, INC., *et al.*,[1] | ) | Case No. 24-11106 (___) |
|  | ) |  |
| Debtors. | ) | (Joint Administration Requested) |
|  | ) |  |
|  | ) | **Ref. Docket Nos.** |

---

**FINAL ORDER (I) AUTHORIZING THE DEBTORS TO (A) CONTINUE OPERATING
CASH MANAGEMENT SYSTEM, (B) HONOR CERTAIN PREPETITION OBLIGATIONS
RELATED THERETO, (C) MAINTAIN EXISTING BUSINESS FORMS; AND
(II) GRANTING RELATED RELIEF**

---

Upon the Motion[2] of the above-captioned debtors and debtors in possession (collectively,

the "Debtors") for the entry of a final order (this "Final Order"): (a) authorizing the Debtors to (i)

continue operating the Cash Management System (as defined herein), (ii) honor and pay the Bank

Fees (as defined herein) in the normal course, (iii) maintain existing business forms, (iv) continue

to perform under and honor Intercompany Transactions (as defined herein) in the ordinary course

of business, in their business judgment and at their sole discretion; and (b) confirming

administrative expense priority for post-petition intercompany claims; and (c) granting related

relief, all as more fully set forth in the Motion; and upon consideration of the First Day Declaration;

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of the Debtors federal tax identification numbers, as applicable, are:  Takeoff Technologies, Inc. (0552); Takeoff Technologies Canada, Inc.; Takeoff Technologies Australia Pty Ltd. (ACN 639 288 958); Takeoff Technologies FZE; Takeoff International Subco India Private Limited; and Takeoff International Subco, LLC.  The location of the Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is 203 Crescent Street, Suite 203, Waltham, Massachusetts 02453.

[2]   Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors' to (A) Continue to Operate Their Cash Management System, (B) Honor Certain Prepetition Obligations Related Thereto, (C) Maintain Existing Business Forms, (D) Continue Intercompany Transactions; (II) Confirming Administrative Expense Priority for Postpetition Intercompany Claims; and (III) Granting Related Relief* (the "Motion").

and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at an interim hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is granted on a final basis as set forth herein.

2.      The Debtors are authorized, but not directed, to: (a) continue operating the Cash Management System, substantially as identified on **Exhibit D** to the Motion and as described in the Motion, including intercompany funding among the Debtor affiliates]; (b) subject to the Approved Budget (as defined in the order approving post-petition financing), honor their prepetition obligations related thereto; (c) use, in their present form, all preprinted correspondence and Business Forms (including letterhead) without reference to the Debtors' status as debtors in

possession; (d) continue to use, with the same account numbers, the Bank Accounts in existence as of the Petition Date, including those accounts identified on **Exhibit C** to the Motion, and need not comply with certain guidelines relating to bank accounts set forth in the U.S. Trustee Guidelines (to the extent applicable); (e) treat the Debtor Bank Accounts for all purposes as accounts of the Debtors as debtors in possession; (f) deposit funds in and withdraw funds from the Bank Accounts by all usual means, including checks, wire transfers, and other debits; and (g) subject to compliance with the Approved Budget, pay the Bank Fees, including any prepetition amounts and any ordinary course Bank Fees incurred in connection with the Bank Accounts and to otherwise perform their obligations under the documents governing the Bank Accounts; *provided* that in the case of each of (a) through (g), such action is taken in the ordinary course of business and consistent with historical practices.

3.      The Banks are authorized to continue to maintain, service, and administer the Bank Accounts as accounts of the Debtors as debtors in possession, without interruption and in the ordinary course of business consistent with historical practices, and to receive, process, honor, and pay, to the extent of available funds, any and all checks, drafts, wires, credit card payments, and ACH transfers issued and drawn on the Bank Accounts after the Petition Date by the holders or makers thereof, as the case may be, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Final Order; *provided* that the Debtors shall only instruct or request any Bank to pay or honor any check, draft, or other payment item issued on a Bank Account prior to the Petition Date but presented to such Bank for payment after the Petition Date as authorized by an order of this Court.

4.     The Banks are authorized to debit the Debtors' accounts in the ordinary course of business, consistent with historical practices, without the need for further order of this Court for: (a) all checks drawn on the Debtors' accounts which are cashed at such Bank's counters or exchanged for cashier's checks by the payees thereof prior to the Petition Date; (b) all checks or other items deposited in one of Debtors' accounts with such Bank prior to the Petition Date which have been dishonored or returned unpaid for any reason, together with any fees and costs in connection therewith, to the same extent the Debtor was responsible for such items prior to the Petition Date; and (c) all undisputed prepetition amounts outstanding as of the date hereof, if any, owed to any Bank as service charges for the maintenance of the Cash Management System.

