IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>TAKEOFF TECHNOLOGIES, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 24-11106 (CTG)<br>(Jointly Administered)<br><br>Hearing Date: June 27, 2024 at 11 a.m.<br>UST Objection Deadline: June 20, 2024<br><br>Ref: Docket No. 10 and 11 |

**UNITED STATES TRUSTEE'S LIMITED OBJECTION TO MOTION OF
THE DEBTORS FOR ENTRY OF AN ORDER APPROVING
POSTPETITION FINANCING AND GRANTING RELATED RELIEF**

Andrew R. Vara, the United States Trustee for Region 3 (the "U.S. Trustee"), through his counsel, files this objection to the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing Debtors to Obtain Postpetition Financing, (II) Authorizing Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection, (V) Modifying Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief* (the "Motion") [D.I. 11], and in support of that objection, states:

**PRELIMINARY STATEMENT**

1.  By the Motion, Debtors seek Court approval of a DIP facility of approximately $10 million from a group of lenders consisting of the Debtors' three largest customers. As part of the DIP facility, Debtors intend to transfer the right, title, and interest in certain intellectual

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of the Debtors federal tax identification numbers, as applicable, are: Takeoff Technologies, Inc. (0552); Takeoff Technologies Canada, Inc.; Takeoff Technologies Australia Pty Ltd.; Takeoff Technologies FZE; Takeoff International Subco India Private Limited; and Takeoff International Subco, LLC. The location of the Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is 203 Crescent Street, Suite 203, Waltham, Massachusetts 02453.

property ("Specified IP") described below. The U.S. Trustee objects to the Motion. Section 364 of the Bankruptcy Code does not address the transfer of the Debtors' interest in property, but only post-petition financing which is necessary for the Debtors' reorganization. If the Debtors intend to sell their interests in the Specified IP or any other assets, Section 363 of the Bankruptcy Code is the applicable provision. Additionally, the Debtors have provided no evidentiary basis of the value of the Specified IP which is contemplated to be transferred or that the transfer is an appropriate exercise of Debtors' good business judgment.

2. For these reasons set forth in more detail below, the Motion should be denied.

## JURISDICTION & STANDING

3. Pursuant to (i) 28 U.S.C. § 1334; (ii) applicable order(s) of the United States District Court for the District of Delaware issued pursuant to 28 U.S.C. § 157(a); and (iii) 28 U.S.C. § 157(b)(2)(A), this Court has jurisdiction to hear and determine the Motion and this Objection.

4. Under 28 U.S.C. § 586, the U.S. Trustee is charged with overseeing the administration of chapter 11 cases filed in this judicial district. This duty is part of the U.S. Trustee's overarching responsibility to enforce the bankruptcy laws as written by Congress and interpreted by the courts. *See Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S. Trustee as a "watchdog").

5. Under 11 U.S.C. § 307, the U.S. Trustee has standing to be heard on the Motion. *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.),* 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that U.S. Trustee has "public interest standing" under 11 U.S.C. § 307, which goes beyond mere pecuniary interest).

**FACTUAL BACKGROUND**

6. Debtors filed their voluntary chapter 11 petition in this Court on May 30, 2024 (the "Petition Date"). Debtors continue to operate their business as debtors-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108.

7. On May 30, 2024, Debtors filed the Motion. By the Motion, Debtors seek to obtain post-petition financing in the approximate amount of $10 million with interest at 13% from the DIP lenders ("DIP Lenders"). Motion, ¶ 6 (a) & ¶11. The DIP facility further provides:

> The DIP Facility does not contain any commitment fees, unused line fees, or letter of credit fees. The DIP Facility does require the Debtors to provide an interim royalty free license to use Specified IP (but not to commercialize for sale or distribution to third parties) during the interim financing period. Upon final approval, the Debtors shall grant the DIP Lenders a royalty free perpetual license to use the Specified IP (but not to commercialize for sale or distribution to third parties). The DIP Facility also requires the delivery of the Specified IP to the DIP Lenders, which shall be subject to the applicable license.

Motion, ¶ 11.

