# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| TAKEOFF TECHNOLOGIES, INC., *et al.*,[1] | Case No. 24-11106 (CTG) |
| Debtors. | (Jointly Administered) |
|  | Ref. Docket No. 62 |

## DECLARATION OF JOSEPH POLANCICH
## IN SUPPORT OF DEBTORS' BIDDING PROCEDURES MOTION

I, Joseph Polancich, hereby declare under penalty of perjury that the following is true to the best of my knowledge, information, and belief:

1.  I am a Senior Director at Huron Transaction Advisory LLC ("HTA"), which maintains offices at 1166 Avenue of the Americas, 3rd Floor, New York, NY 10036. HTA is an affiliate of Huron Consulting Services LLC ("HCS," and together with HTA, "Huron"), the proposed provider of a chief restructuring officer and other associated personnel to the above-captioned debtors and debtors in possession (collectively, the "Debtors"). I have approximately 15 years of experience assisting companies identify and implement operational, working capital and balance sheet improvement initiatives across various industries. Some of my past clients include a variety of technology companies, such as a cloud-based SaaS provider, a provider of connectivity and IoT services, and a global IT software and solutions provider, as well as aluminum manufacturing and trading companies and large academic medical centers.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of the Debtors federal tax identification numbers, as applicable, are: Takeoff Technologies, Inc. (0552); Takeoff Technologies Canada, Inc.; Takeoff Technologies Australia Pty Ltd. (ACN 639 288 958); Takeoff Technologies FZE; Takeoff International Subco India Private Limited; and Takeoff International Subco, LLC. The location of the Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is 203 Crescent Street, Suite 203, Waltham, Massachusetts 02453.

2. I have a Bachelor of Arts in Economics from the University of Illinois, and a Masters of Business Administration from the University of Chicago Booth School of Business with concentrations in Finance, Strategy and Entrepreneurship. I am also a Certified Insolvency and Restructuring Advisor (CIRA) and am a FINRA registered representative with Series 63 and Series 79 licenses.

3. I submit this declaration (this "<u>Declaration</u>") in support of the relief requested in the motion [Docket No. 62] (the "<u>Bidding Procedures Motion</u>")[2] filed by the Debtors seeking, among other things, entry of an order approving certain bidding procedures (the "<u>Bidding Procedures</u>") in connection with the marketing and sale process for substantially all of the Debtors' assets.

4. Except as otherwise indicated, all statements in this Declaration are based upon my review of relevant documents, my discussions with the Debtors and their professionals, my discussions with other members of the Huron team working on this engagement, and my personal knowledge and experience. If I were called upon to testify, I could and would testify to each of the facts set forth below.

### The Marketing Process

5. Prior to the commencement of these chapter 11 cases, the Debtors retained HTA in May 2024 to oversee the proposed marketing and sale process for their business and assets. Specifically, HTA's responsibilities under its engagement with the Debtors include, among other things: (i) sourcing and screening of strategic buyers and financial investors for the business;

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings given to such terms in the Bidding Procedures Motion.

(ii) coordination of confidential and non-disclosure agreements with buyers and investors; (iii) the development and implementation of a communication strategy and documentation with potential interested parties; (iv) managing the due diligence process; (v) assisting with the analysis of indications of interest and letters of intent; (vi) assisting with the negotiation and communication strategy; (vii) assisting in the negotiation of the definitive documentation; and (viii) assisting in the closing process and coordination of key stakeholders.

6. Upon its engagement by the Debtors, HTA, with assistance from the Debtors' management team, promptly undertook a strategic yet broad marketing effort and began soliciting indications of interest for the sale of the Debtors' assets. In particular, HTA has crafted detailed marketing materials and assembled related diligence information for a confidential electronic data room (the "Data Room") and a confidential information memorandum (the "CIM") with the assistance of the Debtors and their other professional advisors.

7. In addition, since HTA's engagement, 31 parties have executed non-disclosure agreements (each, an "NDA"). Parties who executed an NDA have been provided the CIM and access to the Data Room, which contains diligence information about the Debtors and their assets. HTA has responded to various inquiries and, together with the Debtors' management team, conducted virtual and in-person meetings with several of the potential buyers who executed NDAs in order to offer them the opportunity to ask questions about the Debtors' assets and operations.

8. To date, HTA has contacted approximately 153 potentially interested parties, including various parties that had been contacted prior to the Petition Date, regarding the opportunity to purchase the Debtors' assets. HTA continues its efforts to market the Debtors' assets and ensure that the Debtors are able to obtain the highest and best value for their assets.

Upon the Court's approval of the Bidding Procedures, HTA, with the assistance of the Debtors' management team and other professionals, will continue to market the Debtors' assets and ensure a robust and competitive sale process that maximizes value for the Debtors' stakeholders.

**The Bidding Procedures and Sale Timeline**

9. I have reviewed and am familiar with the Bidding Procedures Motion and the related Bidding Procedures. It is my opinion that the Bidding Procedures and the Debtors' proposed sale timeline (the "Sale Timeline") will allow the Debtors to obtain the highest or otherwise best value for their assets under the circumstances of these chapter 11 cases. The Debtors initially began marketing their assets prior to filing these chapter 11 cases, and such efforts have continued, with the assistance of HTA, in the weeks since the Petition Date. I believe that the Sale Timeline provides sufficient time for potentially interested parties to formulate and submit bids. The Debtors and HTA have already made contact with over 153 potentially interested parties, set up a Data Room with diligence documents, and provided potentially interested parties with the CIM.

10. The Bidding Procedures are designed to provide the Debtors with flexibility to solicit proposals, negotiate transactions, hold an auction, and consummate a transaction for the highest or best value. The Bidding Procedures are intended to strike an appropriate balance between ensuring that there is a full and fair opportunity for the Debtors and their stakeholders to review and consider proposed transactions, managing the Debtors' operational and liquidity needs, and maintaining ongoing customer engagement. It is my understanding that the Debtors simply do not have sufficient liquidity to engage in a prolonged postpetition sale and marketing process.

11. In conclusion, for the reasons set forth above, I believe that approval of the

proposed Bidding Procedures and Sale Timeline will enable the Debtors to obtain the highest or otherwise best offer for their assets under the circumstances and will thereby maximize value for the benefit of all stakeholders in these chapter 11 cases.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: June 28, 2024

/s/ *Joseph Polancich*
Joseph Polancich