## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

_____
                    )
In re:                 )    Chapter 11
                    )
TAKEOFF TECHNOLOGIES, INC., *et al.*,[1]   )    Case No. 24-11106 (CTG)
                    )
          Debtors.    )    (Jointly Administered)
                    )
_____)    **Related D.I. 147 & 190**

## DIP LENDERS' OPPOSITION TO THE MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ENTRY OF AN ORDER CONVERTING THE DEBTORS' CHAPTER 11 CASES TO CASES UNDER CHAPTER 7 OF THE BANKRUPTCY CODE

Woolworths Group Limited ("Woolworths"), Albertsons Companies, Inc. ("Albertsons"), Inserra Supermarkets, Inc., ShopRite of Hunterdon County, Inc., and Village Super Market, Inc. (collectively, "Wakefern" and with Woolworths and Albertsons, the "DIP Lenders"), through each DIP Lenders' applicable undersigned counsel, submit their opposition to the *Motion of the Official Committee of Unsecured Creditors for Entry of an Order Converting the Debtors' Chapter 11 Cases to Cases Under Chapter 7 of the Bankruptcy Code* [D.I. 147; Public Version D.I. 190] (the "Conversion Motion"), filed by the Official Committee of Unsecured Creditors (the "Committee") and respectfully state as follows:

### OPPOSITION

1.      The Committee and its Conversion Motion ignore an important component of the unsecured creditor population: the Debtors' customers. Customers have a substantial interest in the Debtors' ongoing operations to avoid disruption in the customers' own business operations. That is precisely why the DIP Lenders have offered credit support to the Debtors well beyond any contractual

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of the Debtors federal tax identification numbers, as applicable, are: Takeoff Technologies, Inc. (0552); Takeoff Technologies Canada, Inc.; Takeoff Technologies Australia Pty Ltd. (ACN 639 288 958); Takeoff Technologies FZE; Takeoff International Subco India Private Limited; and Takeoff International Subco, LLC. The location of the Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is 203 Crescent Street, Suite 203, Waltham, Massachusetts 02453.

obligations they have under their master platform services agreements (each, an "MTPSA").  Indeed, the Committee completely ignores the impact that conversion will have on customers and how it will only increase (not reduce) the size of the unsecured creditor pool with customer damage claims.

2.      Instead, the Committee advances four primary arguments that "cause" exists to convert these cases:

  i. The granting of intellectual property rights to the DIP Lenders strips out value from the Debtors' estates.[2]

  ii. The proposed modifications of the MTPSAs for the DIP Lenders devalues the Debtors' estates.[3]

  iii. The granting of intellectual property rights and modifications of the MTPSAs will make it unlikely that the Debtors will obtain meaningful value for the sale of their business.[4]

  iv. The Debtors are incurring secured debt that is encumbering previously unencumbered assets.[5]

3.      The modifications to the DIP Facility filed with this Court on July 8, 2024 to the remove the first three arguments and reduce the risk of the fourth. [6]  The DIP Lenders now propose to advance approximately $9.7 million (the "DIP Facility") on terms that are routinely approved by this Court and others in the District.  The DIP Lenders no longer seek any licenses of the Debtors'

---

[2] Conversion Motion at ¶¶ 5, 30.

[3] *Id.* at ¶¶ 6, 30

[4] *Id.* at ¶34.

[5] *Id.* at ¶¶ 6, 34, 37.

