**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>TAKEOFF TECHNOLOGIES, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 24-11106 (CTG)<br><br>(Jointly Administered)<br><br>**Hearing Date: October 23, 2024 at 3:30 p.m. (ET)**<br>**Obj. Deadline: October 16, 2024 at 4:00 p.m. (ET)** |

**MOTION OF KNAPP INC. AND KNAPP SYSTEMINTEGRATION GMBH
FOR (A) ALLOWANCE OF ADMINISTRATIVE EXPENSE CLAIMS
PURSUANT TO 11 U.S.C. §§ 365(d)(3), 503(b)(1) AND 507(a)(2), AND
COMPELLING IMMEDIATE PAYMENT THEREOF, AND (B) FOR SANCTIONS
AGAINST THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

KNAPP, Inc. ("KNAPP U.S." or "KUS") and its affiliate KNAPP Systemintegration GmbH ("KSI," and together with KUS, "KNAPP"), by and through their undersigned counsel, hereby move (the "Motion") for the entry of an order, pursuant to sections 365(d)(3), 503(b)(1) and 507(a)(2) of title 11 of the United States Code (as amended, the "Bankruptcy Code"), (a) allowing and compelling immediate payment of their administrative expense claims in connection with goods and services provided to the estate post-petition, and (b) for recovery of fees and costs associated with this Motion in the form of sanctions against the Official Committee of Unsecured Creditors (the "Committee") for its legally baseless and bad faith conduct that necessitated this Motion. In support of the Motion, KNAPP relies upon: (i) the *Declaration of Clemens Bauer*, attached hereto as **Exhibit B** (the "Bauer Decl."), (ii) the *Declaration of Brett S. Theisen, Esq.*, attached hereto as **Exhibit C** (the "Theisen Decl."), and

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of the Debtors federal tax identification numbers, as applicable, are: Takeoff Technologies, Inc. (0552); Takeoff Technologies Canada, Inc.; Takeoff Technologies Australia Pty Ltd.; Takeoff Technologies FZE; Takeoff International Subco India Private Limited; and

respectfully represents as follows:

## JURISDICTION

1. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334. Venue is proper under 28 U.S.C. §§ 1408 and 1409. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2).

2. The statutory and legal predicates for the relief granted herein are sections 365(d)(3), 503(b)(1) and 507(a)(2) of the Bankruptcy Code. Pursuant to Del. Bankr. L.R. 9013-1(f), KNAPP consents to the entry of final orders or judgments by the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## BACKGROUND

**The Chapter 11 Cases**

3. On May 30, 2024 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") with the United States Bankruptcy Court for the District of Delaware (the "Court"), thereby commencing the above-captioned cases (the "Chapter 11 Cases").

4. On June 6, 2024, the Debtors filed a motion (the "Bidding Procedures Motion") seeking authority to proceed with a bidding and auction process to consummate a sale or series of sales (the "Sale Process") that the Debtors expected to generate maximum value for their assets. *See Combined Disclosure Statement and Joint Chapter 11 Plan of Takeoff Technologies, Inc. and its Debtor Affiliates* (the "Combined Plan/DS") [Dkt. 416 at 20].[2] To facilitate the Sale Process, the Debtors, in consultation with their professional advisors, proposed certain customary

---

Takeoff International Subco, LLC. The location of the Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is 203 Crescent Street, Suite 203, Waltham, Massachusetts 02453.

bidding procedures to preserve flexibility in the Sale Process, generate the greatest level of interest in the Debtors' assets, and result in the highest or otherwise best value for those assets. *Id*. Given the Debtors' liquidity situation at the outset of the Chapter 11 Cases, the Debtors believed that a timely sale of their assets would maximize value to the greatest extent possible under the circumstances of these Chapter 11 Cases, and generate the highest possible recoveries in the most efficient and expeditious manner possible, which would inure to the benefit of the Debtors' creditors and other stakeholders. *Id*. As set forth in the Bidding Procedures Motion, the Debtors, in consultation with their professional advisors, worked extensively to implement a robust and expeditious Sale Process. *Id*.

