**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | Chapter 11 |
| TAKEOFF TECHNOLOGIES, INC, *et al.,*[1] | Case No. 24-11106 (CTG) |
| Debtors. | (Jointly Administered) |

**OBJECTION OF THE OFFICIAL**
**COMMITTEE OF UNSECURED CREDITORS**
**TO THE MOTION OF KNAPP INC. AND KNAPP**
**SYSTEMINTEGRATION GMBH FOR (A) ALLOWANCE**
**OF ADMINISTRATIVE EXPENSE CLAIMS PURSUANT TO**
**11 U.S.C. §§ 365(d)(3), 503(b)(1) AND 507(a)(2), AND COMPELLING**
**IMMEDIATE PAYMENT THEREOF, AND (B) FOR SANCTIONS**
**AGAINST THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

The Official Committee of Unsecured Creditors (the "Committee") of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), by and through its undersigned counsel, hereby submits to the Court this objection (this "Objection") to the *Motion of Knapp Inc. and Knapp Systemintegration GmbH for (A) Allowance of Administrative Expense Claims Pursuant to 11 U.S.C. §§ 365(d)(3), 503(b)(1) and 507(a)(2), and Compelling Immediate Payment Thereof, and (B) for Sanctions Against the Official Committee of Unsecured Creditors* [Docket No. 421] (the "Motion"). In support of this Objection, the Committee respectfully states as follows:

---

1 The Debtors in these chapter 11 cases, along with the last four digits of their federal tax identification numbers, as applicable, are: Takeoff Technologies, Inc. (0552); Takeoff Technologies Canada, Inc.; Takeoff Technologies Australia Pty Ltd. (ACN 639 288 958); Takeoff Technologies FZE; Takeoff International Subco India Private Limited.; and Takeoff International Subco, LLC. The location of the Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is 203 Crescent Street, Suite 203, Waltham, Massachusetts 02453.

## PRELIMINARY STATEMENT[2]

1.       By its Motion, Knapp attempts to do two things: ***first***, seek payment for several types of claims asserted by two affiliated Knapp entities under a storage facility agreement and a master services agreement and, ***second***, seek sanctions against the Committee's professionals for what Knapp falsely portrays as frivolous objections to immediate payment of the Knapp Claims based on personal animus for Knapp.  Knapp does not, by a long shot, meet its burden on either front.

2.       First, Knapp does not satisfy the heavy burden it must meet to prove that the Knapp Claims qualify as an administrative expense of the Debtors' estates.  Knapp seeks to shoehorn all of its claims into administrative expense status on the basis of section 365(d)(3) of the Bankruptcy Code, no matter how those claims arose.  Knapp apparently ignores the fact that section 365(d)(3) applies only to obligations under nonresidential real property leases, and a significant portion of the Knapp Claims arise from a services agreement, *not* a real property lease.  Moreover, certain of the claims that purport to arise under the storage agreement do not pertain to nonresidential real property, and similarly may not fall under section 365(d)(3).  Knapp must independently satisfy the administrative expense standard for those claims that are not governed by section 365(d)(3) of the Bankruptcy Code, but it blatantly fails to do so.

3.       Second, even if Knapp can adequately support its administrative expense claims, Knapp has not proven that it is entitled to immediate payment on those claims.  Even nonresidential real property claims entitled to protection under section 365(d)(3) may not be granted immediate payment, particularly when the debtor faces liquidity challenges, as is the case here.

4.       Here, the Debtors face serious liquidity challenges that could ultimately lead to *pro*

---

[2] Capitalized terms used but not otherwise defined in the Preliminary Statement shall have the meanings ascribed to them herein.

*rata* payment of administrative expense claims.  The Committee has moved to convert the Debtors'

chapter 11 cases to cases under chapter 7 of the Bankruptcy Code because of numerous estate

expenses that were not previously accounted for and would sap the Debtors' liquidity, including the

Knapp Claims.  Knapp intentionally weaves together a fanciful narrative that would put its claims

ahead of all other similarly situated creditors, but the truth is simple:  Knapp was aware of this threat

of conversion when it self-interestedly demanded immediate payment of the Knapp Claims ahead of

other potential estate liabilities.