5.     The Debtors are authorized and empowered to continue performing under and honoring Intercompany Transactions subject to the terms of the Debtors' debtor-in-possession financing facility in accordance with the DIP Orders, including, without limitation, the Approved Budget under, and as defined in, the DIP Orders; provided that the Debtors shall not be authorized to undertake any Intercompany Transactions that are not on the same terms as, or materially consistent with, the Debtors' operation of their business in the ordinary course during the prepetition period; provided, further, that the Debtors shall (a) keep records of any postpetition Intercompany Transactions that occur during these chapter 11 cases and (b) implement accounting procedures to identify and distinguish between prepetition and postpetition Intercompany Transactions.

6.     In accordance with sections 503(b)(1), 507(a)(2), and 364(b) of the Bankruptcy Code, all Intercompany Claims arising after the Petition Date shall be accorded administrative expense priority, subject and junior to the claims, including adequate protection claims, granted in

connection with the Debtors' debtor-in-possession financing facility in accordance with the DIP Orders.

7.      Any existing agreements between or among the Debtors, the Banks, and other parties shall continue to govern the postpetition cash management relationship between the Debtors and the Bank, and all of the provisions of such agreements, including, without limitation, the termination, fee provisions, rights, benefits, offset rights, and remedies afforded under such agreements shall remain in full force and effect unless otherwise ordered by the Court, and the Debtors and the Bank may, without further order of this Court, agree to and implement changes to the Cash Management System and cash management procedures in the ordinary course of business, consistent with historical practices, including, without limitation, the opening and closing of bank accounts.

8.      To the extent any of the Debtor Bank Accounts are not in compliance with section 345(b) of the Bankruptcy Code or any of the U.S. Trustee's requirements or guidelines, the Debtors are hereby granted a period of forty-five days from the date of this Final Order, without prejudice to seeking an additional extension, to come into compliance with section 345(b) of the Bankruptcy Code and any of the U.S. Trustee's requirements or guidelines; provided that nothing herein shall prevent the Debtors or the U. S. Trustee from seeking further relief from the Court to the extent that an agreement cannot be reached.  The Debtors may obtain a further extension of the 45- day period referenced above by written stipulation with the U.S. Trustee and filing such stipulation on the Court's docket without the need for further Court order.

9.      For any Banks at which the Debtors hold Bank Accounts that are party to a Uniform Depository Agreement with the U.S. Trustee, within fifteen (15) days of the date of entry of this Final Order, the Debtors shall (a) contact such bank, (b) provide such bank with each of the

-5-

Debtors' employer identification numbers, (c) identify each of their Bank Accounts held at such bank as being held by a debtor in possession in the Debtors' bankruptcy cases, and (d) serve a copy of this Final Order on each Bank.  For any Banks at which the Debtors hold Bank Accounts that are not party to a Uniform Depository Agreement with the U.S. Trustee, the Debtors shall use their good-faith efforts to cause such Bank to execute a Uniform Depository agreement in a form prescribed by the U.S. Trustee within thirty (30) days of the date of this Final Order.

10.     Subject to the terms hereof, the Debtors are authorized, but not directed, in the ordinary course of business consistent with historical practices, to open any new bank accounts or close any existing Bank Accounts and enter into any ancillary agreements, including deposit account control agreements, related to the foregoing, as they may deem necessary and appropriate, provided that the Debtors give notice to the U.S. Trustee and any official committees appointed in these chapter 11 cases within 15 days of opening or closing a bank account.  The relief granted in this Final Order is extended to any new bank account opened by the Debtors in the ordinary course of business after the date hereof, which account shall be deemed a "Bank Account," and to the bank at which such account is opened, which bank shall be deemed a "Bank," provided that any new domestic bank account opened by the Debtors shall be established at an institution that is a party to a Uniform Depository Agreement with the U.S. Trustee or is willing to immediately execute such a Uniform Depository Agreement.

11.     All banks maintaining any of the Bank Accounts that are provided with notice of this Final Order shall not honor or pay any bank payments drawn on the listed Bank Accounts or otherwise issued before the Petition Date; *provided*, *however*, that any such bank shall not be found to be in violation of this Final Order nor liable to the Debtors or their estates should any such bank honor or pay any bank payment (a) in a good faith belief that the Court has authorized such

payment to be honored, or (b) as the result of a mistake made despite implementation of customary item handling procedures.

12.     The Banks are authorized, without further order of this Court, to deduct any applicable fees from the applicable Bank Accounts in the ordinary course of business consistent with historical practices and pursuant to the applicable agreements governing each Bank Account.

13.     The Banks are authorized, without further order of this Court, to charge back to the appropriate accounts of the Debtors any amounts resulting from returned checks or other returned items, including returned items that result from ACH transactions, wire transfers, or other electronic transfers of any kind, regardless of whether such returned items were deposited or transferred prepetition or postpetition and regardless of whether the returned items relate to prepetition or postpetition items or transfers, including, without limitation, on account of checks that have been dishonored or returned as a result of insufficient funds in the Bank Accounts, in each case to the same extent the Debtors were responsible for such items prior to the Petition Date.