8. On May 31, 2024, this Court entered the Interim Order granting the interim relief requested in the Motion. [D.I. 55].

9. The Interim Order provides in relevant part:

> (a). IP Licenses: In lieu of any commitment fee, unused line fee, or similar fees, upon entry of this Order, the DIP Lenders shall receive (i) interim, worldwide, royalty free licenses with respect to the Specified IP (defined below) relevant to such DIP Lender's sites and operations for its own internal purposes, including without limitation for its locations and other future sites it develops for itself, its affiliates' and successors' property in substantially the form attached hereto as Annex A ( the ("Interim IP Licenses"), which Interim IP Licenses will automatically terminate if the Final Order is not entered within thirty (30) days of the Petition Date, (ii) perpetual, irrevocable, worldwide, royalty free sublicenses (the "Customer Sublicenses" a form of which is attached hereto as Annex B) to use and sublicense the computer software programs engineered and developed by Knapp, which are required for the operation

> of the operating the automated inventory management and fulfillment equipment at each DIP Lender's sites, and (iii) all intellectual property necessary to enable each DIP Lender to use such DIP Lender's Interim IP License and Customer Sublicense, including (but not limited to) (A) all current versions of software code, source code, object code, customer data, deployment pipelines, documentation, functional design, requirements, databases, libraries, interfaces with third-parties (including Knapp), technical architecture, technical environments (including, without limitation, production, non-production, and lower environments), technical environment details, and any and all related materials, documentation, data, and information (including usernames, logins, passwords, and access keys and credentials to associated software, middleware and hardware (including routers), and sublicenses (including from Knapp) and (B) access to the Fiix and Looker instances relevant to that DIP Lender's sites, together with any and all related materials, documentation, data, and information (including usernames, logins, passwords, and access keys and credentials to associated software, middleware and hardware) (the items in this paragraph 7(a)(iii)(A)-(B) collectively referred to as the "Specified IP"), including a fully operating instance suitable for and accessible by such DIP Lender ("Lender-Specific Specified IP"), except to the extent that providing any portion of the Specified IP that constitutes non-material Specified IP would violate applicable law or result in the breach or termination of any contracts of the Debtors in existence on the Petition Date (and not entered into in contemplation of the bankruptcy filing). In the event that the Interim IP Licenses terminate, each DIP Lender shall either return or destroy its Lender-Specific Specified IP.
>
> (b).   Perpetual IP Licenses. Upon entry of the Final Order, (i) the term of each of the Interim IP Licenses will automatically extend in perpetuity (thereafter, the "Perpetual IP Licenses") and (ii) the Court hereby authorizes and approves the Debtors' execution and delivery to each of the DIP Lenders, as applicable, of the Specified IP, including the Lender-Specific Specified IP, except to the extent that providing any portion of the Specified IP that constitutes non-material Specified IP would violate applicable law or result in the breach or termination of any contracts of the Debtors in existence on the Petition Date (and not entered into in contemplation of the bankruptcy filing).

Interim Order, ¶ 7 (a) and (b) [D.I. 55].

10. On June 13, 2024, the U.S. Trustee appointed an official committee of unsecured creditors in these cases.

11.     If the final relief is granted to the Debtors, the DIP Lenders will not only receive the 13% stated interest rate on the DIP facility but will also receive a perpetual license to use the Debtors' intellectual property consisting of software and related assets which the DIP Lenders presently utilize. This transfer does not require the DIP Lenders to pay the normal royalty fees associated with the Specified IP. Declaration of Brett Anderson ("Anderson Decl."), ¶ 38. The Debtors have asserted that the Specified IP has no value except to the DIP Lenders. *Id.* ¶ 39. The Debtors do not, however, disclose any valuation of the Specified IP, including the purported value to the DIP Lenders.

## ARGUMENT

**I.      The Motion Should Be Denied Because the Terms of the Proposed DIP Financing Are Not Fair or Reasonable, and the DIP Loan Is Therefore Not an Appropriate Exercise of Debtor's Business Judgment.**

12.     Debtors seek DIP financing under sections 364 (c) and (d) of the Bankruptcy Code, which provide as follows:

> (c) If the trustee is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt—
>
> (1) with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of this title;
>
> (2) secured by a lien on property of the estate that is not otherwise subject to a lien; or
>
> (3) secured by a junior lien on property of the estate that is subject to a lien.
>
> (d) (1) The court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on property of the estate that is subject to a lien only if—
>
> (A) the trustee is unable to obtain such credit otherwise; and
>
> (B) there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted.

> (2) In any hearing under this subsection, the trustee has the burden of proof on the issue of adequate protection.

11 U.S.C. § 364 (c) & (d).

13. In seeking approval of a post-petition loan, a debtor has the burden of proving that, "*[t]he terms of the transaction are fair, reasonable,* and adequate, given the circumstances of the debtor-borrower and the proposed lender." *In re L.A. Dodgers LLC*, 457 B.R. 308, 312 (Bankr. D. Del 2011)(citations omitted). A debtor also must establish that it is "unable to obtain unsecured credit per 11 U.S.C. § 364(b)," and that "[t]he credit transaction is necessary to preserve the assets of the estate." *Id.; see also In re Crouse Group, Inc.,* 71 B.R. 544, 549 (Bankr. E.D. Pa. 1987).