[6] *See Debtors' Supplement to Motion for Entry of Interim and Final Orders (I) Authorizing Postpetition Financing; (II) Granting Licenses and Providing Superpriority Administrative Expense Claims; (III) Modifying the Automatic Stay; and (IV) Scheduling a Final Hearing; and (V) Granting Related Relief* [D.I. 197].

intellectual property and are prepared to return the Specified IP that has been delivered to them.[7]  Nor does the DIP Facility propose to modify the DIP Lenders' MTPSAs[8] or waive platform service fees owing under their MTPSAs.[9]  Rather, platform service fees that would have otherwise been payable under the DIP Lenders' MTPSAs for the first and second interim periods (May 1, 2024 through July 11, 2024) will be credited against and reduce the outstanding obligations under the DIP Facility and future platform service fees will be paid directly by the DIP Lenders outside of the DIP Facility – thereby reducing the amount of secured debt created by the DIP Facility.[10]

4.      The DIP Facility will be made available in periodic installments that are not contingent on the Debtors satisfying any milestones with respect to the development of separate operating instances of their software for use by the DIP Lenders.[11]  The DIP Liens no longer extend to avoidance actions,[12] and the maturity date and budget have been extended to fund the Debtors' chapter 11 cases for 30 days more than originally proposed, which the Committee proposed as an appropriate period for the Debtors to market-test the sale of their business or assets.[13]  Furthermore, the DIP Facility does not provide broad releases to the DIP Lenders, rather, as the Committee suggests, the releases are limited to the DIP Lenders in their capacities as such.  Accordingly, the

---

[7]      *Id.* at  ¶¶ 5, 30, 37.  The process of developing the Debtors' source code toward stand-alone instances of the Debtors' software has generated information and work product that did not previously exist and may be of value of buyers.

[8]      *Id*. at  ¶¶ 6, 30, 37.  Wakefern has agreed with the Debtors to extend the term of otherwise expired MTPSAs, which is value accretive for the estates as Wakefern will pay the platform service fees due thereunder.

[9]      *Id.* at ¶¶ 6, 37.

[10]      *Id.* at ¶¶ 36-37.

[11]      *Id.* at ¶ 37.

[12]      *Id.* at ¶¶ 6, 8.

[13]      *See Preliminary Objection of the Official Committee of Unsecured Creditors to Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing Postpetition Financing; (II) Granting Liens and Providing Superpriority Administrative Expense Claims; (III) Modifying the Automatic Stay; (IV) Scheduling a Final Hearing; and (V) Granting Related Relief* [D.I. 132-1] ¶¶ 42-44.

Committee can no longer contend that "the cases will benefit only the DIP Lenders at the expense of unsecured creditors."[14]

5.      With the majority of the Conversion Motion falling away in light of the amendments to the proposed DIP Facility, the Committee's remaining argument is that the transaction costs of chapter 11 outweigh the benefit it can deliver to the estates.  The Committee does not argue that a going concern sale of the Debtors' business is not possible.  Instead, it argues that "[i]f the DIP Financing is approved on a final basis, the confidentiality and value of [the Debtors'] intellectual property assets will be put at risk, and the value of their business overall will drop.  *Against that backdrop*, it is unlikely that the Debtors will be able to sell their assets for sufficient value in chapter 11 to merit the true costs of the DIP Financing."[15]  That "backdrop" no longer exists.  The Debtors' intellectual property is not at risk and the value of the Debtors' business will not suffer the drop in value that the Committee attributed to the prior terms of the DIP Facility.

6.      However, the liquidation "fire sale" of the Debtors' assets the Committee seeks will likely destroy all remaining value for creditors.  The Debtors' software is most valuable if it continues to work.  This outcome is far from assured in a liquidation.  A chapter 7 trustee is unlikely to be able to maintain the employees and service providers that are essential to ensure the software continues to function in the manner required by those who would seek to acquire it (or at all).  Indeed, if there is an outage it may not be possible for the software to be restored to operating capacity without the support of the Debtors' key employees who possess critical institutional knowledge and are unlikely to remain with the business through a liquidation process.

7.      That would leave a chapter 7 trustee with only bare source code to sell.  The DIP Lenders have already articulated the significant time and expense involved for a prospective

---

[14]     Conversion Motion at ¶ 37.

[15]     *Id.* at ¶ 7 (emphasis added).

purchaser to "stand up" the Debtors' source code in a manner that allows it to function in any third-party environment.[16]  The absence of the know-how that can only accompany the Debtors' assets through a going concern sale certainly exacerbates those challenges.