5. On July 12, 2024, after the Debtors, the Committee, and the DIP Lenders reached the Global Settlement. *Id*. at 21. As formally documented in the Final DIP Order [Dkt. 224], the Debtors, the DIP Lenders, and the Committee agreed that, "[i]n the event that the DIP Collateral Agent or the DIP Lenders (or some combination of them) credit bid for any portion of the Debtors' assets, such bid shall also include an amount of cash (to be funded equally by Woolworths and Albertsons) equal to the difference between $2.5 million and the Closing Date Cash, but not to exceed $700,000." *Id*. This amount was reserved specifically to pay expenses necessary to wind down the Estates and fund Distributions to Allowed Claims, and ensured a recovery to General Unsecured Creditors while providing the Debtors with a consensual chapter 11 process. *Id*.

6. As of the filing of this Combined Plan/DS, the Debtors are holding approximately $1,700,000.00 in Cash. *Id*. The Debtors' current projections anticipate that $1,200,000.00 in Cash will remain in the Debtors' Estates at Confirmation, subject to certain caveats set forth therein. *Id*. As a result of the Global Settlement, the General Unsecured Creditors will receive an

---

[2] Capitalized terms not otherwise defined herein shall have the meanings set forth in the Combined Plan/DS.

assured recovery in all Sub-Classes in Class 3. *Id*. **In other words, the estates are not administratively insolvent**.

7. Also on July 12, 2024, the Bankruptcy Court entered the Bidding Procedures Order, approving the Bidding Procedures and establishing, among other things, August 8, 2024, as the bid deadline, August 12, 2024, as the auction date, and August 14, 2024, as the hearing to approve the Sale. *Id*. at 20. The only qualified bid received pursuant to the Bidding Procedures Order was submitted by Woolworths Group Limited for a credit bid of its respective DIP Loan Claims. *Id*. Accordingly, Woolworths Group Limited was selected as the successful bidder for the collateral granted under the Final DIP Order and certain other of the Debtors' Assets. On August 16, 2024, the Court entered the Sale Order. *Id*.

8. On or about, August 31, 2024, the sale to Woolworths Group Limited closed (the "Sale Closing Date").

9. On September 9, 2024, the Debtors filed their *Third Omnibus Motion for Entry of an Order (I) Authorizing the Rejection of Certain Executory Contracts and Unexpired Leases, Effective as of the Rejection Date, (II) Authorizing the Abandonment of Certain Personal Property in Connection Therewith, and (III) Granting Related Relief* (the "Contract Rejection Motion") [Dkt. 376]. The Contract Rejection Motion sought, *inter alia*, to reject all existing executory contracts with KNAPP and to abandon certain personal property being stored by KNAPP, effective as of September 9, 2024 (the "Rejection Date"). On September 19, 2024, the Court entered an order approving the relief sough in the Contract Rejection Motion.

**KNAPP's Business Relationship with the Debtors**

10. KNAPP supplies automated logistics systems, component parts, and support services to the Debtors and their customers, the ultimate end-users of KNAPP's goods and services. Bauer Decl. at 2. As set forth in the Debtors' first day declaration, and discussed on the

record during these proceedings, the Debtors' principle asset is cloud-based software. The Debtors "partner[ed] with a third party equipment manufacturer for the hardware . . . Utilizing this manufacturer's equipment and robotics integrated with the Debtors' proprietary software, the Debtors created an end-to-end solution covering customer user interface, assortment, fulfillment, spoke routing, pickup/delivery, and replenishment." [D.I. 12 at 4-5]. KNAPP is the "third-party manufacturer" of equipment and robotics—an integral and requisite element of the Debtors' operations. Bauer Decl. at 2.