5.        When the Committee prevented Knapp's early cash out on its claims (potentially at

the expense of other similarly situated creditors), Knapp lashed out.  Notwithstanding the valid

concerns described in this Objection, Knapp audaciously threatened to seek, and then actually sought

in its Motion, sanctions against the Committee's professionals for preventing immediate payment.

6.        But the Committee's actions were not sanctionable; rather, they were entirely

consistent with the Committee's fiduciary duties.  The Committee asserted an informal, but entirely

proper, objection to the immediate payment of potentially disputed, but certainly unverified,

administrative expense claims that had not been filed with the Court.  Given the concerns that

surround the Debtors' undisclosed and unbudgeted liabilities that only recently came to light, Knapp's

insufficient support of the administrative expense status of its claims, and the legal objections

described herein, the Committee needed sufficient time to investigate the validity and necessity of

immediate payment of the Knapp Claims.

7.        Further, the fact that the Debtors were willing to pay the Knapp Claims upon demand,

despite their current liquidity issues and the Committee's (and the remaining DIP Lenders') requests

to convert these cases—a situation that is troubling but typical—illustrates exactly why the

Committee acted when it did.  If these Chapter 11 Cases are converted, an independent trustee can

liquidate the Debtors' assets and make equivalent distributions to all similarly situated creditors, including Knapp, depending on the validity and priority of their alleged claims.

8.      The Committee's objection to the Knapp Claims is not sanctionable—it is appropriate and sound.  Knapp, like all other creditors, has not adequately supported its claims or proven it is entitled to payment before similarly situated creditors.  Given the potential for conversion of these cases, immediate payment of the Knapp Claims as administrative expense claims should be denied.

## JURISDICTION

9.      The United States District Court for the District of Delaware has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, which was referred to the United States Bankruptcy Court for the District of Delaware (the "Court") under 28 U.S.C. § 157 pursuant to the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Committee confirms its consent pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

10.     Venue in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

11.     The statutory basis for the relief requested herein is sections 105(a), 365(d)(3), 503(b)(1), and 507(a)(2) of title 11 of the United States Code (the "Bankruptcy Code").

**RELIEF REQUESTED**

12.     By this Objection, the Committee requests entry of an order denying Knapp's request for (a) allowance of certain alleged claims entitled to administrative expense status and compelling immediate payment thereof and (b) sanctions against the Committee in the form of future compensation owed to the Committee.

**BACKGROUND**

**A.     General Case Background**

13.     On May 30, 2024 (the "Petition Date"), the Debtors commenced voluntary cases under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases"). The Debtors continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. Additional information about the Debtors' Chapter 11 Cases is set forth in the *Declaration of Brett M. Anderson in Support of Chapter 11 Petitions, the DIP Motion, and First Day Pleadings* [Docket No. 12] (the "First Day Declaration") filed on the Petition Date.

14.     On June 12, 2024, pursuant to section 1102 of the Bankruptcy Code, the United States Trustee for Region 3 (the "U.S. Trustee") appointed the Committee [Docket No. 64]. On June 13, 2024, the Committee selected Kilpatrick Townsend & Stockton LLP ("Kilpatrick") and Ashby & Geddes, P.A. as its proposed counsel. On June 17, 2024, the Committee selected Dundon Advisers LLC as its proposed financial advisor. Following the undersigned Committee counsel's change in law firm from Kilpatrick to Eversheds Sutherland (US) LLP ("Eversheds Sutherland"), the Committee selected Eversheds Sutherland as its proposed counsel in place of Kilpatrick. The Court entered orders approving the Committee's retention of each of its professionals [Docket Nos. 250, 252, 251, 391].

15.     On June 30, 2024, the Committee filed the *Motion of the Official Committee of Unsecured Creditors for Entry of an Order Converting the Debtors' Chapter 11 Cases to Cases Under Chapter 7 of the Bankruptcy Code* [Docket No. 147] (the "First Conversion Motion").

16.     Following successful arms'-length negotiations regarding a purported global settlement with the Debtors and the DIP Lenders, on July 12, 2024, the Committee withdrew the First Conversion Motion [Docket No. 226].