14.     Subject to the terms set forth herein, any bank, including the Banks, may rely upon the representations of the Debtors with respect to whether any check, draft, wire, or other transfer drawn or issued by the Debtors prior to the Petition Date should be honored pursuant to any order of this Court, and no bank that honors a prepetition check or other item drawn on any account that is the subject of this Final Order (a) at the direction of the Debtors, (b) in a good-faith belief that this Court has authorized such prepetition check or item to be honored, or (c) as a result of a mistake made despite implementation of reasonable customary handling procedures, shall be deemed to be nor shall be liable to the Debtors, their estates, or any other party on account of such prepetition check or other item being honored postpetition, or otherwise deemed to be in violation of this Final Order.

15. Any banks, including the Banks, are further authorized to honor the Debtors' directions with respect to the opening and closing of any Bank Account and accept and hold, or invest, the Debtors' funds in accordance with the Debtors' instructions; provided that the Banks shall not have any liability to any party for relying on such representations to the extent such reliance otherwise complies with applicable law.

16. Notwithstanding anything set forth in this Final Order, the Debtors shall calculate quarterly fees under 28 U.S.C. section 1930(a)(6) based on the disbursements of each debtor, regardless of who pays those disbursements.

17. Nothing contained in the Motion or this Final Order shall be construed to (a) create or perfect, in favor of any person or entity, any interest in cash of a Debtor that did not exist as of the Petition Date or (b) alter or impair the validity, priority, enforceability, or perfection of any security interest or lien or setoff right, in favor of any person or entity, that existed as of the Petition Date.

18. Nothing contained in the Motion or this Final Order, and no action taken pursuant to the relief requested or granted (including any payment made in accordance with this Final Order), is intended as or shall be construed or deemed to be: (a) an admission as to the amount of, basis for, or validity of any claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission or finding that any particular claim is an administrative expense claim, other priority claim or otherwise of a type specified or defined in the Motion or this Final Order; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability

or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; or (g) a waiver or limitation of any claims, causes of action or other rights of the Debtors or any other party in interest against any person or entity under the Bankruptcy Code or any other applicable law.

19.     The Debtors are authorized, but not directed, to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with the relief granted herein.

20.     Nothing in this Final Order authorizes the Debtors to accelerate any payments not otherwise due.

21.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Final Order are immediately effective and enforceable upon its entry.

22.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

23.     This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.

## **Exhibit C**

**Bank Accounts**

**EXHIBIT C**

*In USDs*

| Entity Name | Bank Name | Account # | Account Type | Balance as of 5/29/24 |
|---|---|---|---|---|
| Takeoff Technologies, Inc | Bank of America | X9770 | Payables | $          30,742 |
| Takeoff Technologies, Inc | Bank of America | X1965 | Customer Collection | 430 |
| Takeoff Technologies, Inc | Bank of America | X7631 | Payroll | 1,000 |
| Takeoff Technologies, Inc | Bank of America | X0010 | Euro | 7,734 |
| Takeoff International Subco, LLC | Bank of America | X3867 | Checking | 100 |
| Takeoff Technologies, Inc | Chase Bank | X0972 | Main Concentration | 1,454,860 |
| Takeoff Technologies, Inc | Chase Bank | X2533 | ZBA Payables | - |
| Takeoff Technologies, Inc | Chase Bank | X7606 | ZBA Payroll | - |
| Takeoff Technologies, Inc | Chase Bank | X7697 | ZBA Customer Collection | - |
| Takeoff Technologies, Inc | JP Morgan Chase Bank | X2979 | Investment | 10,360 |
| Takeoff Technologies, Inc | Silicon Valley Bank | X3645 | Checking | 1,885 |
| Takeoff Technologies, Inc | Silicon Valley Bank | X6644 | Savings | - |
| Takeoff Technologies, Inc | Silicon Valley Bank | X0340 | Payroll | - |
| Takeoff Technologies, Inc | US Century Bank | X7854 | Checking | 4,106 |
| Takeoff Technologies Australia Pty Ltd | Commonwealth Bank | X0855 | Main Operating | 72,692 |
| Takeoff Technologies Australia Pty Ltd | Commonwealth Bank | X0871 | Savings | 7,060 |
| Takeoff Technologies Canada Inc. | Royal Bank of Canada | X4246 | Main Operating | 18,472 |
| Takeoff International Subco India Private Limited | ICICI Bank | X5319 | Main Operating | 591,333 |

## **Exhibit D**

### **Cash Management Schematic**

EXHIBIT D