14. In determining whether to approve a debtor's request under section 364, a Court must examine whether the relief requested is an appropriate exercise of the debtor's business judgment. *See U.S. Bank Trust Nat'l Assn v. Am. Airlines, Inc. (In re AMR Corp.)*, 485 B.R. 279, 287 (Bankr. S.D.N.Y 2013). "[C]ases consistently reflect that the court's discretion under section 364 is to be utilized on grounds that permit reasonable business judgment to be exercised *so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit a party in interest*." *In re Ames Dept. Stores, Inc.*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) (emphasis added).

15. Section 364 does not provide any basis for the transfer of the Specified IP to the DIP Lenders. Sections 364 (c) and (d) provide that the Debtors may incur debt on a post-petition basis and provide security interests in the Debtors' assets. Section 364 does not permit the outright transfer of Debtors' assets under a DIP facility. The DIP Lenders and the Debtors are attempting an end-run around the requirements of Section 363 which specifically covers the

sale or use of the Debtors' property. To properly transfer the Debtors' assets, Debtors must meet the requirements of Section 363 and Bankruptcy Rule 6004 with proper notice under Bankruptcy Rule 2002(a). Further, while it appears that the Debtors are transferring the assets free and clear of liens, Debtors have not disclosed if there are any pre-petition liens on the Specified IP. In order for stakeholders to have the opportunity to evaluate the contemplated transfer, the Debtors must comply with the requirements of Section 363 and the applicable Bankruptcy Rules

16. Even if Section 364 were applicable, the transfer of the Specified IP to Debtors' lenders does not meet the requirements of being "fair" and "reasonable." *In re L.A. Dodgers*, 457 B.R. at 312. The transfer of the Specified IP is extraordinary and will clearly benefit the lenders who were prepetition customers of the Debtors. As a result, the lenders are leveraging the bankruptcy process and powers not to benefit the estate, but to benefit itself. Therefore, the DIP financing should not be approved as within the reasonable business judgment of the debtors. *See Ames*, 115 B.R. at 40.

17. Further, the Debtors have failed to provide a scintilla of evidence of the value of the Specified IP. There is nothing in the Anderson Declaration which indicates what value is ascribed to the Specified IP, whether the Debtors have made any investigation as to the value of the Specified IP or whether the Specified IP could be sold to third parties in any sale contemplated in these bankruptcy cases. The only statement made by Mr. Anderson is that the Specified IP "is not valuable to other parties aside from the DIP Lenders." Anderson Decl., ¶39. Implicit in this statement is that the assets have significant value to the DIP Lenders. Notwithstanding this, Debtors do not even disclose the approximate value of the Specified IP to the DIP Lenders. Simply put, the Debtors intend to transfer assets of the Debtors' estates which

could be worth millions of dollars without providing stakeholders with crucial information concerning its value.

18.    Debtors also seeks a finding that the DIP Lender is a good faith lender, entitled to the protections of subsection (e) of section 364 of the Code, which provides:

> The reversal or modification on appeal of an authorization under this section to obtain credit or incur debt, or of a grant under this section of a priority or a lien, does not affect the validity of any debt so incurred, or any priority or lien so granted, **to an entity that extended such credit in good faith**, whether or not such entity knew of the pendency of the appeal, unless such authorization and the incurring of such debt, or the granting of such priority or lien, were stayed pending appeal.

11 U.S.C. § 364(e) (emphasis added).

19.    A lender that offers post-petition DIP financing with the transfer of the license of the Debtors' IP property without the disclosure of its value would not appear to be acting in good faith.

20.    The U.S. Trustee leaves the Debtors to their burden to establish that it is reasonable business judgement to borrow funds with the transfer of the Specified IP and to establish that the DIP Lender is a good faith lender entitled to the protections of section 364(e) of the Code.

## RESERVATION OF RIGHTS

21.    The U.S. Trustee reserves all rights, remedies, and obligations to, *inter alia*, complement, supplement, augment, alter, or modify this Objection, file any appropriate Motion, conduct any discovery as may be deemed necessary or as may be required, and assert such other grounds as may subsequently become apparent.

WHEREFORE, the U.S. Trustee respectfully requests that this Court enter an order denying the Motion and granting such other relief as the Court deems appropriate.

Dated: Wilmington, Delaware  
       June 18, 2024

Respectfully submitted,

ANDREW R. VARA  
UNITED STATES TRUSTEE  
REGIONS 3 AND 9

By: */s/ Jonathan W. Lipshie*  
Jonathan W. Lipshie  
Trial Attorney  
Office of the United States Trustee  
J. Caleb Boggs Federal Building  
844 King Street, Suite 2207, Lockbox 35  
Wilmington, DE 19801  
(202) 567-1124  
Jon.Lipshie@usdoj.gov