8.      While eroding the value of the Debtors' assets, conversion will also increase the size of the unsecured claims pool and dilute recoveries to unsecured creditors.  Cessation of operations will give rise to significant damage claims by customers (including certain of the DIP Lenders). While the Committee wrings its hands over the incurrence of secured debt to allow for a going concern sale of the Debtors, it ignores the dire economic consequences for this portion of its constituency if the Conversion Motion succeeds.

9.      The DIP Lenders and Debtors have worked diligently to provide an alternative financing proposal that addresses the concerns of the Court, the Committee and the United States Trustee and that ensures the Debtors have sufficient liquidity to conduct a value-maximizing sale process that serves the best interests of all stakeholders.  The Conversion Motion should be denied.

---

[16]      *See DIP Lenders' Statement in Support of the Debtors' Motion to Approve Debtor-In-Possession Financing* [D.I. 144].  While the DIP Lenders sought to assist the Debtors to address these issues through the development of automatic scripts, programs, and documented artifacts (i.e., manuals) the DIP Lenders will no longer be able to do so in light of the revisions that have been made to the DIP Facility to address the objections of the Committee and United States Trustee.

Dated: July 10, 2024                          Respectfully submitted,
       Wilmington, Delaware

/s/ Nicholas J. Brannick                      /s/ Kevin S. Mann
Tobey M. Daluz (DE No.3939)                   Christopher P. Simon (No. 3697)
Nicholas J. Brannick (DE No. 5721)            Kevin S. Mann (No. 4576)
BALLARD SPAHR LLP                             CROSS & SIMON LLC
919 N. Market Street, 11th Floor              1105 N. Market Street, Suite 901 Wilmington,
Wilmington, Delaware 19801-3034               DE 19801
Telephone: (302) 252-4465                     Telephone: (302) 777-4200
Facsimile: (302) 252-4466                     Facsimile: (302) 777-4224
E-mail: daluzt@ballardspahr.com               csimon@crosslaw.com
        brannickn@ballardspahr.com            kmann@crosslaw.com

Counsel to Albertsons Companies, Inc.         -and-

                                              Joshua M. Mester (Admitted Pro Hac Vice)
                                              Kathryn Sutherland-Smith
                                              JONES DAY
                                              555 South Flower Street  Fiftieth Floor
                                              Los Angeles, CA  90071
                                              Telephone: (213) 489-3939
                                              jmester@jonesday.com
                                              ksutherlandsmith@jonesday.com

                                              Counsel to Woolworths Group Limited

/s/ Michael Busenkell
Michael Busenkell (DE 3933)
GELLERT SEITZ BUSENKELL &
BROWN, LLC
1201 N. Orange St., Ste. 300
Wilmington, DE 19801
Telephone: (302) 425-5812
mbusenkell@gsbblaw.com

        -and-

Wendy G. Marcari* (Admitted Pro Hac
Vice)
EPSTEIN BECKER & GREEN, P.C.
875 Third Avenue
New York, NY 10022
Telephone: (212) 351-4500
WMarcari@ebglaw.com

Counsel to Village Super Market, Inc.,
ShopRite of Hunterdon County, Inc., and
Inserra Supermarkets, Inc.

## CERTIFICATE OF SERVICE

Nicholas J. Brannick certifies that, on July 10, 2024, he caused a true and correct copy of the foregoing *DIP Lenders' Opposition to Motion of the Official Committee of Unsecured Creditors for Entry of an Order Converting the Debtors' Chapter 11 Cases to Cases Under Chapter 7 of the Bankruptcy Code* to be served *via* CM/ECF on all parties who have registered for electronic service in these cases.

Dated: July 10, 2024
Wilmington, Delaware

/s/ *Nicholas J. Brannick*
Nicholas J. Brannick (DE No. 5721)
BALLARD SPAHR LLP