11. KNAPP provides hardware and support services to the Debtors pursuant to certain executory contracts, including: (a) that certain Amended and Restated Master System Purchase Agreement, dated October 29, 2020, and all exhibits, appendices, and/or amendments thereto (the "MSPA"), (b) that certain Amended and Restated Master Services Agreement, dated October 29, 2020, and all exhibits, appendices, and/or amendments thereto (the "MSA"), and (c) that certain Storage Agreement, dated June 25, 2019 and all exhibits, appendices, and/or amendments thereto (the "Storage Agreement"). Bauer Decl. at 3.

12. KUS provides such goods and services to the Debtors under the MSPA and MSA in the United States and Canada only, and KSI provides such goods and services to the Debtors under the MSPA and MSA in all other countries in which the Debtors conduct business. Bauer Decl. at 4.

13. In addition, KUS, pursuant to the Storage Agreement, leased the Debtors up to approximately 48,500 square feet of dedicated warehouse space, including attendant loading docks, parking and other amenities, and certain external space, at a KUS facility located at 2120 Barret Park Dr., Kennesaw, Georgia (the "KNAPP Warehouse"). Bauer Decl. at 5. KUS also provided labor to the Debtors under the Storage Agreement. Bauer Decl. at 5. The Debtors utilized the KNAPP Warehouse to hold completed micro-fulfillment center ("MFC") systems

5

pending sale to an end-user customer, and/or installation. Bauer Decl. at 5. The formulas governing rent due from the Debtors to KNAPP for use of the KNAPP Warehouse, and the related labor costs, are set forth in the Storage Agreement. *See* Bauer Decl., Exhibit 1.

14. As of the Petition Date, KUS was holding five (5) MFC systems for the Debtors. Bauer Decl. at 7. At present, KUS continues to hold two (2) MFC systems, notwithstanding the Debtors' rejection of the Storage Agreement on September 19, 2024 (pending direction from the DIP Lenders, who assert liens on the MFC systems in KNAPP's possession). Bauer Decl. at 7.

15. On or about June 26, 2024, KUS timely filed a proof of claim against debtor Takeoff Technologies, Inc., asserting a pre-Petition Date claim in the amount of $15,611,089. On or about June 26, 2024, KSI timely filed a proof of claim against debtor Takeoff Technologies, Inc., asserting a pre-Petition Date claim in the amount of $2,479,642.27. Bauer Decl. at 8.

16. Although the Debtors failed to timely pay KNAPP certain amounts due under the MSA and the Storage Agreement in the ordinary course of business post-Petition Date, KNAPP continued to provide services and unfettered access to the KNAPP Warehouse to the Debtors, up to the Sale Closing Date and/or the Rejection Date, as applicable. Bauer Decl. at 9. A summary of the invoices and amounts due from the Debtors for the post-Petition Date period is as follows:

**Storage Agreement - KUS**

| Obligation Type | Document | Due date | Amount |
|---|---|---|---|
| Storage_June | 1139035140 | 7/7/2024 | $ 36,437.24 |
| External Storage_June | 1139035141 | 7/7/2024 | $ 5,175.00 |
| Storage_July | 1139037259 | 8/30/2024 | $ 36,437.24 |
| External Storage_July | 1139037260 | 8/30/2024 | $ 5,175.00 |
| Storage_August | | 9/30/2024 | $ 36,437.24 |
| External Storage_August | | 9/30/2024 | $ 5,175.00 |
| Storage_September (thru 9/9 Rejection) | | N/A | $ 10,931.17 |
| | | | **$ 135,767.89** |

**MSA – KUS**

| Obligation Type | Document | Due date | Amount | |
|---|---|---|---|---|
| 1139035189 – Parts – 6/7/24 | 1139035189 | 7/7/2024 | $ | 1,212.46 |
| | | | $ | **1,212.46** |