17.     On September 27, 2024, the Debtors filed the *Combined Disclosure Statement and Joint Chapter 11 Plan of Takeoff Technologies, Inc. and its Debtors Affiliates* [Docket No. 416] (the "Plan").  Also on September 27, 2024, shortly after the Debtors filed the Plan, the Committee and the remaining DIP Lenders informed the Debtors that they desired for these Chapter 11 Cases to be converted to cases under chapter 7 of the Bankruptcy Code.[3]

18.     On October 10, 2024, the Committee filed the *Renewed Motion of the Official Committee of Unsecured Creditors for Entry of an Order Converting the Debtors' Chapter 11 Cases to Cases Under Chapter 7 of the Bankruptcy Code* [Docket No. 426] (the "Renewed Conversion Motion").  The Debtors have indicated that absent a consensual Plan, they intend to consent to the Renewed Conversion Motion on or before October 23, 2024, the date that the Renewed Conversion Motion has been set for hearing.

**B.     Amounts Purportedly Owed to Knapp Under the Motion**

19.     Two affiliated entities asserted administrative claims through the Motion: (i) Knapp Inc. ("KUS") and (ii) Knapp Systemintegration GmbH ("KSI" and, together with KUS, "Knapp").

---

3  *See* Ex. I, Renewed Conversion Motion.

20.      KUS asserts administrative expenses arising under two separate agreements (together, the "KUS Claims").  First, KUS seeks payment of amounts purportedly owed under that certain storage agreement by and between KUS and Takeoff Technologies Inc., dated June 25, 2019 (the "Storage Agreement"), which are as follows (collectively, the "KUS Storage Claims"):

| Obligation Type | Document | Due Date | Amount |
|---|---|---|---|
| June Storage | 1139035140 | 7/7/2024 | $ 36,437.24 |
| June External Storage | 1139035141 | 7/7/2024 | $ 5,175.00 |
| July Storage | 1139037259 | 8/30/2024 | $ 36,437.24 |
| July External Storage | 1139037260 | 8/30/2024 | $ 5,175.00 |
| August Storage | - | 9/30/2024 | $ 36,437.24 |
| August External Storage | - | 9/30/2024 | $ 5,175.00 |
| September Storage (prorated) | - | - | $ 10,931.17 |
| Total KUS Storage Claims: | | | $ 135,767.89 |

See Motion ¶ 11.

21.      Second, KUS asserts an additional administrative expense claim of $1,212.46 (the "KUS MSA Claim") under an amended and restated master services agreement, dated October 29, 2020 (the "MSA").  The KUS MSA Claim was allegedly due on July 7, 2024. Motion ¶ 16.

22.      The other Knapp entity, KSI, also has sought payment of administrative expenses purportedly owed under the MSA (the "KSI Claims").  Motion ¶ 12.  The amounts purportedly owed to KSI under the MSA are as follows:

| Service Type/Order No. | Service Date | Invoice Date | Due Date | Invoice No. | Amount |
|---|---|---|---|---|---|
| Call Out/MSCC ticket 1425527 | 8/25/2024 | 9/5/2024 | 10/5/2024 | 1199010650 | € 545.10 |
| Call Out/MSCC ticket 1425126 | 8/23/2024 | 9/5/2024 | 10/5/2024 | 1199010651 | € 1,090.20 |
| Call Out | | 6/6/2024 | 7/6/2024 | 1199009579 | € 817.00 |
| Call Out/MSCC ticket 1419151 | 8/1/2024 | 9/5/2024 | 10/5/2024 | 1199010652 | € 1,090.20 |
| Call Out/MSCC ticket 1419724 | 8/3/2024 | 9/5/2024 | 10/5/2024 | 1199010647 | € 1,090.20 |
| Call Out/MSCC ticket 1425463 | 8/23/2024 | 9/5/2024 | 10/5/2024 | 1199010648 | € 817.65 |
| Call Out/follow up to ticket 1425463 | 8/25/2024 | 9/5/2024 | 10/5/2024 | 1199010649 | € 545.10 |
| Call Out/MSCC ticket 1419151[4] | 7/31/2024 | 9/5/2024 | 10/5/2024 | 1199010652 | € 1,090.20 |
| Total: | | | | | € 7,085.60 |