**MSA – KSI**

| Service Type/Order No. | Service date(s) | Invoice Date | Due date | Invoice No | Currency | Amount | |
|---|---|---|---|---|---|---|---|
| Call Out/MSCC ticket 1425527 | 8/25/2024 | 9/5/2024 | 10/5/2024 | 1199010650 | EUR | EUR | 545.10 |
| Call Out/MSCC ticket 1425126 | 8/23/2024 | 9/5/2024 | 10/5/2024 | 1199010651 | EUR | EUR | 1,090.20 |
| Call Out | | 6/6/2024 | 7/6/2024 | 1199009579 | EUR | EUR | 817.00 |
| Call Out/MSCC ticket 1419151 | 8/1/2024 | 9/5/2024 | 10/5/2024 | 1199010652 | EUR | EUR | 1,090.20 |
| Call Out/MSCC ticket 1419724 | 8/3/2024 | 9/5/2024 | 10/5/2024 | 1199010647 | EUR | EUR | 1,090.20 |
| Call Out/MSCC ticket 1425463 | 8/23/2024 | 9/5/2024 | 10/5/2024 | 1199010648 | EUR | EUR | 817.65 |
| Call Out/Follow up to ticket 1425463 | 8/25/2024 | 9/5/2024 | 10/5/2024 | 1199010649 | EUR | EUR | 545.10 |
| Call Out/MSCC ticket 1419151 | 7/31/2024 | 9/5/2024 | 10/5/2024 | 1199010652 | EUR | EUR | 1,090.20 |
| | | | | | | **EUR** | **7,085.65** |
| | | | | | | | |
| Emergency Tickets/1409366, 1419151, 1420011 | 6/24/2024, 7/31/2024, 8/4/2024 | to be billed | | | USD | USD | 7,457.31 |
| Emergency Tickets/1412871 | 7/7/2024 | to be billed | | | USD | USD | 2,722.51 |
| | | | | | | **USD** | **10,179.82** |

17. The foregoing amounts are true and correct, and reflect the actual amounts due and owing from the Debtors to KNAPP for the post-Petition Date period. Bauer Decl. at 10-11.

18. Copies of the invoices that KNAPP presently has available are attached to the Bauer Decl. as Exhibit 2; the balance will be filed as a supplement hereto as the same become available. KNAPP acknowledges that certain of these invoices are not yet due, but includes them in this Motion because they will become due prior to the return date.

19. KUS asserts that it is entitled to an administrative expense claim in the amount of $136,980.35, which the Debtors should be required to satisfy immediately. Bauer Decl. at 10-11.

20. KSI asserts that it is entitled administrative expense claims in the amounts of €7,085.65 and $10,179.82, which the Debtors should be required to satisfy immediately. Bauer Decl. at 10-11.

### KNAPP's Negotiations and Agreement with the Debtors on Post-Petition Amounts

21. Prior to filing this Motion, counsel for KNAPP engaged in multiple email and telephone communications with the Debtors' professionals, in an effort to reconcile the post-petition amounts due to KNAPP and agree on an allowed administrative claim amount. Theisen Decl. at 2. **Those discussions were productive and successful.** Theisen Decl. at 2.

22. On or about September 17, 2024, KNAPP and the Debtors reached an agreement, and the Debtors committed to pay all of the outstanding amounts due to KSI, and an amount to KUS that was slightly discounted from the amount sought herein (which KNAPP agreed to because it would not have to incur the expense of motion practice to obtain an allowed administrative expense claim). Theisen Decl. at 3. On September 19, 2024, the Debtors' Deputy CRO confirmed by email that the agreed amounts would be paid to KNAPP during the week of September 23-27, 2024. Theisen Decl. at 3.

23. However, on the morning of September 27, 2024, Takeoff's counsel communicated to KNAPP's counsel that the Committee was objecting to any payment to KNAPP—despite the fact that the Committee did not object to the Debtors' proposed payments of administrative expenses to all other trade vendors and employees. Theisen Decl. at 4. Indeed, Takeoff's counsel indicated that the Debtors "do not recognize any legal basis for the Committee's objection to our payment to KNAPP, nor do we see any valid reason to disregard the [B]ankruptcy [C]ode's clear provisions in this regard." Theisen Decl. at 4. Nevertheless,

8

Takeoff did not want to make a payment to KNAPP unless it was approved by the Court, given the Committee's stance. Theisen Decl. at 4.