4 To the extent such line item is duplicative of the line item four rows above it, the Committee also objects to payment of duplicative amounts for a single Call Out service.

| Service Type/Order No. | Service Date | Invoice Date | Due Date | Invoice No. | Amount |
|---|---|---|---|---|---|
| Emergency Tickets 1409366; 1419151; 1420011 | 6/24/2024 7/31/2024 8/4/2024 | To be billed | | | $ 7,457.31 |
| Emergency Tickets 1412871 | 7/7/2024 | To be billed | | | $ 2,722.51 |
| **Total:** | | | | | **$ 10,179.82** |

## C.     Background Regarding the Motion.

23.     On September 9, 2024, the Debtors filed their *Third Omnibus Motion for Entry of an Order (I) Authorizing the Rejection of Certain Executory Contracts and Unexpired Leases, Effective as of the Rejection Date, (II) Authorizing the Abandonment of Certain Personal Property in Connection Therewith, and (III) Granting Related Relief* (the "Contract Rejection Motion") [Docket No. 376].   The Contract Rejection Motion sought, *inter alia*, to reject all existing executory contracts with Knapp and to abandon certain personal property being stored by Knapp, effective as of September 9, 2024.  On September 19, 2024, the Court entered an order approving the relief sought in the Contract Rejection Motion [Docket No.398].

24.     On September 26, 2024, counsel for the Debtors informed the Committee that they intended to remit payment of Knapp's purported administrative expense claims, totaling $ 147,160.17 and € 7,085.65.  The Committee did not have advanced knowledge of the Debtors' proposed immediate payment of the Knapp Claims until that date.

25.     Upon notification, the Committee promptly informed the Debtors that, at this juncture in the Chapter 11 Cases, the Committee did not believe the Knapp Claims should be paid immediately without filing a request for approval or after notice and hearing by the Court.[5]  At the

---

5 This was not the first post-closing payment that the Committee informed the Debtors it opposed.  The Committee, once it became aware of the inaccuracies contained in the budget upon which it had previously relied in connection with the settlement of the First Conversion Motion, repeatedly informed the Debtors that it opposed payment of any post-closing independent director fees.  Unfortunately, the Debtors paid certain of such fees anyway.

time, the Committee was unable to verify the amounts owed to Knapp were actual, reasonable, and necessary costs of preserving the estates. Prior to agreeing to remit payment to Knapp on account of the Knapp Claims, therefore, the Committee intended to discharge its duties to ensure that the purported amounts owed to Knapp are (a) valid, (b) entitled to administrative expense status, and (c) entitled to immediate payment.

26. On September 27, 2024, counsel for Knapp was informed of the Committee's position with respect to the Knapp Claims. Counsel for Knapp then informed counsel for the Committee that the Committee was breaching its fiduciary duties, and that Knapp would be seeking sanctions against the Committee and its counsel if the Committee did not withdraw its objection to immediate payment of Knapp's claims. The Committee, mindful of its fiduciary duties, ignored these bullying tactics.

27. On September 30, 2024, the remaining DIP Lenders sent a letter to the Debtors declaring an event of default under the DIP Financing and demanding payment of all remaining DIP Financing obligations and turnover of post-Closing cash as alleged cash collateral.[6]

28. On October 2, 2024, Knapp filed the instant Motion requesting allowance of certain purported administrative expenses and compelling immediate payment thereof, and absurdly requesting sanctions against the Committee's professionals by requesting the Court award costs and fees out of future compensation that may be approved by the Court.

---

6 *See* Ex. H, Renewed Conversion Motion.

**OBJECTION**

A.      **The Knapp Claims Are Not Entitled to Immediate Payment and May Not Be Entitled to Administrative Expense Status.**

29.      By its Motion, Knapp haphazardly claims that the entirety of the Knapp Claims should be entitled to (i) administrative expense status and (ii) immediate payment because the KUS Storage Claims are related to the Storage Agreement, and therefore fall under the purview of section 365(d)(3) of the Bankruptcy Code.  This is wrong and misleading.