24. Counsel for KNAPP then immediately contacted Committee counsel to inquire as to the legal bases for the Committee's objection. Theisen Decl. at 5. Committee counsel did not identify any legal bases, however, and only noted the fact that the Committee did not want to see money being paid out at this time in view of ongoing discussions concerning possible conversion of these cases to chapter 7. Theisen Decl. at 5.

25. That explanation, however, does not carry weight for two reasons: first, the Committee was not objecting to the Debtors' payment of other trade-related administrative expenses, and two, the estate is not administratively insolvent—indeed, as the Combined Plan/DS notes, there will be an "assured" distribution to general unsecured creditors even after satisfaction of all administrative and priority claims. Accordingly, the Committee's objection—made without any legally cognizable basis—is wholly frivolous and made in bad faith, singling out KNAPP for prejudicial treatment.

26. Later that afternoon, counsel for KNAPP wrote to Committee counsel and advised that if the Committee did not withdraw its meritless and bad faith objection by the close of business that day (September 27, 2024[3]), KNAPP would seek to recover its fees and costs in the form of sanctions against the Committee. Theisen Decl. at 6. The Committee did not respond. Theisen Decl. at 6.

---

[3] Which would have allowed the Debtors to include the KNAPP amounts in the payments scheduled to be made to other administrative claimants on September 30, 2024.

3102686.3 116121-109520

**RELIEF REQUESTED**

27.     By this Motion, KNAPP requests that this Court enter an order, substantially in the form submitted herewith, pursuant to 11 U.S.C. §§ 365(d)(3), 503(b)(1) and 507(a)(2), (i) granting KUS an allowed administrative expense claim in the amount of $136,980.35, (ii) granting KSI allowed administrative expense claims in the amounts of €7,085.65 and $10,179.82, and (iii) compelling the Debtors to satisfy such claims by payment to KNAPP within five (5) business days.

28.     KNAPP further requests that this Court enter, pursuant to its inherent powers and 11 U.S.C. § 105(a), an award of attorneys' fees and costs incurred in the filing of this Motion to KNAPP in the form of a sanction against the Official Committee of Unsecured Creditors, as a result of its legally baseless and bad faith conduct, which necessitated the filing of this Motion.

**BASIS FOR RELIEF**

**Allowance and Payment of Administrative Expense Claims**

29.     Section 503(b) of the Bankruptcy Code provides, in relevant part, that, "[a]fter notice and a hearing, there shall be allowed administrative expenses . . . including . . . the actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1)(A). To qualify for an administrative priority, an expense (i) must arise from a post-petition transaction with the debtor-in-possession and (ii) must be beneficial to the debtor-in-possession in the operation of the business. *In re Marcal Paper Mills, Inc.*, 650 F.3d 311, 314-15 (3d Cir. 2011) (citing *Calpine Corp. v. O'Brien Env't Energy, Inc.* (*In re O'Brien Env't Energy, Inc.*), 181 F.3d 527, 532-33 (3d Cir. 1999)).

30.     A creditor owed administrative expense payments may show entitlement to immediate payment under Section 503(b) by showing (i) that the debtor is able to pay, and (ii) that immediate payment is necessary. *In re NE Opco, Inc.*, 501 B.R. 233, 259 (Bankr. D. Del.

2013). Here, as noted above, the Debtor has the ability to pay KNAPP now, and in fact desired to pay KNAPP, but for the Committee's frivolous objection. As such, immediate payment is necessary to prevent undue prejudice to KNAPP, when all other similarly situated trade vendors are being timely paid in the ordinary course of business for their post-petition dealings with the Debtors. *See In re Valley Media, Inc.*, 290 B.R. 73, 77 (Bankr. D. Del. 2003) ("I see no reason why MIT, saddled with a tax burden that by the terms of the Lease and pursuant to § 365(d)(3) is to be borne by Debtor, should be put in a worse position than other post-petition creditors who are paid during a Chapter 11 case in the ordinary course of business.").