30.      Section 365(d)(3) of the Bankruptcy Code provides in its pertinent part, that:

> The trustee shall timely perform all the obligations of the debtor, … arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of [the Bankruptcy Code].

11  U.S.C. § 365(d)(3).

31.      Moreover, Knapp does not meet its burden in proving that all of its claims are entitled to administrative expense status under Section 503(b)(1) of the Bankruptcy Code.

32.      Section 503(b)(1) of the Bankruptcy Code provides, in pertinent part, that:

> After notice and a hearing, there shall be allowed administrative expenses … including… the actual and ***necessary*** costs and expenses of preserving the estate.

11 U.S.C. § 503(b)(1) (emphasis added).

      i.      **Knapp Claims Arising Under the MSA Are Not Entitled to Immediate Payment Under Section 365(d)(3).**

33.      It is *not* the case that all of the Knapp Claims arise under a nonresidential real property lease.  Instead, a portion of the Knapp Claims—specifically, the KSI Claims and the KUS MSA Claim—arose under the MSA, not the Storage Agreement.  KUS is purportedly owed $1,212.46 under the KUS MSA Claim and KSI is purportedly owed $10,179.82 and €7,085.65 due to services rendered under the MSA.  Because these claims are not related to nonresidential real

property leases, they are not entitled to immediate payment under section 365(d)(3) of the Bankruptcy Code (to the extent that the Court determines that section 365(d)(3) claims are entitled to immediate payment). As such, the Committee was completely within its duties to object to immediate payment of such amounts.

34.     Therefore, when considered altogether, a total of approximately $11,392.28[7] plus €7,085.65 of the Knapp Claims did not arise on account of a nonresidential real property lease and therefore would not fall under the purview of section 365(d)(3) of the Bankruptcy Code.

**ii.     Certain Knapp Claims Should Not Be Entitled to Administrative Expense Status.**

35.     Because the KSI Claims and the KUS MSA Claim are not on account of nonresidential real property, but rather are based on a services contract between the Debtors and Knapp, such claims need to independently qualify for administrative expense status under the Bankruptcy Code.

36.     To qualify for administrative priority, an expense (i) must arise from a postpetition transaction with the debtor-in-possession and (ii) must be beneficial to the debtor-in-possession in the operation of the business. *In re Marcal Paper Mills, Inc.*, 650 F.3d 311, 314-15 (3d Cir. 2011) (*citing Calpine Corp. v. O'Brien Env't Energy, Inc. (In re O'Brien Env't Energy, Inc.*), 181 F.3d 527, 532-33 (3d Cir. 1999)). "The party seeking to recover expenses must 'carry the ***heavy burden*** of demonstrating' that such expenses qualify as an administrative expense." *In re Energy Future Holdings Corp.*, 990 F.3d 728, 741 (3d Cir. 2021) (emphasis added).

---

7 If "labor" costs under the Storage Agreement also are excluded from coverage under section 365(d)(3) of the Bankruptcy Code because they are not leasing obligations, such amount would rise further, to a total of $45,117.28. Pursuant to the Storage Agreement and each invoice related thereto, a significant portion of the KUS Storage Claims (approximately $10,000 per month, or $33,725 in total) are related to "labor" costs and therefore may not fall within the purview of section 365(d)(3) of the Bankruptcy Code.

37.    Despite its protestations, Knapp has not demonstrated any evidence to carry its heavy burden of proving that the expenses underlying the KSI Claims or the KUS MSA Claim were beneficial to the Debtors' estates.

38.    In fact, the Committee opposed immediate payment of the Knapp Claims precisely because Knapp did not satisfactorily show to the Committee that these amounts qualify as valid administrative expenses of the Debtors' estates.  Knapp incorrectly alleges that the Committee's request to review the asserted administrative claims before they were immediately paid was "wholly frivolous and made in bad faith."  Motion ¶ 25.  That is not the case.  The Committee was discharging its fiduciary duty to ensure that the Debtors do not make payments to vendors without a valid and legal basis to do so.