31. In addition, Section 365(d)(3) affects the allowance of administrative expenses by providing that "[t]he trustee shall timely perform all the obligations of the debtor . . . arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, *notwithstanding section 503(b)(1) of this title*." 11 U.S.C. § 365(d)(3) (emphasis added). Section 365(d)(3) does not create a separate right to an administrative expense payment outside Section 503(b). Rather, it injects additional dynamics into the operation of Section 503(b). See *Valley Media, Inc.*, 290 B.R. at 77. First, Section 365(d)(3) makes mandatory ("shall timely perform") the payment of rent incurred by a leasee in its performance under an unexpired nonresidential real estate lease. "Therefore, by operation of law, a landlord is entitled to allowance under Section 503(b) of costs and expenses incurred according to the terms of the lease, whatever those terms happen to be, regardless of whether the Court otherwise might judge their incurrence to have been non-beneficial to the estate." *In re Go Fig, Inc.*, 2009 Bankr. LEXIS 533, at *7 (Bankr. E.D. Mo. Feb. 5, 2009). "This means that a bankruptcy court has no discretion under Section 503(b) in determining whether to allow a cost or expense described in Section 365(d)(3), beyond determining whether the landlord established that it performed according to the terms of the lease." *Id.*; *accord Valley Media, Inc.*, 290 B.R.

73. "Second, Section 365(d)(3) makes irrelevant the issue of whether the landlord's performance preserved the estate or—if it did preserve the estate—whether the costs and expenses incurred were actual and necessary to the preservation." *Id.* "The lease and the leasee's post-petition performance under it—not reasonableness, not actualness, not necessariness, not benefit to the estate—is what the Court considers in determining whether a landlord is entitled to allowance of such administrative expenses." *Id.*

32.     With respect to payment timing, the Code directs that obligations covered by Section 365(d)(3) must be paid immediately ("shall timely perform"), without the need to show necessity of payment. *Valley Media, Inc.*, 290 B.R. at 77 ("The language of § 365(d)(3) requires an estate representative to make immediate payment of nonresidential lease obligations where the estate representative can meet those obligations consistent with its obligations to others. … It is when the estate is administratively insolvent and the trustee fails to comply with § 365(d)(3) that 'an <u>automatic</u> grant of superpriority status is more problematic.'") (citations omitted).

33.     KNAPP provided good and services, and leased the KNAPP Warehouse, to the Debtors following the Petition Date, which facilitated the Debtors' continued operations as debtors in possession, and preserved the value of the Debtors' assets stored by KNAPP during the sale process. The Debtors occupied the KNAPP Warehouse at all times through the Contract Rejection Date (and, in fact, abandoned two MFC systems at the KNAPP Warehouse, such that KNAPP still does not enjoy unfettered use of its property). KNAPP's post-petition services also directly benefited the Debtors and their estates, entitling KNAPP to an administrative expense claim, pursuant to sections 365(d)(3) and 503(b) of the Bankruptcy Code, for the (a) value of the goods and services provided and (b) the unpaid rent for the KNAPP Warehouse, after the Petition Date. Accordingly, as set forth in the summaries above and supported by the accompanying

invoices and the Bauer Decl., KNAPP requests the allowance and immediate payment of an administrative expense claim in the following amounts: (a) $136,980.35, to KUS; (b) €7,085.65 to KSI; and (c) $10,179.82 to KSI.