### iii.   Even if the KUS Storage Claims Are Governed by Section 365(d)(3), They Are Not Entitled to *Immediate* Payment.

39.    Many courts have held that the remedy for a debtor-tenant that fails to pay postpetition rent is not immediate payment, but rather "an 'automatic' § 503(b) administrative expense claim."  *In re Goody's Family Clothing, Inc.*, 401 B.R. 656, 667 (D. Del. 2009) (internal citations omitted).

40.    "An administrative expense claim under section 503(b)(1) for post-petition rent, however, need not be timely paid under section 365(d)(3).  Rather, the timing of the payment is in the Court's discretion."  *In re Goody's Family Clothing, Inc.*, 392 B.R. 604, 607 (Bankr. D. Del. 2008), *aff'd* 401 B.R. 656 (D. Del. 2009).  "[D]istributions prior to confirmation of a plan are usually disallowed when the estate may not be able to pay all administrative expenses in full."  *Id.* at 615 (quoting *In re HQ Global Holdings, Inc.*, 282 B.R. 169, 173 (Bankr. D. Del 2002)).

41.    Therefore, even in the event the Debtor should be liable for all of the KUS Storage

Claims,[8] *and* even if all of the KUS Storage Claims arose from nonresidential real property lease obligations under section 365(d)(3) of the Bankruptcy Code, Knapp would not be entitled to immediate payment on those claims. Rather, such claims would only be presumptively entitled to administrative expense status under section 503(b) of the Bankruptcy Code.

**B.    Knapp's Requests for Sanctions Are Ludicrous and Improper.**

**i.    There is No Basis for Sanctions Under Section 105(a) of the Bankruptcy Code.**

42.    Knapp falsely claims that the Committee had no legal basis to dispute immediate payment of the Knapp Claims. As demonstrated above, this is blatantly untrue. Knapp requests that the Court sanction the Committee, pursuant to its inherent powers under section 105(a) of the Bankruptcy Code, by awarding Knapp "the costs and fees associated with [its] Motion, out of any future compensation the Committee's professionals may ask this Court to approve." Motion ¶ 34.

43.    While the Committee does not disagree that the Court has the inherent power to sanction, the Court's sanction authority under section 105(a) of the Bankruptcy Code is limited to enforcing provisions of the Bankruptcy Code, applicable rules, or orders of the Court.[9] Tellingly, Knapp does not point to any provision of the Bankruptcy Code, any applicable rule, or any Court order which the Committee was purportedly defying. Because there was none.

---

8 Prior to the Petition Date, a third-party was paying a portion of the expenses under the Storage Agreement. The Debtors had previously informed the Committee that they were investigating whether a portion of the KUS Storage Claims were owed by the third-party. The Debtors have not yet shared the results of this investigation with the Committee/

9 *See Law v. Siegel*, 571 U.S. 415, 420-21 (2014) (a bankruptcy court may not contravene specific statutory provisions when exercising authority under section 105(a) of the Bankruptcy Code and its inherent powers); *Jamo v. Katahdin Fed. Credit Union (In re Jamo)*, 283 F.3d 392, 404 (5th Cir. 2002) (vacating sanction imposed under section 105(a) in the absence of "any antecedent violation either of the automatic stay or of some other independent provision of the Bankruptcy Code").

44.     Additionally, the inherent powers of the Court should be reserved for punishing bad faith litigation conduct or willful disobedience of the Court's orders.[10]  The Committee neither engaged in bad faith litigation conduct nor willfully disobeyed any order of the Court.  Instead, the Committee simply objected to immediate payment of an alleged, unfiled administrative claim for the reasons discussed above.

45.     At base, Knapp is improperly (and vexatiously) objecting to the Committee's professionals' fees as a means of attempting to avoid the Bankruptcy Code's overarching goal of orderly and equal distribution among similarly situated creditors.  If Knapp would like to object to the Committee's fees, Knapp should do so at the proper juncture and with the proper procedure.