### Request for Sanctions against the Committee

34. The Committee's conduct towards KNAPP, when it had no legal basis to object to the Debtors' proposed payment of valid post-petition obligations, including rent under the Storage Agreement, cannot be viewed as anything other than wilfull, bad faith conduct. This is not a case on the brink of administrative insolvency. Rather, the Committee itself negotiated a $2.5 million settlement for the benefit of unsecured creditors—which, of course, by definition includes administrative expense claimants. The Committee's tactics are wholly unjustified, and have resulted in unnecessary fees expended by KNAPP—one of the Committee's constituents, **if not its largest constituent**—and a waste of judicial resources. As a result, the Court should sanction the Committee, through its professionals, by awarding to KNAPP the costs and fees associated with this Motion out of any future compensation the Committee's professionals may ask this Court to approve.

35. This Court retains the inherent power to do just that. *In re Genesis Health Ventures, Inc.*, 362 B.R. 657, 662 (D. Del. 2007) (bankruptcy court has inherent authority to "award sanctions in order to enforce decorum and redress vexatious litigation.") (*citing Fellheimer, Eichen & Braverman, P.C. v. Charter Technologies, Inc.*, 57 F.3d 1215, 1224-25 (3d Cir. 1995) (upholding Bankruptcy Court's inherent authority to impose sanctions)). *See also Chambers v. NASCO, Inc.*, 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) (sanction power rooted in 11 U.S.C. § 105(a)).

36. Alternatively, the Court may award sanctions pursuant to 28 U.S.C. § 1927, which provides—

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof [*10] who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

37. It is well settled in this Circuit that "[t]he statute thus limits attorney sanctions imposed thereunder to those situations where an attorney has: (1) multiplied proceedings; (2) unreasonably and vexatiously; (3) thereby increasing the cost of the proceedings; (4) with bad faith or with intentional misconduct." *LaSalle Nat'l Bank v. First Connecticut Holding Group*, 287 F.3d 279, 288 (3d Cir. 2002). Respectfully, all four factors exist here.

## RESERVATION OF RIGHTS

38. . The filing of this Motion shall not be construed as a waiver or release of any of KNAPP's claims, rights, or remedies under the Agreements, any related agreements, the Bankruptcy Code, or other applicable law. KNAPP reserves the right to supplement or amend this Motion in any manner and for any purpose including without limitation to assert additional administrative claims for any additional period. Without limitation, KNAPP expressly reserves the right to assert that amounts due and owing to KNAPP are administrative expense claims under the Bankruptcy Code.

## NO PRIOR REQUEST

39. No previous motion for the relief sought herein has been made to this or any other Court.

## **NOTICE**

40.   Notice of this Motion will be provided via: (1) electronic mail to (i) counsel for the Debtors, (ii) the U.S. Trustee, (iii) counsel for the Committee, and (iv) counsel for the DIP Lenders, and (2) to all parties that have formally requested notice pursuant to Bankruptcy Rule 2002 via the Court's CM/ECF System.  KNAPP respectfully submits that, in light of the nature of the relief requested, no further or other notice is necessary.

**WHEREFORE**, KNAPP respectfully requests that the Court enter an order, substantially in the form attached hereto as **Exhibit A**, (a), allowing the administrative expense claims in favor of KNAPP, (b) compelling immediate payment thereof, (c) awarding fees and costs to KNAPP, and (d) granting such other and further relief as the Court deems just and proper.

Dated:  October 2, 2024
Wilmington, Delaware

*/s/ Katharina Earle*
Katharina Earle
**GIBBONS P.C.**
300 Delaware Avenue, Suite 1015
Wilmington, Delaware 19801-1671
Tel: (302) 518-6300
Email: kearle@gibbonslaw.com

-and-

Brett S. Theisen, Esq. (admitted *pro hac vice*)
**GIBBONS P.C.**
1 Pennsylvania Plaza
Floor 45, Suite 4515
New York, New York 10119
Tel: (212) 613-2000
Email: btheisen@gibbonslaw.com

*Counsel to Knapp Inc. and
KNAPP Systemintegration GmbH*

3102686.3 116121-109520