### ii.        There is No Basis for Sanctions Under 28 U.S.C. § 1927, and Knapp's Request for Sanctions is Inappropriate and Vexatious

46.     In the alternative, Knapp requests that the Court award sanctions to Knapp pursuant to 28 U.S.C. § 1927, which states that:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

47.     Knapp cites only one case, *Lasalle Nat. Bank v. First Connecticut Holding*, 287 F.3d 279, 288 (3d Cir. 2002), for the proposition that this statute "limits attorney sanctions imposed thereunder to those situations where an attorney has: (1) multiplied proceedings; (2) unreasonably and vexatiously; (3) thereby increasing the cost of the proceedings; (4) with bad faith or with

---

10 *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (affirming inherent power sanctions for abusing the judicial process, including filing numerous meritless motions and pleadings and delaying the case); *Carroll v. Abide (In re Carroll)*, 850 F.3d 811, 815-16 (5th Cir. 2017) (affirming inherent authority sanctions against appellants for engaging in conduct intended to harass and delay by repeated attempts to litigate issues conclusively resolved against them or that they lacked standing to assert).

intentional misconduct." *Id.* Knapp then baldly (and incorrectly) states "[r]espectfully, all four factors are present here." Motion ¶ 37.

48.    However, that's not the proposition that *Lasalle* stands for. *Lasalle* generally stands for the proposition that "[a]lthough § 1927 provides a court with a mechanism for sanctioning vexatious and willful conduct, 'courts should exercise [this sanctioning power] only in instances of a ***serious and studied disregard for the orderly process of justice*.'" *Id.* (citing *Ford v. Temple Hosp.*, 790 F.2d 342, 347 (3d Cir. 1986) (quoting *Overnite Transp. Co. v. Chicago Industr. Tire Co.*, 697 F.2d 789, 795 (7th Cir. 1983)) (emphasis added). This statute "carries with it the potential for abuse and therefore should be construed narrowly and with great caution so as not to stifle the enthusiasm or chill the creativity that is the very lifeblood of the law." *Lasalle Nat. Bank*, at 289 (quoting *Mone v. Commn'r of Intern. Revenue*, 774 F.2d 570, 574 (2d Cir. 1985)).

49.    The Committee submits that it did not seriously disregard the orderly process of justice simply by requesting that the Debtors not pay the Knapp Claims immediately and without due process. In contrast, the Committee was discharging its fiduciary duties to its constituents, all unsecured creditors of the Debtors. Sanctions are inappropriate for the Committee here.

## NOTICE

50.    Notice of the Objection will be provided to (i) the Debtors, (ii) the DIP Lenders, (iii) the U.S. Trustee, (iv) counsel for Knapp; and (v) all parties entitled to notice under Bankruptcy Rule 2002 and Local Rule 2002-1(b). No prior request for the relief requested herein has been made by the Committee to this or any other court.

## CONCLUSION

51.    For the reasons set forth above, and pursuant to sections 365, 503, 507, and 105 of the Bankruptcy Code, the Committee submits that Knapp's Motion should be denied.

WHEREFORE, the Committee respectfully requests that the Objection be sustained and the Motion be denied.

Dated: October 16, 2024

**ASHBY & GEDDES, P.A.**

*/s/ Ricardo Palacio*
Ricardo Palacio (DE Bar No. 3765)
Gregory A. Taylor (DE Bar No. 4008)
Destiny A. Kosloske (AL Bar No. 2983W00U)
500 Delaware Avenue, 8th Floor
Wilmington, DE 19899-1150
Telephone: (302) 654-1888
Facsimile: (302) 654-2067
Email: RPalacio@ashbygeddes.com
Email: GTaylor@ashbygeddes.com
Email: DKosloske@ashbygeddes.com

-and-

**EVERSHEDS SUTHERLAND (US) LLP**
Todd C. Meyers (admitted *pro hac vice*)
Danielle Barav-Johnson (admitted *pro hac vice*)
999 Peachtree Street NE, Suite 2300
Atlanta, GA 30309
Telephone: (404) 853-8000
Email: ToddMeyers@Eversheds-Sutherland.com
        DahniBarav-Johnson@Eversheds-
        Sutherland.com

*Counsel to the Official Committee of Unsecured Creditors*