**<u>EXHIBIT 2</u>**

**Blackline**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| TAKEOFF TECHNOLOGIES, INC., *et al.*, [1] | ) Case No. 24-11106 (CTG) |
|  | ) |
|  | ) (Jointly Administered) |
| Debtors. | ) |
|  | ) |

## AMENDED COMBINED DISCLOSURE STATEMENT AND JOINT CHAPTER 11 PLAN OF TAKEOFF TECHNOLOGIES, INC. AND ITS DEBTOR AFFILIATES

Dated: ~~September 27~~November 5, 2024
Wilmington, Delaware

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**
Joseph M. Mulvihill (Del. Bar No. 6061)
Shella Borovinskaya (Del. Bar No. 6758)
Kristin L. McElroy (Del. Bar No. 6871)
Rodney Square
1000 North King Street
Wilmington, DE 19801
Telephone:     (302) 571-6600
Facsimile:     (302) 571-1253
Email:          jmulvihill@ycst.com
                    sborovinskaya@ycst.com
                    kmcelroy@ycst.com

*Co-Counsel for the Debtors and
Debtors in Possession*

**SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**
Justin R. Bernbrock (admitted *pro hac vice*)
321 North Clark Street, 32nd Floor
Chicago, Illinois 60654
Telephone:     (312) 499-6300
Facsimile:     (312) 499-6301
Email:          jbernbrock@sheppardmullin.com

-and-

Alexandria G. Lattner (admitted *pro hac vice*)
650 Town Center Drive, 10th Floor
Costa Mesa, California 92626
Telephone:     (714) 513-5100
Facsimile:     (714) 513-5130
Email:          alattner@sheppardmullin.com

*Co-Counsel for the Debtors and
Debtors in Possession*

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of the Debtors federal tax identification numbers, as applicable, are: Takeoff Technologies, Inc. (0552); Takeoff Technologies Canada, Inc.; Takeoff Technologies Australia Pty Ltd. (ACN 639 288 958); Takeoff Technologies FZE; Takeoff International Subco India Private Limited; and Takeoff International Subco, LLC. The location of the Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is 203 Crescent Street, Suite 203, Waltham, Massachusetts 02453.

**<u>TABLE OF CONTENTS</u>**

**Page**

ARTICLE  I DEFINED TERMS AND RULES OF INTERPRETATION ............... 2

ARTICLE  II CLASSIFICATION OF CLAIMS AND INTERESTS AND ESTIMATED RECOVERIES ............... 13
    2.1    Classification ............... 13

ARTICLE  III BACKGROUND AND DISCLOSURES ............... ~~16~~15
    3.1    General Background ............... ~~16~~15
    3.2    Events Leading to Chapter 11 ............... ~~16~~15
    3.3    The Chapter 11 Cases ............... ~~17~~16

ARTICLE  IV CONFIRMATION AND VOTING PROCEDURES ............... ~~22~~23
    4.1    Confirmation Procedure ............... ~~22~~23
    4.2    Procedure for Objections ............... ~~22~~23
    4.3    Requirements for Confirmation ............... ~~23~~24
    4.4    Classification of Claims and Interests ............... ~~23~~24
    4.5    Impaired Claims or Interests ............... ~~24~~26
    4.6    Confirmation Without Necessary Acceptances; Cramdown ............... ~~25~~26
    4.7    Feasibility ............... ~~26~~27
    4.8    Best Interests Test and Liquidation Analysis ............... ~~26~~27
    4.9    Acceptance of the Plan ............... ~~27~~28

ARTICLE  V CERTAIN RISK FACTORS TO BE CONSIDERED PRIOR TO VOTING ~~28~~29
    5.1    The Plan May Not Be Accepted ............... ~~28~~29
    5.2    The Plan May Not Be Confirmed ............... ~~28~~29
    5.3    Distributions to Holders of Allowed Claims under the Plan May Be Inconsistent with Projections ............... ~~29~~30
    5.4    Objections to Classification of Claims ............... ~~29~~30
    5.5    Failure to Consummate the Plan ............... ~~30~~31
    5.6    Plan Releases May Not Be Approved ............... ~~30~~31
    5.7    Reductions to Estimated Creditor Recoveries ............... ~~30~~31
    5.8    Certain Tax Considerations ............... ~~30~~31

ARTICLE  VI TREATMENT OF UNCLASSIFIED CLAIMS ............... ~~31~~32
    6.1    Administrative Claims ............... ~~31~~32
    6.3    Priority Tax Claims ............... ~~32~~33

ARTICLE  VII TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS ............... ~~32~~33
    7.1    Class 1:  Priority Non-Tax Claims ............... ~~32~~33
    7.2    Class 2:  Secured Claims ............... ~~32~~33
    7.3    Class 3:  General Unsecured Claims Against All Debtors ............... 33
    7.4    Class 4:  Intercompany Claims ............... 33
    7.5    Class 5: Interests ............... ~~33~~34

| 7.6 | Reservation of Rights Regarding Claims and Interests | 3334 |

| ARTICLE  VIII | ACCEPTANCE OR REJECTION OF THE PLAN | 3334 |
| 8.1 | Class Entitled to Vote | 3334 |
| 8.2 | Acceptance by Impaired Classes of Claims or Interests | 3334 |
| 8.3 | Presumed Acceptance by Unimpaired Classes | 3334 |
| 8.4 | Presumed Rejections by Impaired Classes | 3334 |
| 8.5 | Confirmation Pursuant to Bankruptcy Code Section 1129(b) | 3334 |
| 8.6 | Controversy Concerning Impairment | 34 |
| 8.7 | Elimination of Vacant Classes | 3435 |

| ARTICLE  IX | IMPLEMENTATION OF THE PLAN | 3435 |
| 9.1 | Implementation of the Plan | 3435 |
| 9.2 | Substantive Consolidation | 35 |
| 9.29.3 | Source of Consideration | 3436 |
| 9.39.4 | Vesting of Assets | 3437 |
| 9.49.5 | Directors and Officers | 3437 |
| 9.59.6 | Wind-Up and Dissolution of the Debtors | 3437 |
| 9.69.7 | Plan Administrator and Plan Administration Agreement | 3537 |
| 9.79.8 | Distributions by Plan Administrator | 3638 |
| 9.89.9 | Cash Investments | 3638 |
| 9.99.10 | Limitation of Liability; Indemnification | 3638 |
| 9.109.11 | Compensation and Duties of Plan Administrator | 3639 |
| 9.119.12 | Certain Tax Considerations. | 3739 |

| ARTICLE  X | PROVISIONS GOVERNING DISTRIBUTIONS | 4143 |
| 10.1 | Distributions for Allowed Claims | 4143 |
| 10.2 | Interest of Claims | 4143 |
| 10.3 | Distributions by Plan Administrator as Disbursement Agent | 4143 |
| 10.4 | Means of Cash Payment | 4144 |
| 10.5 | Fractional Distributions | 4244 |
| 10.6 | De Minimis Distributions | 4244 |
| 10.7 | Delivery of Distributions; Unclaimed Distributions | 4244 |
| 10.8 | Application of Distribution Record Date | 4245 |
| 10.9 | Withholding, Payment and Reporting Requirements With Respect to Distributions | 4345 |
| 10.10 | Setoffs | 4346 |
| 10.11 | No Distribution in Excess of Allowed Amounts | 4446 |
| 10.12 | Allocation of Distributions | 4446 |
| 10.13 | Forfeiture of Distributions | 4446 |

| ARTICLE  XI | PROVISIONS FOR CLAIMS OBJECTIONS AND ESTIMATION OF CLAIMS | 4446 |
| 11.1 | Claims Administration Responsibility | 4446 |
| 11.2 | Claims Objections | 4447 |
| 11.3 | Estimation of Contingent or Unliquidated Claims | 4547 |
| 11.4 | Expungement and Disallowance of Certain Claims | 4547 |

11.5    Distributions on Account of Disputed Claims .................... 4547
11.6    Claims Paid and Payable by Third Parties ...................... 4548
11.7    Adjustment to Claims Without Objection ....................... 4548

ARTICLE  XII EXECUTORY CONTRACTS .................................. 4548
12.1    Executory Contracts Deemed Rejected ......................... 4548

ARTICLE  XIII CONFIRMATION AND CONSUMMATION OF THE PLAN .......... 4648
13.1    Conditions Precedent to Confirmation of the Plan ............ 48
13.1 13.2                        Conditions Precedent to the Effective Date .. 4648
13.2 13.3                                  Notice of Effective Date .. 4649
13.3 13.4              Waiver of Conditions Precedent to the Effective Date .. 4649
13.4 13.5                    Effect of Non-Occurrence of Effective Date .. 4649

ARTICLE  XIV EFFECTS OF CONFIRMATION .............................. 4749
14.1    Exculpation, Releases, and Injunctions ....................... 4749
14.2    Term of Bankruptcy Injunction or Stays ....................... 4952
14.3    Comprehensive Settlement of Claims and Controversies ......... 49

ARTICLE  XV RETENTION OF JURISDICTION ............................. 4952
15.1    Exclusive Jurisdiction of Bankruptcy Court ................... 4952

ARTICLE  XVI MISCELLANEOUS PROVISIONS ............................. 5154
16.1    Modification of the Plan ..................................... 5154
16.2    Revocation, Withdrawal, or Non-Confirmation of the Plan ...... 5154
16.3    Binding Effect .............................................. 5254
16.4    Subordination Rights ........................................ 5255
16.5    Severability of Plan Provisions ............................. 5255
16.6    Payment of Statutory Fees; Filing of Quarterly Reports ....... 5255
16.7    Dissolution of the Committee ................................ 5356
16.8    Exemption from Section 1146 ................................. 5356
16.9    Closing of Chapter 11 Cases; Caption Change ................. 5356
16.10   Filing of Additional Documents .............................. 5456
16.11   Insurance ................................................... 5457
16.12   Successors and Assigns ...................................... 5457
16.13   Governing Law ............................................... 5457
16.14   Exhibits and Schedules ...................................... 5457
16.15   Computation of Time ......................................... 5457
16.16   Reservation of Rights ....................................... 5457

## **DISCLAIMER**

THIS COMBINED DISCLOSURE STATEMENT AND PLAN WAS COMPILED FROM INFORMATION OBTAINED FROM NUMEROUS SOURCES BELIEVED TO BE ACCURATE TO THE BEST OF THE DEBTORS' KNOWLEDGE, INFORMATION, AND BELIEF.   NO GOVERNMENTAL AUTHORITY HAS PASSED ON, CONFIRMED OR DETERMINED THE ACCURACY OR ADEQUACY OF THE INFORMATION CONTAINED HEREIN.

NOTHING STATED HEREIN SHALL BE (I) DEEMED OR CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY BY ANY PARTY, (II) ADMISSIBLE IN ANY PROCEEDING INVOLVING THE DEBTORS OR ANY OTHER PARTY, OR (III) DEEMED CONCLUSIVE EVIDENCE OF THE TAX OR OTHER LEGAL EFFECTS OF THE COMBINED DISCLOSURE STATEMENT AND PLAN ON THE DEBTORS OR HOLDERS OF CLAIMS OR INTERESTS.   CERTAIN STATEMENTS CONTAINED HEREIN, BY NATURE, ARE FORWARD-LOOKING AND CONTAIN ESTIMATES AND ASSUMPTIONS.   THERE CAN BE NO ASSURANCE THAT SUCH STATEMENTS WILL REFLECT ACTUAL OUTCOMES.

THE STATEMENTS CONTAINED HEREIN ARE MADE AS OF THE DATE HEREOF, UNLESS ANOTHER TIME IS SPECIFIED.   THE DELIVERY OF THIS COMBINED DISCLOSURE STATEMENT AND PLAN SHALL NOT BE DEEMED OR CONSTRUED TO CREATE ANY IMPLICATION THAT THE INFORMATION CONTAINED HEREIN IS CORRECT AT ANY TIME AFTER THE DATE HEREOF.   HOLDERS OF CLAIMS OR INTERESTS SHOULD NOT CONSTRUE THE CONTENTS OF THIS COMBINED DISCLOSURE STATEMENT AND PLAN AS PROVIDING ANY LEGAL, BUSINESS, FINANCIAL OR TAX ADVICE.   THEREFORE, EACH SUCH HOLDER SHOULD CONSULT WITH ITS OWN LEGAL, BUSINESS, FINANCIAL, AND TAX ADVISORS AS TO ANY SUCH MATTERS CONCERNING THIS COMBINED DISCLOSURE STATEMENT AND PLAN AND THE TRANSACTIONS CONTEMPLATED HEREBY.

NO PARTY IS AUTHORIZED TO GIVE ANY INFORMATION WITH RESPECT TO THIS COMBINED DISCLOSURE STATEMENT AND PLAN OTHER THAN THAT WHICH IS CONTAINED IN THIS COMBINED DISCLOSURE STATEMENT AND PLAN.   NO REPRESENTATIONS CONCERNING THE DEBTORS OR THE VALUE OF THEIR PROPERTY HAVE BEEN AUTHORIZED BY THE DEBTORS OTHER THAN AS SET FORTH IN THIS COMBINED DISCLOSURE STATEMENT AND PLAN.   ANY INFORMATION, REPRESENTATIONS OR INDUCEMENTS MADE TO OBTAIN AN ACCEPTANCE OF THIS COMBINED DISCLOSURE STATEMENT AND PLAN OTHER THAN, OR INCONSISTENT WITH, THE INFORMATION CONTAINED HEREIN SHOULD NOT BE RELIED UPON BY ANY HOLDER OF A CLAIM OR INTEREST.   THE COMBINED DISCLOSURE STATEMENT AND PLAN HAS BEEN PREPARED IN ACCORDANCE WITH BANKRUPTCY CODE SECTION 1125 AND BANKRUPTCY RULE 3016(b) AND NOT IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER NON-APPLICABLE BANKRUPTCY LAWS.

SEE ARTICLE V HEREIN, ENTITLED "CERTAIN RISK FACTORS TO BE CONSIDERED PRIOR TO VOTING," FOR A DISCUSSION OF CERTAIN CONSIDERATIONS IN CONNECTION WITH A DECISION BY A HOLDER OF AN IMPAIRED CLAIM TO ACCEPT THE COMBINED DISCLOSURE STATEMENT AND PLAN.

## INTRODUCTION[2]

The Debtors hereby jointly propose the following Combined Disclosure Statement and Plan for the liquidation of the Debtors' remaining Assets and distribution of the proceeds of the Assets to the Holders of Allowed Claims against the Debtors as set forth herein. Each Debtor is a proponent of the Plan within the meaning of Bankruptcy Code section 1129.

This Combined Disclosure Statement and Plan contains, among other things, a discussion of the Debtors' history, businesses, properties, operations, the Chapter 11 Cases, risk factors, summary and analysis of the Plan, and certain other related matters.

**ALL HOLDERS OF CLAIMS AND INTERESTS AGAINST THE DEBTORS ARE ENCOURAGED TO READ THE COMBINED DISCLOSURE STATEMENT AND PLAN IN ITS ENTIRETY, AND TO CONSULT WITH AN ATTORNEY, BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. SUBJECT TO CERTAIN RESTRICTIONS AND REQUIREMENTS SET FORTH IN BANKRUPTCY CODE SECTION 1127, BANKRUPTCY RULE 3019, AND IN THE PLAN, THE DEBTORS RESERVE THE RIGHT TO ALTER, AMEND, MODIFY, REVOKE OR WITHDRAW THE PLAN, OR ANY PART THEREOF, AT ANY TIME, INCLUDING PRIOR TO ITS SUBSTANTIAL CONSUMMATION.**

**THE DEBTORS AND THE COMMITTEE SUPPORT THE PLAN AND RECOMMEND THAT ALL HOLDERS OF CLAIMS RECEIVING A BALLOT VOTE IN FAVOR OF THE PLAN.**

## ARTICLE I
## DEFINED TERMS AND RULES OF INTERPRETATION

**Defined Terms**

**1.1** **"503(b)(9) Claims"** shall mean Claims arising under Bankruptcy Code section 503(b)(9).

**1.2** **"Administrative Claim"** shall mean a Claim for costs and expenses of administration of the Chapter 11 Cases allowed under Bankruptcy Code sections 503(b), 507(b) or, if applicable, 1114(e)(2), including but not limited to: (a) any actual and necessary costs and expenses incurred after the Petition Date of preserving the Estates and operating the businesses of the Debtors (including, but not limited to, wages, salaries, commissions for services and payments for inventories, leased equipment and premises) and Claims by Governmental Units for taxes (including Claims related to taxes which accrued after the Petition Date, but excluding Claims related to taxes which accrued on or before the Petition Date); (b) compensation for legal,

---

[2]    Capitalized terms not defined in this Introduction shall have the meanings ascribed below.

financial, advisory, accounting and other services and reimbursement of expenses allowed by the Bankruptcy Court under Bankruptcy Code sections 328, 330, 331, 363 or 503(b) to the extent incurred on or prior to the Effective Date; (c) all fees and charges assessed against the Estates under United States Code title 28 section 1930; (d) any 503(b)(9) Claims; and (e) any Claims that have been designated "Administrative Claims" by order of this Court.

**1.3**    **"Affiliate"** shall mean "affiliate" as defined in Bankruptcy Code section 101(2), as it would relate to a specified Entity.

**1.4**    **"Allowed"** shall mean all or a portion of a Claim against the Debtors or an Interest in the Debtors that: (a) that has been listed by the Debtors in the Schedules as liquidated in amount and not "disputed" or "contingent," and with respect to which no contrary Claim or proof of Interest has been filed, or (b) has been asserted in a timely filed proof of Claim and (i) as to which no objection or request for estimation has been Filed on or before the Claims Objection Deadline or the expiration of such other applicable period fixed by the Bankruptcy Court, (ii) as to which any objection has been settled, waived, withdrawn or denied by a Final Order, or (iii) that is allowed (A) by a Final Order, (B) pursuant to the terms of the Plan, or (C) by a Stipulation between the Holder of such Claim or Interest and the Plan Administrator on or after the Effective Date.  For purposes of computing Distributions under the Plan, a Claim or Interest that has been deemed "Allowed" shall not include interest, costs, fees or charges on such Claim or Interest from and after the Petition Date.

**1.5**    **"Assets"** shall mean any and all right, title, and interest of the Debtors and the Estates in and to property of whatever type or nature, including, but not limited to, their books and records and all Retained Causes of Action.

**1.6**    **"Avoidance Actions"** shall mean any and all avoidance or equitable subordination or recovery actions under the Bankruptcy Code, including sections 105(a), 502(d), 510, 542 through 551, and 553, or any similar federal, state, or common law causes of action except for any avoidance or equitable subordination or recovery actions that have been sold or otherwise transferred in connection with the Sale.

**1.7**    **"Ballot"** shall mean the ballot form distributed to each Holder of a Claim entitled to vote to accept or reject this Plan.

**1.8**    **"Bankruptcy Code"** shall mean title 11 of the United States Code, 11 U.S.C. §§ 101–1532, and as such title has been, or may be, amended from time to time, to the extent that any such amendment is applicable to the Chapter 11 Cases.

**1.9**    **"Bankruptcy Court"** shall mean the United States Bankruptcy Court for the District of Delaware.

**1.10**    **"Bankruptcy Rules"** shall mean the Federal Rules of Bankruptcy Procedure, the Official Bankruptcy Forms, or the Local Rules, and as each has been, or may be, amended from time to time, to the extent that any such amendment is applicable to the Chapter 11 Cases.

**1.11** **"Bar Date"** shall mean, with respect to any particular Claim, the specific date set by the Bankruptcy Court as the last day for Filing ~~Proofs~~proofs of Claim or proofs of Interest against the Debtors in the Chapter 11 Cases for that specific Claim or Interest.

**1.12** **"Bar Date Order**" shall mean that certain *Order (I) Establishing Bar Dates and Related Procedures for Filing Proofs of Claim (Including for Claims Arising Under Section 503(b)(9) of the Bankruptcy Code) and (II) Approving the Form and Manner of Notice Thereof* [D.I. 112].

**1.13** **"Bidding Procedures Order"** shall mean that certain *Order (I) Scheduling a Hearing on the Approval of the Sale of All or Substantially All of the Debtors' Assets Free and Clear of All Encumbrances Other Than Assumed Liabilities and Permitted Encumbrances, and the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (II) Approving Certain Bidding Procedures and Assumption and Assignment Procedures, and the Form and Manner of Notice Thereof, (III) Authorizing the Debtors to Enter Into the Stalking Horse Purchase Agreement, and (IV) Granting Related Relief* [D.I. 225].

**1.14** **"Business Day"** shall mean any day, other than a Saturday, Sunday or a legal holiday (as that term is defined in Bankruptcy Rule 9006(a)).

**1.15** **"Cash"** shall mean money that is legal tender of the United States of America.

**1.16** **"Causes of Action"** shall mean all Claims, actions, causes of action, choses in action, suits, debts, dues, damages, defenses, judgments, third-party claims, counterclaims, and cross claims that are or may be pending or existing on the Effective Date against any Entity, based in law or equity, including, but not limited to, under the Bankruptcy Code, whether direct, indirect, known or unknown, derivative, or otherwise and whether asserted or unasserted as of the date of entry of the Confirmation Order, and including the unknown Causes of Action.

**1.17** "**Chapter 11 Cases**" shall mean the chapter 11 cases commenced by the Debtors and jointly administered under case number 24-11106 (CTG) in the Bankruptcy Court.

**1.18** **"Claim"** shall mean a claim against any Debtor, as such term is defined in Bankruptcy Code section 101(5).

**1.19** **"Claims Agent"** shall mean the Debtors' claims agent, Kroll Restructuring Administration LLC.

**1.20** **"Claims Objection Deadline"** shall mean, with respect to all Claims other than Professional Fee Claims, (a) one hundred eighty (180) days after the Effective Date, or ~~such later date~~(b) such other period for objecting to Claims as may be ~~ordered~~fixed by an order of the Bankruptcy Court~~; *provided however*, that~~ upon request of the Plan Administrator ~~may seek extensions of this date from the Bankruptcy Court at any time~~for cause shown.

**1.21** **"Class"** shall mean each category or group of Holders of Claims or Interests that has been designated as a class in Article II of the combined Disclosure Statement and Plan.

**1.22**    "**Committee**" shall mean the Official Committee of Unsecured Creditors appointed in the Chapter 11 Cases.

**1.23**    "**Confirmation**" shall mean entry of the Confirmation Order by the Bankruptcy Court on the docket of the Chapter 11 Cases.

**1.24**    "**Confirmation Date**" shall mean the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases, within the meaning of Bankruptcy Rules 5003 and 9021.

**1.25**    "**Confirmation Hearing**" shall mean the hearing held by the Bankruptcy Court to consider confirmation of the Plan and final approval of the Disclosure Statement, as such hearing may be adjourned or continued from time to time.

**1.26**    "**Confirmation Notice**" shall mean the notice of Confirmation Hearing to be delivered pursuant to Bankruptcy Rules 2002(c)(3) and 2002(f).

**1.27**    "**Confirmation Order**" shall mean the order of the Bankruptcy Court confirming the Plan pursuant to, among others, Bankruptcy Code section 1129.

**1.28**    "**Consummation**" shall mean the occurrence of the Effective Date.

**1.29**    "**Contingent**" shall mean, with reference to a Claim, a Claim that has not accrued or is not otherwise payable and the accrual of which, or the obligation to make payment on which, is dependent upon a future event that may or may not occur.

**1.30**    "**Creditor**" shall have the meaning ascribed to such term in Bankruptcy Code section 101(10).

**1.31**    "**Debtors**" shall mean, collectively, Takeoff Technologies, Inc., Takeoff Technologies Canada, Inc., Takeoff Technologies Australia PTY Ltd, Takeoff Technologies FZE, Takeoff International Subco India Private Limited, and Takeoff International Subco, LLC.

**1.32**    "**Deficiency DIP Loan Claim**" shall mean a Claim arising under the DIP Loan Agreement for the unpaid and outstanding principal balance of the DIP Obligations (as defined in the Final DIP Order), plus 50% of the interest accrued on the DIP Obligations as of the Effective Date (with the other 50% being waived by the DIP Lenders), but shall not include any fees or expenses incurred by any DIP Lender, *provided that* the Deficiency DIP Loan Claims of (i) Village Super Market, Inc., (ii) ShopRite of Hunterdon County, Inc., and (iii) Inserra Supermarkets, Inc. shall be reduced by the amounts set off in Section 3.3(f) of the Plan.

**1.33**    ~~11.32~~ "**DIP Lenders**" shall mean, collectively, Woolworths Group Limited, Albertsons Companies, Inc., Village Super Market, Inc., ShopRite of Hunterdon County, Inc., and Inserra Supermarkets, Inc.

**1.34** ~~11.33~~ **"DIP Loan Agreement"** shall mean that certain Debtor-in-Possession Credit Agreement attached to the Final DIP Order as Exhibit A, as may be amended or modified from time to time.

**1.35** ~~11.34~~ **"DIP Loan Claims"** shall mean any DIP Obligations (as defined in the Final DIP Order) or other Claims of the DIP Lenders arising under ~~or related to~~ the DIP Loan Agreement, the Final DIP Order, or any other DIP Loan Document.

**1.36** ~~11.35~~ **"Disallowed"** shall mean, with respect to any Claim or Interest or portion thereof, any Claim against or Interest in a Debtor which:  (i) has been disallowed, in whole or part, by a Final Order; (ii) has been withdrawn, in whole or in part, by the Holder thereof; (iii) is listed in the Schedules as zero or as Disputed, Contingent or Unliquidated and in respect of which a proof of Claim or a proof of Interest, as applicable, has not been timely Filed or deemed timely Filed pursuant to the Plan, the Bankruptcy Code or any Final Order or other applicable law; (iv) has been reclassified, expunged, subordinated or estimated to the extent that such reclassification, expungement, subordination or estimation results in a reduction in the Filed amount of any proof of Claim or proof of Interest; (v) is evidenced by a proof of Claim or a proof of Interest which has been Filed, or which has been deemed to be Filed under applicable law or order of the Bankruptcy Court or which is required to be Filed by order of the Bankruptcy Court but as to which such proof of Claim or proof of Interest was not timely or properly Filed; (vi) is unenforceable to the extent provided in Bankruptcy Code section 502(b); or (vii) where the Holder of a Claim is an Entity from which property is recoverable under Bankruptcy Code sections 542, 543, 550, or 553 or that is a transferee of a transfer avoidable under Bankruptcy Code sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a), unless such Entity or transferee has paid the amount, or turned over any such Property, for which such Entity or transferee is liable under Bankruptcy Code section 522(i), 542, 543, 550, or 553, and if  required by the Bankruptcy Code, an Objection or adversary proceeding has been Filed.  In each case a Disallowed Claim or a Disallowed Interest is disallowed only to the extent of disallowance, withdrawal, reclassification, expungement, subordination, or estimation.

**1.37** ~~11.36~~ **"Disbursement Agent"** shall mean Plan Administrator, provided, however, that the Plan Administrator may, in its discretion ~~and subject to the Wind Down Budget~~, retain a third party to act as Disbursement Agent.

**1.38** ~~11.37~~ **"Disclosure Statement"** shall mean the disclosure statement, as amended, supplemented, or modified from time to time, that is embodied within this combined Disclosure Statement and Plan and distributed in accordance with, among others, Bankruptcy Code sections 1125, 1126(b), and 1145, Bankruptcy Rule 3018 and other applicable law.

**1.39** ~~11.38~~ **"Disputed"** shall mean any Claim or Interest which has not yet been Allowed or Disallowed in accordance with the terms of the Plan.

**1.40** ~~11.39~~ **"Distribution"** shall mean a delivery of Cash by the Disbursement Agent to the Holders of Allowed Claims pursuant to the Plan.

**1.41** ~~11.40~~ **"Distribution Date"** shall mean the date on which a Distribution is made pursuant to the Plan.

**1.42**    **11.41** "**Distribution Record Date**" shall mean the date established for determining the Holders of Claims entitled to Distributions pursuant to the Plan, which shall be the General Bar Date or such other date established by order of the Bankruptcy Court, including the Confirmation Order.

**1.43**    **11.42** "**Distribution Proceeds**" shall mean all Cash after Payment in Full or satisfaction of (i) Administrative Claims (including Professional Fee Claims), Priority Tax Claims, Priority Non-Tax Claims, and Secured Claims, and (ii) the payment of and reserving for, Plan Administration Expenses, in each case subject to the Wind Down Budget.

**1.44**    **11.43** "**Effective Date**" shall mean the first Business Day after the later of the date on which (a) all conditions in Article XIII of the Plan have been satisfied or waived in accordance with that Article and (b) no stay of the Confirmation Order is in effect.

**1.45**    **11.44** "**Effective Date Notice**" shall mean the notice of the Effective Date.

**1.46**    **11.45** "**Entity**" shall have the meaning ascribed to such term in Bankruptcy Code section 101(15).

**1.47**    **11.46** "**Estate**" shall mean each of the Debtors' estates created by Bankruptcy Code section 541 upon the commencement of the Chapter 11 Cases on the Petition Date.

**1.48**    **11.47** "**Exculpated Parties**" shall mean, solely in their capacities as such, (a) the Debtors and their Estates, (b) the Debtors' officers, directors, and limited liability company managers serving on and after the Petition Date; (c) the Professionals retained by the Debtors pursuant to a Final Order of the Bankruptcy Court; (d) the Committee; (e) the members of the Committee; and (f) the Professionals retained by the Committee pursuant to a Final Order of the Bankruptcy Court.

**1.49**    **11.48** "**Executory Contract**" shall mean a contract or unexpired lease to which the Debtor is a party that is subject to assumption or rejection under Bankruptcy Code section 365.

**1.50**    **11.49** "**File," "Filed,"** or "**Filing**" shall mean, respectively, file, filed, or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Cases.

**1.51**    **11.50** "**Final Administrative Claim Bar Date**" shall mean the date that is thirty (30) days after the date the Effective Date Notice is filed and served, which date shall be the deadline for filing requests for payment of Administrative Claims that arose after the date of entry of the Solicitation Procedures Order, but prior to the Effective Date. For the avoidance of doubt, Professional Fee Claims and 503(b)(9) Claims shall not be subject to the Final Administrative Claim Bar Date.

**1.52**    **11.51** "**Final Distribution**" shall mean the final Distributions Distribution to Holders of Allowed Claims.

**1.53** ~~11.52~~ "**Final DIP Order**" shall mean that certain *Final Order (A) Authorizing the Debtors to Obtain Postpetition Financing; (B) Granting Liens and Superpriority Administrative Expense Claims; (C) Modifying the Automatic Stay and (D) Granting Related Relief* [D.I. 224].

**1.54** ~~11.53~~ "**Final Order**" shall mean an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, that is not subject to stay or appeal, and for which the applicable time within which to take such action has expired, or for which such actions has been adjudicated by the highest court with jurisdiction over the matter.

**1.55** ~~11.54~~ "**First Day Declaration**" shall mean the *Declaration of Brett M. Anderson in Support of Chapter 11 Petitions, the DIP Motion, and First Day Pleadings* [D.I. 12].

**1.56** ~~11.55~~ "**General Bar Date**" shall mean 5:00 p.m. (prevailing Eastern Time) on August 21, 2024, as established by the Bar Date Order.

**1.57** ~~11.56~~ "**General Unsecured Claim**" shall mean a Claim against a Debtor, but excluding any Administrative Claims (including Professional Fee Claims), Priority Tax Claims, Priority Non-Tax Claims, Secured Claims, Prepetition Loan Secured Claims, Intercompany Claims, and Interests. For the avoidance of doubt, any Deficiency DIP Loan Claim shall be treated as a General Unsecured Claim.

**1.58** ~~11.57~~ "**Global Settlement**" shall mean the settlement by and among the Debtors ~~and~~, the Committee ~~set forth in the Final DIP Order, which resolved the Committee's objections to the Final DIP Order, the Bid Procedures Order, and the Sale~~, and the DIP Lenders, which settlement is incorporated into the terms of this Plan.

**1.59** ~~11.58~~ "**Governmental Unit**" shall have the meaning ascribed to such term in Bankruptcy Code section 101(27).

**1.60** ~~11.59~~ "**Holder**" shall mean any Entity holding a Claim or Interest.

**1.61** ~~11.60~~ "**Impaired**" shall mean, when used in reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of Bankruptcy Code section 1124.

**1.62** ~~11.61~~ "**Impaired Class**" shall mean a Class of Claims or Interests that is Impaired.

**1.63** ~~11.62~~ "**Intercompany Claim**" shall mean a Claim by a Debtor against another Debtor.

**1.64** ~~11.63~~ "**Interests**" shall mean the legal interests, equitable interests, contractual interests, equity interests or ownership interests, or other rights of any Entity in the Debtors including all capital stock, stock certificates, common stock, preferred stock, partnership interests, limited liability company or membership interests, rights, treasury stock, options, warrants, contingent warrants, convertible or exchangeable securities, investment securities, subscriptions or other agreements and contractual rights to acquire or obtain such an interest or share in the Debtors, partnership interests in the Debtors' stock appreciation rights, conversion rights, repurchase rights, redemption rights, dividend rights, preemptive rights, subscription rights and liquidation preferences, puts, calls, awards or commitments of any character whatsoever relating to any such equity, common stock, preferred stock, ownership interests or other shares of capital stock of the

Debtors or obligating the Debtors to issue, transfer or sell any shares of capital stock whether or not certificated, transferable, voting or denominated "stock" or a similar security.

**1.65** ~~11.64~~ **"Initial Administrative Claims"** shall mean Administrative Claims, other than 503(b)(9) Claims and Professional Fee Claims, incurred on or after the Petition Date through and including the date the Bankruptcy Court enters the Solicitation Procedures Order.

**1.66** ~~11.65~~ **"Initial Administrative Claim Bar Date"** shall mean the deadline for filing requests for payment of Initial Administrative Claims, as established by the Solicitation Procedures Order.

**1.67** ~~11.66~~ **"IRC"** shall mean the Internal Revenue Code of 1986, as amended.

**1.68** ~~11.67~~ **"IRS"** shall mean the Internal Revenue Service.

**1.69** **"Interim DIP Orders"** shall mean those certain *Interim Order (A) Authorizing the Debtors to Obtain Postpetition Financing; (B) Granting Liens and Superpriority Administrative Expense Claims; (C) Modifying the Automatic Stay and (D) Granting Related Relief* [D.I. 55], and that certain *Second Interim Order (A) Authorizing the Debtors to Obtain Postpetition Financing; (B) Granting Liens and Superpriority Administrative Expense Claims; (C) Modifying the Automatic Stay and (D) Granting Related Relief* [D.I. 188].

**1.70** ~~11.68~~ **"Local Rules"** shall mean the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware.

**1.71** ~~11.69~~ **"Objection"** shall mean any objection, application, motion, complaint or any other legal proceeding seeking, in whole or in part, to disallow, determine, liquidate, classify, reclassify, or establish the priority, expunge, subordinate or estimate any Claim (including the resolution of any request for payment of any Administrative Claim).

**1.72** ~~11.70~~ **"Paid in Full," "Payment in Full," or "Pay in Full"** shall mean, with respect to an Allowed Claim, payment in Cash or other consideration in an aggregate amount equal to the Allowed amount thereof.

**1.73** ~~11.71~~ **"Petition Date"** shall mean May 30, 2024, the date on which the Debtors commenced Filing the Chapter 11 Cases in the Bankruptcy Court.

**1.74** ~~11.72~~ **"Plan"** shall mean this joint plan of liquidation under chapter 11 of the Bankruptcy Code, as it may be altered, amended, modified or supplemented from time to time including in accordance with any documents submitted in support hereof and the Bankruptcy Code or the Bankruptcy Rules.

**1.75** ~~11.73~~ **"Plan Administration Agreement"** shall mean the form of agreement, acceptable to the DIP Lenders and the Committee, that appoints the Plan Administrator and governs the powers, duties, and responsibilities of the Plan Administrator~~, subject to the Wind Down Budget~~. The Plan Administration Agreement shall be filed as part of the Plan Supplement.

**1.76** ~~11.74~~ **"Plan Administration Assets"** shall consist of all Assets of the Estates as of the Effective Date, including, but not limited to, (i) all Cash, (ii) the Retained Causes of Action, (iii) any proceeds realized or received from such Assets, (iv) all rights of setoff, recoupment, refund, and other defenses against Claims, (v) all rights under the asset purchase agreements from the Sale and any other documents related to the Sale, (vi) all bank accounts (as set forth in the Plan Administration Agreement), ~~and~~ (vii) all ~~documents, communications, and information protected by~~tax attributes, including rights to tax refunds and net operating losses, and (viii) the attorney-client privilege, the ~~work-product privilege, and any other applicable~~attorney work product doctrine, evidentiary privileges, any similar privilege against disclosure, and all other similar immunities belonging to the Debtors or the Estates, and all documents, communications, records, and information protected by any such privilege, protection or immunity. For the avoidance of doubt, the Plan Administration Assets shall not include any Claims and Causes of Action that have been released pursuant to this Plan or other Final Order.

**1.77** ~~11.75~~ **"Plan Administration Expenses"** shall mean, the reasonable and documented fees, expenses, and costs incurred by the Plan Administrator in connection with carrying out the obligations under the Plan, including the maintenance or disposition of the Plan Administration Assets (including, but not limited to, Plan Administrator fees, attorneys' fees, the fees of professionals, and other Persons retained by the Plan Administrator, personnel-related expenses and any Taxes imposed on the Plan Administration Assets), and any other expenses incurred in accordance with the Plan Administration Agreement~~, all of which shall be subject to the Wind Down Budget~~.

**1.78** ~~11.76~~ **"Plan Administrator"** shall mean the person or Entity designated by the ~~Debtors~~Committee, in consultation with the ~~Committee~~Debtors, as the fiduciary responsible for administering the Plan Administration Assets, and any successor subsequently appointed pursuant to the Plan ~~Administrator~~Administration Agreement. The identity and compensation of the Plan Administrator shall be disclosed in the Plan Supplement.

**1.79** ~~11.77~~ **"Plan Supplement"** shall mean the ancillary documents necessary to the implementation and effectuation of the Plan, including the Plan Administration Agreement, which shall be Filed on or before the date that is seven (7) days prior to the Voting Deadline and shall be in a form acceptable to the Committee, provided, however, that the Debtors shall have the right to amend documents contained in, and exhibits to, the Plan Supplement in accordance with the terms of the Plan with the consent of the Committee.

**1.80** ~~11.78~~ **"Post-Effective Date Debtors"** means the Debtors after the Effective Date.

**1.81** **"Prepetition Directors and Officers"** shall mean the directors and officers of the Debtors serving prior to the Petition Date, solely in their capacities as officers or directors, *provided, however*, that the Prepetition Directors and Officers shall not include Adam Paul, Durc Savini, John DiDonato, Brett Anderson, or Huron Consulting Services, LLC.

**1.82** ~~11.79~~ **"Priority Non-Tax Claim"** shall mean any and all Claims accorded priority in right of payment under Bankruptcy Code section 507(a), other than Priority Tax Claims and Administrative Claims.

**1.83**   ~~11.80~~ **"Priority Tax Claim"** shall mean a Claim or a portion of a Claim for which priority is asserted under Bankruptcy Code section 507(a)(8).

**1.84**   ~~11.81~~ **"Professional"** shall mean an Entity employed pursuant to a Final Order in accordance with Bankruptcy Code sections 327, 328, 333, 363, 1103 and to be compensated for services rendered prior to the Confirmation Date, pursuant to Bankruptcy Code sections 327, 328, 329, 330, and 331, or for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to Bankruptcy Code section 503(b)(4).

**1.85**   ~~11.82~~ **"Professional Fee Claims Bar Date"** shall mean the deadline for Filing all applications for Professional Fee Claims, which shall be thirty (30) days after the filing of the Effective Date Notice.

**1.86**   ~~11.83~~ **"Professional Fee Claims"** shall mean all fees and expenses (including but not limited to, transaction fees and success fees) for services rendered by Professionals in connection with the Chapter 11 Cases from the Petition Date through and including the Effective Date~~, *provided, however,* fees accrued by the Committee Professionals shall not exceed the amount approved in the approved budget set forth in the Final DIP Order~~.

**1.87**   ~~11.84~~ **"Related Parties"** shall mean, in their capacities as such, an Entity's officers and directors, and the agents, attorneys, advisors, employees, professionals, shareholders, partners (general or limited), Affiliates, members, managers, equity holders, trustees, executors, predecessors in interest, or successors or assigns of any such Entity.

**1.88**   ~~11.85~~ **"Released Parties"** shall mean, <u>(a) solely</u> in their capacities as such, ~~(a)~~ the Debtors and the Estates, (b) <u>solely in their capacities as such,</u> the Committee and its members, (c) ~~the DIP Lenders, and (d)~~<u>Woolworths Group Limited, (d) Albertsons Companies, Inc., (e) Village Super Market, Inc., (f) ShopRite of Hunterdon County, Inc., and (g) Inserra Supermarkets, Inc., and (h)</u> with respect to each of the foregoing, <u>solely in their capacities as such,</u> their Related Parties, *provided, however,* that <u>the</u> Released Parties shall ~~exclude any of the foregoing parties that makes a Release Opt Out Election, unless otherwise ordered by the Bankruptcy Court~~<u>not include the Prepetition Directors and Officers</u>.

**1.89**   ~~11.86~~ **"Release ~~Opt-Out~~<u>Opt-In</u> Election"** shall mean the timely election to "opt ~~out~~<u>in</u>" ~~of~~<u>to</u> being a Releasing Party by ~~(a)~~ submitting a Ballot by the Voting Deadline that ~~(i) does not vote to accept the Plan and (ii) selecting~~<u>selects</u> the option ~~set forth on the Ballot to not~~<u>to</u> grant the releases set forth in Section 14.1(c) of this Plan~~, or (b) Filing a written objection to the releases set forth in Section 14.1(c) of this Plan by the objection deadline established by the Solicitation Procedures Order, unless ordered by the Bankruptcy Court~~.

**1.90**   ~~11.87~~ **"Releasing Parties"** shall mean~~,~~<u>: (a)</u> in their capacities as such~~: (a)~~, the Committee and its members, (b) <u>in their capacities as such,</u> all Holders of General Unsecured Claims who ~~either (i) vote to accept the Plan; or (ii) vote to reject the Plan, but do not "opt out" of the releases set forth in Article XIV(c) of the Plan, (c) the DIP Lenders~~<u>submit a Ballot selecting the Release Opt-In Election, (c) Woolworths Group Limited, (d) Albertsons Companies, Inc., (e) Village Super Market, Inc., (f) ShopRite of Hunterdon County, Inc., (g) Inserra Supermarkets, Inc.,</u> and (~~d~~<u>h</u>) with respect to each of the foregoing, <u>in their capacities as</u>

such, their Related Parties, ~~provided, however,~~ that Releasing Parties shall exclude any of the foregoing parties that makes a Release Opt-Out Election, unless otherwise ordered by the Bankruptcy Court.

**1.91** ~~11.88~~ "**Retained Causes of Action**" shall mean all Causes of Actions against third parties, including, without limitation, the rights and claims described in the Plan Supplement, but excluding all ~~Avoidance Actions, any~~ Causes of Action ~~against the Debtors' Directors and Officers, and all Causes of Action~~ released pursuant to Article XIV hereof. For the avoidance of doubt, the Retained Causes of Actions shall include all actions against the Prepetition Directors and Officers, which the Plan Administrator may pursue in accordance with Section 14.1(e) of this Plan.

**1.92** ~~11.89~~ "**Sale**" shall mean the sale of substantially all of the Debtors' assets to Woolworths Group Limited as approved by the Sale Order.

**1.93** ~~11.90~~ "**Sale Order**" shall mean that certain *Order (I) Approving the Sale of Certain of the Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances, (II) Authorizing the Debtors to Enter into and Perform their Obligations Under the Asset Purchase Agreement and Related Documents, (III) Approving the Assumption and Assignment of Certain Executory Contracts in Connection therewith, and (IV) Granting Relief* [D.I. 333].

**1.94** ~~11.91~~ "**Schedules**" shall mean the schedules of assets and liabilities and statements of financial affairs Filed by the Debtors pursuant to Bankruptcy Code section 521 and in substantial accordance with the Official Bankruptcy Forms, as the same may have been amended, modified, or supplemented from time to time.

**1.95** ~~11.92~~ "**Secured Claim**" shall mean, pursuant to Bankruptcy Code section 506, that portion of a Claim that is (a) secured by a valid, perfected and enforceable security interest, lien, mortgage, or other encumbrance, that is not subject to avoidance under applicable bankruptcy or non-bankruptcy law, in or upon any right, title or interest of the Debtors in and to property of the Estates, to the extent of the value of the Holder's interest in such property as of the relevant determination date, or (b) Allowed as such pursuant to the terms of the Plan (subject to the Confirmation Order becoming a Final Order).  The defined term Secured Claim includes any Claim that is (i) subject to an offset right under applicable law as of the Petition Date and (ii) a secured claim against the Debtors pursuant to Bankruptcy Code sections 506(a) and 553.

**1.96** ~~11.93~~ "**Solicitation Procedures Order**" shall mean that certain *Order (I) Approving the Combined Disclosure Statement ~~And~~and Plan on an Interim Basis for Solicitation Purposes Only; (II) Establishing Solicitation and Tabulation Procedures; (III) Approving the Form of Ballot and Solicitation Materials; (IV) Establishing the Voting Record Date; (V) Fixing the Date, Time, and Place for the Combined Hearing and the Deadline for Filing Objections Thereto; (VI) Establishing Bar Date for Filing Requests for Allowance of Initial Administrative Claims; and (VI) Granting Related Relief* [D.I. ●].

~~11.94 "**Sub-Class**" shall mean, for each Class, the separate sub-Class for each Debtor, as described in Articles II and VII.~~

**1.97** ~~11.95~~ **"Taxes"** shall mean all income, gross receipts, sales, use, transfer, payroll, employment, franchise, profits, property, excise, or other similar taxes, estimated import duties, fees, stamp taxes, and duties, value added taxes, assessments, or charges of any kind whatsoever (whether payable directly or by withholding), together with any interest and any penalties, additions to tax, or additional amounts imposed by any taxing authority of a Governmental Unit with respect thereto.

**1.98** ~~11.96~~ **"Unclassified Claims"** shall mean any Administrative Claims, Professional Fee Claims, and Priority Tax Claims.

**1.99** ~~11.97~~ **"Unimpaired"** shall mean, when used in reference to a Claim or Interest, any Claim or Interest that is not impaired within the meaning of Bankruptcy Code section 1124.

**1.100** ~~11.98~~ **"U.S. Trustee"** shall mean the Office of the United States Trustee for ~~the District of Delaware~~Region 3.

**1.101** ~~11.99~~ **"U.S. Trustee Fees"** shall mean fees payable pursuant to 28 U.S.C. § 1930.

**1.102** ~~11.100~~ **"Voting Deadline"** shall mean ~~November 26~~December 10, **2024, at 4:00 p.m. (prevailing Eastern Time)**, the date and time by which ballots to accept or reject the Plan must be received to be counted, as set forth by the Solicitation Procedures Order.

~~**11.101 "Wind Down Budget"** shall mean the budget, in a form satisfactory to the Debtors, setting forth on a line-item basis (a) the estimated amounts of Allowed Administrative Claims, Other Priority Claims, Priority Tax Claims, Secured Claims, in each case against the Debtors, that may be paid under this Plan; and (b) the Plan Administration Expenses.[3]~~

**Rules of Interpretation**

**1.103** ~~11.102~~ For purposes of the Plan, except as expressly provided or unless the context otherwise requires, (a) any capitalized term used in the combined Disclosure Statement and Plan that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable, (b) whenever the context requires, each term stated in either the singular or the plural shall include the singular and the plural, and pronouns stated in the masculine, feminine, or neuter shall include the masculine, feminine and the neuter, (c) any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions, (d) any reference in the Plan to an existing document or exhibit means such document or exhibit as it may be amended, modified, or supplemented from time to time, (e) unless otherwise specified, all references in the Plan to sections, articles, schedules, and exhibits are references to sections, articles, schedules, and exhibits of or to the Plan, (f) the words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan in its entirety rather than to any particular paragraph, subparagraph, or clause contained in the Plan, (g) captions and headings to articles and sections

---

[3] ~~The Wind Down Budget will be included in the Plan Supplement.~~

are inserted for convenience of reference only and shall not limit or otherwise affect the provisions hereof or the interpretation of the Plan, and (h) the rules of construction set forth in Bankruptcy Code section 102 and in the Bankruptcy Rules shall apply.

**ARTICLE  II**
**CLASSIFICATION OF CLAIMS AND INTERESTS AND ESTIMATED RECOVERIES**

**THE PROJECTED RECOVERIES SET FORTH IN THE TABLE BELOW ARE ESTIMATES ONLY AND ARE THEREFORE SUBJECT TO CHANGE.**

**2.1    Classification**.  The information in the table below is provided in summary form for illustrative purposes only and is subject to material change based on certain contingencies, including related to the claims reconciliation process.  Actual recoveries may widely vary within these ranges, and any changes to any of the assumptions underlying these amounts could result in material adjustments to recovery estimates provided herein and/or the actual distribution received by Creditors.  The projected recoveries are based on information available to the Debtors as of the date hereof and reflect the Debtors' estimates as of the date hereof only.  In addition to the cautionary notes contained elsewhere in the combined Disclosure Statement and Plan, it is underscored that the Debtors make no representation as to the accuracy of these recovery estimates.  The Debtors expressly disclaim any obligation to update any estimates or assumptions after the date hereof on any basis (including new or different information received and/or errors discovered).

~~The Plan is a joint plan for each of the Debtors and presents together Classes of Claims against, and Interests in, the Debtors.  The Plan does not provide for the substantive consolidation of the Debtors.  Rather, the Plan constitutes a separate Plan proposed by each Debtor, and the classifications set forth in Classes 1, 2, 3, 4, and 5 apply to each Debtor.  Each Class constitutes a separate Sub-Class of Claims against, and Interests in, each of the Debtors, as applicable, and each such Sub-Class of a Class of Claims entitled to vote on the Plan shall vote as a single separate Class for, and the confirmation requirements of section 1129 of the Bankruptcy Code must be satisfied separately with respect to, each of the Debtors.~~

A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes.  A Claim or Interest is also placed in a particular Class for the purpose of receiving Distributions pursuant to the Plan only to the extent that such Claim or Interest is an Allowed Claim in that Class and such Claim or Interest has not been paid, released, or otherwise settled prior to the Effective Date.

All Claims and Interests, except ~~DIP Loan Claims,~~ Administrative Claims, Professional Fee Claims, and Priority Tax Claims, are placed in the Classes set forth below.  In accordance with Bankruptcy Code section 1123(a)(1), Administrative Claims (including Professional Fee Claims), and Priority Tax Claims, as described herein, have not been classified, and the respective treatment of such unclassified Claims is set forth below in Article VI of the Plan.  The categories of Claims and Interests listed below classify Claims and Interests for all purposes,

including voting, confirmation and distribution pursuant to the Plan and pursuant to Bankruptcy Code sections 1122 and 1123(a)(1).

| Class/ Designation | Plan Treatment | Estimated Amount of Total Claims[43] | Status | Projected Recovery |
|---|---|---|---|---|
| **Class 1**: Priority Non-Tax Claims | Each Holder of an Allowed Priority Non-Tax Claim shall receive in full and final satisfaction, settlement, and release of and in exchange for such Allowed Class 1 Claim: (A) Cash equal to the amount of such Allowed Priority Non-Tax Claim; or (B) such other treatment which the Debtors or the Plan Administrator, as applicable, and the Holder of such Allowed Priority Non-Tax Claim have agreed upon in writing. | $261,032.00 | Unimpaired/ Deemed to accept Plan | 100% |
| **Class 2**: Secured Claims | Each Holder of an Allowed Class 2 Claim shall receive in full and final satisfaction, settlement, and release of and in exchange for such Allowed Class 2 Claim: (A) return of the collateral securing such Allowed Secured Claim; or (B) Cash equal to the amount of such Allowed Secured Claim; or (C) such other treatment which the Debtors or the Plan Administrator, as applicable, and the Holder of such Allowed Secured Claim have agreed upon in writing. | $1,000.00 | Unimpaired/ Deemed to accept Plan | 100% |
| **Class ~~3A~~3**: | Unless the Holder agrees to a different | $~~36,976,772.00~~ | Impaired/ | ~~1.58~~1.9% |

---

[43] There are a number of factors that could affect the estimated amount of total claims and the projected recovery to Holders of General Unsecured Claims. It is possible that additional contingent, unliquidated, and disputed claims will be asserted against certain or all of the Debtors. Given the uncertainty due to the aforementioned items, the analysis of the percentage of recovery to Holders of General Unsecured Claims is currently an estimate that may ultimately be lower or higher than set forth herein. The Debtors reserve all rights with respect thereto.

| Class/ Designation | Plan Treatment | Estimated Amount of Total Claims[43] | Status | Projected Recovery |
|---|---|---|---|---|
| ~~Takeoff Technologies, Inc.~~ General Unsecured Claims | treatment, each Holder of a General Unsecured Claim shall receive such Holder's pro rata share of the Distribution Proceeds. | 40,831,000.00 | Entitled to vote | |
| ~~Class 3B: Takeoff Technologies Australia Pty Ltd. General Unsecured Claims~~ | ~~Unless the Holder agrees to a different treatment, each Holder of a General Unsecured Claim shall receive such Holder's pro rata share of the Distribution Proceeds.~~ | ~~$2,272.780.00~~ | ~~Impaired/ Entitled to vote~~ | ~~3.45%~~ |
| ~~Class 3C: Takeoff Technologies Canada, Inc. General Unsecured Claims~~ | ~~Unless the Holder agrees to a different treatment, each Holder of a General Unsecured Claim shall receive such Holder's pro rata share of the Distribution Proceeds.~~ | ~~$2,262,755.00~~ | ~~Impaired/ Entitled to Vote~~ | ~~1.69%~~ |
| ~~Class 3D: Takeoff Technologies FZE General Unsecured Claims~~ | ~~Unless the Holder agrees to a different treatment, each Holder of a General Unsecured Claim shall receive such Holder's pro rata share of the Distribution Proceeds.~~ | ~~$2,262,755.00~~ | ~~Impaired/ Entitled to Vote~~ | ~~1.69%~~ |
| ~~Class 3E: Takeoff International Subco, LLC General Unsecured Claims~~ | ~~Unless the Holder agrees to a different treatment, each Holder of a General Unsecured Claim shall receive such Holder's pro rata share of the Distribution Proceeds.~~ | ~~$2,262,755.00~~ | ~~Impaired/ Entitled to Vote~~ | ~~1.69%~~ |
| ~~Class 3F: Takeoff International Subco India Pvt Ltd. General Unsecured Claims~~ | ~~Unless the Holder agrees to a different treatment, each Holder of a General Unsecured Claim shall receive such Holder's pro rata share of the Distribution Proceeds.~~ | ~~$2,262,790.00~~ | ~~Impaired/ Entitled to Vote~~ | ~~9.20%~~ |
| **Class 4**: Intercompany | Holders of Intercompany Claims shall receive no Distribution on account of their | N/A | Impaired/ Deemed to | 0% |

| Class/ Designation | Plan Treatment | Estimated Amount of Total Claims[43] | Status | Projected Recovery |
|---|---|---|---|---|
| Claims | Intercompany Claims. | | reject Plan | |
| **Class 5:** Interests | On the Effective Date, all Interests shall be extinguished as of the Effective Date, and owners thereof shall receive no Distribution on account of such Interests. | N/A | Impaired/ Deemed to reject Plan | 0% |

# ARTICLE III
# BACKGROUND AND DISCLOSURES

**3.1    General Background[54]**

*(a)    The Debtors' Business*

The Debtors were founded in 2016 by a group of former grocery executives, who sought to provide a platform for micro-fulfillment centers for large grocery retailers.  Prior to the Sale, the Debtors were one of the leading ~~eGrocery, micro-fulfillment~~Grocery, micro-fulfillment solution companies in the world, with a mission to transform the grocery industry.  The Debtors sought to achieve their mission by using small, automated, robotic warehouses called micro-fulfillment centers, either placed in grocery stores or near the end-shoppers, and had operations in the United States, Canada, Australia, India, and the United Arab Emirates.

Using their own proprietary cloud-based software (for which the Debtors held various patents and trademarks), and by partnering with a third-party equipment manufacturer for the hardware, the Debtors got off to a hot start in the industry, with great momentum through early 2020. Utilizing their manufacturer's equipment and robotics, integrated with the Debtors' proprietary software, the Debtors created an end-to-end solution covering customer user interface, assortment, fulfillment, spoke routing, pickup/delivery, and replenishment.

*(b)    The Debtors' Equity Ownership and Capital Structure*

i.    Equity Ownership

As of the Petition Date, Medical Investment Group Ltd. owned 36.7% of Debtor Takeoff Technologies, Inc. and Assinatura Ltd. owned 11.1% of the outstanding shares of Debtor Takeoff Technologies, Inc.  A list of all of Takeoff Technologies, Inc.'s equity holders is attached to its voluntary petition.  Debtor Takeoff Technologies, Inc. wholly owns and manages all of the other Debtors.

ii.    Capital Structure

---

[54]    Additional information regarding the Debtors' business, assets, capital structure, and the circumstances leading to the filing of the Chapter 11 Cases is set forth in detail in the First Day Declaration.

As of the Petition Date, the Debtors had no secured or funded debt obligations. Based on the Debtors' books and records as of the Petition Date, the Debtors owed approximately $12.9 million in trade debt and other accounts payable, exclusive of potentially substantial amounts of other contingent or unliquidated unsecured claims.

## 3.2    Events Leading to Chapter 11

Prior to the commencement of the Chapter 11 Cases, the Debtors operated 24 sites, serving seven customers across the world, and employed more than 165 employees. However, the Debtors historically financed their operations primarily with proceeds from the sale of preferred stock and convertible notes and were not able to become profitable. Specifically, the Debtors were not able to realize on their goal of converting pilot programs into "full programs" of between five to ten micro-fulfillment centers per customer, which was required to be contribution margin positive. One of the main reasons for the lack of breakthrough was the industry's macroeconomic trends and headwinds, which stunted growth. Another was the rapid expansion for initial customer success.

During the late 2019-2021 period, the Debtors expanded their clientele and launched more sites. For example, one customer quickly grew to over ten (10) micro-fulfillment centers and the Debtors scaled quickly to account for the spike in growth. In hindsight, while revenue increased, the Debtors may have scaled *too* quickly, as the cost economics did not improve.

In March of 2022, the Debtors attempted a Series D investment round but faced rising interest rates. As a result, the Debtors did not realize any meaningful investment interest from outside investors. Instead, the Debtors turned to their largest existing investor, Forrestal Capital, who provided more capital and increased their ownership stake in the Company. As part of that investment, in November 2022, the Debtors launched an effort to decrease their cash burn rate as part of an overall cost management transformation process. To achieve their desired results, an initial set of initiatives were scoped with impact to topline revenue, reducing the cost to serve, or capturing one-time cash opportunities that supported their cash runway maintenance. Thus, the Debtors emphasis turned to cost-cutting more than generating additional revenue. In the first two quarters of their transformation program, the Debtors managed to reduce their annualized burn by approximately $17,000,000.

In fiscal years 2022 and 2023, the Debtors generated approximately $40,621,000 and $27,260,000, respectively, in revenue but incurred substantial operating losses, contributing to the commencement of the Chapter 11 Cases.

## 3.3    The Chapter 11 Cases

### (a)    *Generally*

As set forth above, on the Petition Date, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court. The commencement of a chapter 11 case creates an estate that is composed of all of the legal and equitable interests of the debtor as of that date. The Bankruptcy Code provides that the debtor may continue to operate its business and remain in possession of its property as a "debtor in possession." Prior to the Sale,

the Debtors operated their businesses and managed their properties as debtors and debtors in possession. By order entered on May 31, 2024, the Chapter 11 Cases are being jointly administered for procedural purposes only. No trustee or examiner has been appointed in the Chapter 11 Cases. On June 12, 2024, the U.S. Trustee appointed the Committee. On July 2, 2024, the U.S. Trustee filed an amended notice of appointment of the Committee, reflecting the resignation of KNAPP, Inc. from the Committee.

The filing of the Debtors' bankruptcy petitions on the Petition Date triggered the immediate imposition of the automatic stay under Bankruptcy Code section 362, which, with limited exceptions, enjoins all collection efforts and actions by creditors, the enforcement of liens against property of the Debtors and both the commencement and the continuation of prepetition litigation against the Debtors. With certain limited exceptions and/or modifications as permitted by order of the Bankruptcy Court, the automatic stay will remain in effect from the Petition Date until the Effective Date of the Plan.

*(b)*      ***"First Day" Motions and Related Applications***

Commencing on the Petition Date, the Debtors filed the following "first-day" motions and applications designed to ease the Debtors' transition into chapter 11, maximize the value of the Assets, and minimize the effects of the commencement of the Chapter 11 Cases (collectively, the "**First Day Motions**"):

i.    *Debtors' Motion for Entry of an Order (I) Directing Joint Administration of Chapter 11 Cases and (II) Granting Related Relief* [D.I. 3] ("**Joint Administration Motion**").

ii.   *Debtors' Motion for Entry Interim and Final Orders (I) Authorizing the Debtors to (A) File a Consolidated List of Creditors in Lieu of Submitting a Separate Mailing Matrix for Each Debtor, (B) File a Consolidated List of the Debtors' Thirty Largest Unsecured Creditors, (C) Provide Certain Parties in Interest with Electronic Service, and (D) Redact Certain Personally Identifiable Information of Individuals; and (II) Granting Related Relief* [D.I. 4] (the "**Redaction Motion**").

iii.  *Debtors' Motion for Entry of Interim and Final Orders (I) Prohibiting Utility Companies from Altering, Refusing, or Discontinuing Utility Services, (II) Deeming Utility Companies Adequately Assured of Future Payment, (III) Establishing Procedures for Resolving Objections by Utility Companies and Determining any Additional Adequate Assurance of Payment, and (IV) Granting Related Relief* [D.I. 5] (the "**Utilities Motion**").

iv.   Debtors' Application for Appointment of Kroll Restructuring Administration LLC as Claims and Noticing Agent [D.I. 6] (the "**Claims Agent Retention Motion**").

v.    *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Payment of Certain Taxes and Fees, (II) Authorizing the Banks to Honor*

*and Process Checks and Electronic Transfer Requests Related Thereto, and (III) Granting Related Relief* [D.I. 7] (the "**Taxes Motion**").

vi.  *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Continue to Operate Their Cash Management System, (B) Honor Certain Prepetition Obligations Related Thereto, (C) Maintain Existing Business Forms; (D) Continue Intercompany Transactions; (II) Confirming Administrative Expense Priority for Postpetition Intercompany Claims; and (III) Granting Related Relief* [D.I. 8] (the "**Cash Management Motion**").

vii.  *Debtors' Motion for the Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Pay Prepetition Employee Wages, Salaries, Other Compensation, and Reimbursable Employee Expenses and (B) Continue Employee Benefits Programs; and (II) Granting Related Relief* [D.I.9] (the "**Wages Motion**").

viii.  *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing Postpetition Financing; (II) Granting Liens and Providing Superpriority Administrative Expense Claims; (III) Modifying the Automatic Stay; (IV) Scheduling a Final Hearing; and (V) Granting Related Relief* [(Sealed) D.I. 10; (Redacted) D.I. 11] (the "**DIP Motion**").

On May 31, 2024, the Bankruptcy Court entered orders (i) approving the relief requested in the Joint Administration Motion [D.I. 44], and the Claims Agent Retention Application [D.I. 46] on a final basis, and (ii) approving the relief requested in the Redaction Motion [D.I. 45], the Utilities Motion [D.I. 48], the Wages Motion [D.I. 49], the Cash Management Motion [D.I. 50], the Taxes Motion [D.I. 51], and, with certain modifications, the DIP Motion [D.I. 55] on an interim basis.

On June 24, 2024, the Bankruptcy Court entered an order approving, on a final basis, the relief requested in the Redaction Motion [D.I. 96]. On June 25, 2024, the Bankruptcy Court entered orders approving the Utilities Motion [D.I. 106], the Taxes Motion [D.I. 107], the Wages Motion [D.I. 108], and the Cash Management Motion [D.I. 115]. On July 12, 2024, the Bankruptcy Court entered an order approving, on a final basis, the relief requested in the DIP Motion, after certain modifications [D.I. 224]. ~~The Final DIP Order documented the Global Settlement embodied in this Plan.~~

*(c)    Retention of Professional Advisors*

In the wake of their liquidity constraints and operational challenges, in early 2023, the Debtors began to increasingly consider the need to restructure or otherwise receive a cash infusion to ensure that the Debtors could move forward as a viable business. In May 2023, the Debtors engaged Sheppard Mullin Richter & Hampton ("**SMRH**") as restructuring counsel to consider all of their available options. In April of 2024, ~~when it became apparent that~~ the Debtors determined that their best path towards maximizing value was through the commencement of these Chapter 11 Cases. Thereafter, the Debtors engaged Huron Consulting Services LLC ("**Huron**") as restructuring advisor and Young Conaway Stargatt & Taylor, LLP ("**YSCT**") as restructuring co-counsel.

Pursuant to orders entered on July 2 and July 3, 2024, the Bankruptcy Court authorized the Debtors to retain and employ (i) SMRH as their bankruptcy counsel [D.I. 170]; (ii) YCST as their bankruptcy co-counsel [D.I. 166]; (ii) Huron, to provide the Debtors with certain management positions, and specifically John C. DiDonato as Chief Restructuring Officer and Brett M. Anderson as Deputy Chief Restructuring Officer [D.I. 169]; and (iii) Kroll Restructuring, LLC as administrative advisor [D.I. 167]. The Bankruptcy Court also authorized the Debtors to retain and employ certain professionals utilized by the Debtors in the ordinary course of business prior to the Petition Date [D.I. 113].

Pursuant to orders entered on July 22, 2024, the Bankruptcy Court authorized the Committee to retain and employ (i) Kilpatrick Townsend & Stockton LLP ("**Kilpatrick Townsend**") [D.I. 250] and Ashby & Geddes, P.A. [D.I. 252] as its legal co-counsel, and (ii) Dundon Advisers, LLC as its financial advisors [D.I. 251]. On September 18, 2024, following the transition of certain attorneys representing the Committee from Kilpatrick Townsend to Eversheds Sutherland (US) LLP ("**Eversheds Sutherland**"), the Bankruptcy Court authorized the Committee to substitute Eversheds Sutherland for Kilpatrick Townsend as its retained legal co-counsel [D.I. 391].

*(d)*     *The Asset Sale*

i.     The Prepetition Sales Process

Approximately one month prior to the commencement of the Chapter 11 Cases, the Debtors' advisors began compiling a list of strategic buyers for the Assets alongside marketing materials in furtherance of a sale process for the sale of all or substantially all of the Assets. The Debtors received interest in the Assets but no formal indication of interest or offer was forthcoming.

ii.     The Postpetition Sales Process

As set forth in the First Day Declaration, the Debtors' paramount goal in the Chapter 11 Cases is to maximize the value of the estates for the benefit of the Debtors' creditor constituencies and other stakeholders through the sale of substantially all of the Assets. On June 6, 2024, the Debtors filed a motion (the "**Bidding Procedures Motion**") seeking authority to proceed with a bidding and auction process to consummate a sale or series of sales (the "**Sale Process**") that the Debtors ~~expect will~~expected would generate maximum value for their assets. To facilitate the Sale Process, the Debtors, in consultation with Huron and their other professional advisors, proposed certain customary bidding procedures (the "**Bidding Procedures**") to preserve flexibility in the Sale Process, generate the greatest level of interest in the Debtors' assets, and result in the highest or otherwise best value for those assets. Given the Debtors' liquidity situation at the outset of the Chapter 11 Cases, the Debtors believed that a timely sale of their assets would maximize value to the greatest extent possible under the circumstances of these Chapter 11 Cases, and generate the highest possible recoveries in the most efficient and expeditious manner possible, which ~~will~~would inure to the benefit of the Debtors' creditors and other stakeholders. The Debtors also believed that it would ensure, to the benefit of their estates, that the market has certainty around the parameters of the Sale Process.

As set forth in the Bidding Procedures Motion, the Debtors, in consultation with Huron and their other professional advisors worked extensively to implement a robust and expeditious Sale Process.  On July 12, 2024, after the Debtors, the Committee, and the DIP Lenders reached the Global Settlement, the Bankruptcy Court entered the Bidding Procedures Order, approving the Bidding Procedures and establishing, among other things, August 8, 2024, as the bid deadline, August 12, 2024, as the auction date, and August 14, 2024, as the hearing to approve the Sale.

The only qualified bid received pursuant to the Bidding Procedures Order was submitted by Woolworths Group Limited for a credit bid of its respective DIP Loan Claims.  Accordingly, Woolworths Group Limited was selected as the successful bidder for certain of the collateral granted under the Final DIP Order and certain other of the Debtors' Assets.  On August 16, 2024, the Court entered the Sale Order.

### (e)     *Schedules and Bar Dates*

On June 25, 2025, the Bankruptcy Court entered the Bar Date Order, granting the relief requested in the Bar Date Motion [D.I. 70].  The Bar Date established the General Bar Date as August 21, 2024, at 5:00 p.m. (prevailing Eastern Time).

On July 22, 2024, the Debtors filed the Schedules.  Among other things, the Schedules set forth the Claims of known or putative creditors against the Debtors as of the Petition Date, based upon the Debtors' books and records.

On [●], 2024, the Bankruptcy Court entered the Solicitation Procedures Order that, among other things, established the Initial Administrative Claim Bar Date as [●], 2024 at 4:00 p.m. (prevailing Eastern Time).  As described in detail below, the Plan contemplates the establishment of a Final Administrative Claim Bar Date and Professional Fee Bar Date pursuant to the Confirmation Order.

The projected recoveries set forth in the Plan are based on certain assumptions, including the Debtors' estimates of the Claims that will eventually be Allowed in various Classes.  There is no guarantee that the ultimate amount of each of such categories of Claims will correspond to the Debtors' estimates.  The Debtors or the Plan Administrator, as applicable, and their professionals will investigate Claims filed against the Debtors to determine the validity of such Claims.  The Debtors or the Plan Administrator, as applicable, may file objections to Claims that are filed in improper amounts or classifications, or are otherwise subject to objection under the Bankruptcy Code or other applicable law.

### (f)     *The Global Settlement*

Upon the Committee's formation and in response to (i) certain of the relief requested in the DIP Motion on a final basis, including the Debtors' proposed transfer of certain intellectual property to the DIP Lenders in exchange for the DIP facility and the amounts allocated to the Committee's professionals in the budget for the Chapter 11 Cases breadth of the collateral being pledged thereunder, and (ii) the relief requested in the Bid Procedures Motion, which was inextricably tied to the relief sought through the DIP Motion, the Committee filed objections to

the DIP Motion [(Sealed) D.I. 124; (Redacted) D.I. 132] and the Bid Procedures Motion [D.I. 123] and also filed a motion to covert the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code [(Sealed) D.I. 147; (Redacted) D.I. 190] (the "**Motion to Convert**").

The Debtors, the DIP Lenders, and the Committee spent several weeks negotiating the terms of the Final DIP Order to resolve the Committee's objections and avoid potential conversion of the Chapter 11 Cases, a result that the Debtors viewed as value destructive and antithetical to the purpose of the commencement of the Chapter 11 Cases.[6] [5]  As formally documented in the Final DIP Order, the Debtors, the DIP Lenders, and the Committee agreed that, "[i]n the event that the DIP Collateral Agent or the DIP Lenders (or some combination of them) credit bid for any portion of the Debtors' assets, such bid shall also include an amount of cash (to be funded equally by Woolworths and Albertsons) equal to the difference between $2.5 million and the Closing Date Cash, but not to exceed $700,000."  This amount was reserved specifically to pay expenses necessary to wind down the Estates and fund Distributions to Allowed Claims, and ensured a recovery to General Unsecured Creditors while providing the Debtors with a consensual chapter 11 process.  As of

Subsequent to the entry of the Final DIP Order and the Sale Order, the Debtors, the DIP Lenders, and the Committee engaged in further negotiations to increase the remaining Cash in the Debtors' Estates.  To that end, the parties reached the following resolutions, each of which are subject to the occurrence of the Effective Date:

- The Committee will select the Plan Administrator.

- The DIP Lenders will release their DIP Liens (as defined in the Final DIP Order) on all post-closing remaining assets, including collections.

- The Debtors' independent directors will waive payment of their director fees for October through the Effective Date.

- The Debtors' Professionals will contribute $125,000 to the Debtors' Estates, which shall be paid within 5 business days of the Effective Date.  The DIP Lenders agreed that such contribution will not be subject to the DIP Liens (as defined in the Final DIP Order).

- The Committee's Professional fee carve-out in the Final DIP Order will be increased to $925,000, to be funded with the $125,000 contributed by the

---

[6]  In connection therewith, the Bankruptcy Court held a series of hearings and status conferences on July 1, July 3, July 9, and July 11, 2024.  During the course of these hearings, the Bankruptcy Court issued an opinion [D.I. 187] in connection with approving the Debtors' request to obtain additional funding on a further interim basis [D.I. 188].

[5]  In connection therewith, the Bankruptcy Court held a series of hearings and status conferences on July 1, July 3, July 9, and July 11, 2024.  During the course of these hearings, the Bankruptcy Court issued an opinion [D.I. 187] in connection with approving the Debtors' request to obtain additional funding on a further interim basis [D.I. 188].

Debtors' Professionals under this Global Settlement. With respect to any approved Professional Fee Claims of the Committee in excess of $925,000: (1) 50% shall be waived; and (2) 50% shall be treated and paid as Administrative Claims, which need not be paid on the Effective Date.

- All Debtors' Professionals reconfirm their prior agreement to waive any approved fees in excess of the carveout contained in the budget attached to the Final DIP Order.

- Village Super Market, Inc. will set off a total of $137,763.70 against their DIP Loan Claims. The Debtors stipulate that they are not owed any other amounts from Village Super Market, Inc.

- ShopRite of Hunterdon County, Inc. will set off a total of $80,077.77, against their DIP Loan Claims. The Debtors stipulate that they are not owed any other amounts from ShopRite of Hunterdon County, Inc.

- Inserra Supermarkets, Inc. will set off a total of $121,929.77 against their DIP Loan Claims. The Debtors stipulate that they are not owed any other amounts from Inserra Supermarkets, Inc.

- The Debtors stipulate that they are not owed any amounts from Albertsons Companies, Inc. or any of its Related Parties.

- Prepetition claims against the Prepetition Directors and Officers may be pursued in accordance with Section 14.1(e) of this Plan.

- Notwithstanding anything to contained in the Plan or the Confirmation Order to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, to the fullest extent permitted by applicable law, on the Effective Date, each of the Debtors, on their own behalf and on behalf of their respective Estates and their respective successors, assigns, and representatives, including, without limitation, the Plan Administrator, completely and forever release, waive, void, extinguish and discharge unconditionally, each of the DIP Lenders and their Related Parties from any and all Claims, Causes of Action, obligations, suits, judgments, damages, debts, rights, remedies and liabilities of any nature whatsoever, whether liquidated or unliquidated, fixed or Contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise, that are or may be based in whole or part on any act, omission, transaction, event or other circumstance taking place or existing on or prior to the Effective Date (including prior to the Petition Date) in connection with or related to any of the Debtors, their respective Assets, the Estates, the Chapter 11 Cases, any of the Debtors' in- or out-of-court restructuring efforts, the Interim DIP Orders, the Final DIP Order, the DIP Loan Agreement, the Sale Process, the Sale, the Global Settlement, or the combined Plan and Disclosure Statement, that may

be asserted by or on behalf of any of the Debtors or their respective Estates, the Plan Administrator or any other successor to the Debtors or their respective Estates, against any of the DIP Lenders and their Related Parties, excluding acts or omissions for actual fraud, gross negligence or willful misconduct as determined by a Final Order.

- The Debtors and Committee reaffirm the stipulation contained in Paragraph L of the Final DIP Order as of the Effective Date.  The Debtors and Committee represent that they have no knowledge of any claims against the DIP Lenders in any capacity, including any claims arising from any willful misconduct, gross negligence or actual fraud, and that the Committee will not refer any such claims to the Plan Administrator.

- The following Deficiency DIP Loan Claims shall be treated as Allowed General Unsecured Claims, not subject to setoff, in the following amounts:

  - Village Super Market, Inc. - $655,657.02
  - ShopRite of Hunterdon County, Inc. - $656,332.95
  - Inserra Supermarkets, Inc. - $633,292.20
  - Albertsons Companies, Inc. - $3,160,587.84

- The DIP Lenders will vote their Deficiency DIP Loan Claims, and any other Class 3 General Unsecured Claims they hold, in favor of the Plan.

As of the filing of this Combined Disclosure Statement and Plan, the Debtors are holding approximately $~~1,700,000.00~~1,300,000.00 in Cash.  ~~The~~ As a result of the Global Settlement, the Debtors' current projections anticipate that $1,200,000.00 in Cash will remain in the Debtors' Estates at Confirmation, which amount is subject to the caveats set forth herein.

In the Debtors' business judgment~~—~~ with which the Committee and the DIP Lenders ~~agreed~~ agree—the Global Settlement ~~was~~is reasonable and in the best interest of the Debtors, their estates, creditors and all parties in interest, including the Holders of Allowed General Unsecured Claims.  The Global Settlement ~~was~~is the product of good-faith and arm's-length negotiations between the parties.  ~~As a result of the Global Settlement, the General Unsecured Creditors will receive an assured recovery in all Sub-Classes in Class 3 that, absent the Global Settlement, would either be unlikely or the result of substantial, costly and time-consuming litigation.~~ The Debtors reasonably determined that entry into the Global Settlement is in the best interests of the estates and reflected a fair and reasonable compromise.

*(g)*      ***The Wind-down of the Estates and Assets to be Distributed.***

After the ~~closing of the Sale~~Effective Date, the ~~Debtors~~Plan Administrator will focus on efficiently winding down ~~their~~the Debtors' businesses, preserving Cash held in the Estates, and monetizing their remaining Assets.

The remaining Assets ~~may~~ currently consist of, among other things, Cash, certain deposits, prepayments, credits and refunds, insurance policies or rights to proceeds thereof, accounts receivables (including certain tax refunds), and Retained Causes of Action. The main source of Cash is the result of the Global Settlement described herein. The Liquidation Analysis provides a breakdown of expected recoveries and expenses.

This combined Plan and Disclosure Statement provides for the Assets, to the extent not already liquidated, to be liquidated over time and the proceeds thereof to be distributed to holders of Allowed Claims in accordance with the terms of the Plan and the treatment of Allowed Claims described more fully herein. The Plan Administrator will effect such liquidation and distributions. The Debtors will be dissolved as soon as practicable after the Effective Date.

## ARTICLE IV
## CONFIRMATION AND VOTING PROCEDURES

**4.1    Confirmation Procedure**.  The Solicitation Procedures Order, among other things, conditionally approves the combined Disclosure Statement and Plan for solicitation purposes only and authorizes the Debtors to solicit votes to accept or reject the Plan.  The Confirmation Hearing has been scheduled for December ~~5~~19, 2024 at 10:00 a.m. (prevailing Eastern Time) at the Bankruptcy Court, 824 North Market Street, [•]3rd Floor, Courtroom [•]7 Wilmington, Delaware 19801 to consider (a) final approval of the Disclosure Statement as providing adequate information pursuant to Bankruptcy Code section 1125 and (b) confirmation of the Plan pursuant to Bankruptcy Code section 1129.  The Confirmation Hearing may be adjourned from time to time by the Debtors without further notice, except for an announcement of the adjourned date made at the Confirmation Hearing, by filing a notice with the Bankruptcy Court, or through a filing of an agenda with the Bankruptcy Court.

**4.2    Procedure for Objections**.  Any objection to final approval of the combined Disclosure Statement and Plan as providing adequate information pursuant to Bankruptcy Code section 1125 or confirmation of the Plan must be made in writing and filed with the Bankruptcy Court and served on (a) counsel to the Debtors, (i) Sheppard, Mullin, Richter & Hampton LLP, 321 North Clark Street, 32nd Floor, Chicago, IL 60654 (Attn:   Justin R. Bernbrock (jbernbrock@sheppardmullin.com)), and (ii) Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, DE 19801, (Attn:  Joseph M. Mulvihill, Esq. (jmulvihill@ycst.com)); (b) the U.S. Trustee, 844 King Street, Suite 2207, Wilmington, DE, 19801, (Attn:  Jonathan Lipshie (Jonathan.Lipshie@usdoj.gov)); (c) counsel to the DIP Lenders, (i) Jones Day, 555 South Flower Street, 50th Floor, Los Angeles, CA 90071, (Attn:  Joshua M. Mester       (jmester@jonesday.com)       and       Kathryn       Sutherland-Smith (ksutherlandsmith@jonesday.com)), (ii) Epstein Becker & Green, P.C., 875 Third Avenue, New York, NY 10022 (Attn:  Wendy G. Marcari (wmarcari@ebglaw.com)), and (iii) Ballard Spahr LLP, 919 N. Market Street, 11th Floor, Wilmington, DE 19801, (Attn:  Tobey M. Daluz (daluzt@ballardspahr.com) and Nicholas J. Brannick (brannickn@ballardspahr.com)); and (d) counsel to the Committee~~;~~, (i) Eversheds Sutherland (US) LLP, 999 Peachtree St. NE, Atlanta, GA 30309 (Attn:   Todd C. Meyers (ToddMeyers@eversheds-sutherland.com), and Danielle Barav-Johnson (DahniBarav-Johnson@eversheds-sutherland.com)), and (ii) Ashby & Geddes, P.A., 500 Delaware Avenue, 8th Floor, Wilmington, DE 19899 (Attn:  Ricardo Palacio

(RPalacio@ashbygeddes.com), and Gregory A. Taylor (GTaylor@ashbygeddes.com)) (collectively, the "**Objection Recipients**"); in each case, by no later than ~~November 26~~December 10, 2024 at 4:00 p.m. (prevailing Eastern Time). Unless an objection is timely filed and served, it may not be considered by the Bankruptcy Court at the Confirmation Hearing.

**4.3    Requirements for Confirmation**.  The Bankruptcy Court will confirm the Plan only if it meets all the applicable requirements of Bankruptcy Code section 1129.  Among other requirements, the Plan (i) must be accepted by all Impaired Classes of Claims or Interests or, if rejected by an Impaired Class, the Plan must not "discriminate unfairly" against, and must be "fair and equitable" with respect to, such Class; and (ii) must be feasible.  The Bankruptcy Court must also find that: (i) the Plan has classified Claims and Interests in a permissible manner; (ii) the Plan complies with the technical requirements of chapter 11 of the Bankruptcy Code; and (iii) the Plan has been proposed in good faith.

**4.4    Classification of Claims and Interests**

Bankruptcy Code section 1123 provides that a plan must classify the claims and interests of a debtor's creditors and equity interest holders.  In accordance with Bankruptcy Code section 1123, the Plan divides Claims and Interests into Classes and sets forth the treatment for each Class (other than those claims which pursuant to Bankruptcy Code section 1123(a)(1) need not be and have not been classified).  The Debtors also are required, under Bankruptcy Code section 1122, to classify Claims and Interests into Classes that contain Claims or Interests that are substantially similar to the other Claims or Interests in such Class.

The Bankruptcy Code also requires that a plan provide the same treatment for each claim or interest of a particular class unless the claim holder or interest holder agrees to a less favorable treatment of its claim or interest.  The Debtors believe that the Plan complies with such ~~standard~~standards.  If the Bankruptcy Court finds otherwise, however, it could deny confirmation of the Plan if the holders of Claims or Interests affected do not consent to the treatment afforded them under the Plan.

A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes.  A Claim also is placed in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released, or otherwise settled prior to the Effective Date.

The Debtors believe that the Plan has classified all Claims and Interests in compliance with the provisions of Bankruptcy Code section 1122 and applicable case law.  It is possible that a Holder of a Claim or Interest may challenge the Debtors' classification of Claims or Interests and that the Bankruptcy Court may find that a different classification is required for the Plan to be confirmed.  If such a situation develops, the Debtors intend, in accordance with the terms of the Plan, to make such permissible modifications to the Plan as may be necessary to permit its confirmation.  Any such reclassification could adversely affect holders of Claims by changing

the composition of one or more Classes and the vote required of such Class or Classes for approval of the Plan.

**EXCEPT AS SET FORTH IN THE PLAN, UNLESS SUCH MODIFICATION OF CLASSIFICATION MATERIALLY ADVERSELY AFFECTS THE TREATMENT OF A HOLDER OF A CLAIM AND REQUIRES RE-SOLICITATION, ACCEPTANCE OF THE PLAN BY ANY HOLDER OF A CLAIM PURSUANT TO THIS SOLICITATION WILL BE DEEMED TO BE A CONSENT TO THE PLAN'S TREATMENT OF SUCH HOLDER OF A CLAIM REGARDLESS OF THE CLASS AS TO WHICH SUCH HOLDER ULTIMATELY IS DEEMED TO BE A MEMBER.**

The amount of any Impaired Claim that ultimately is Allowed by the Bankruptcy Court may vary from any estimated Allowed amount of such Claim and, accordingly, the total Claims that are ultimately Allowed by the Bankruptcy Court with respect to each Impaired Class of Claims may also vary from any estimates contained herein with respect to the aggregate Claims in any Impaired Class.  Thus, the actual recovery ultimately received by a particular Holder of an Allowed Claim may be adversely or favorably affected by the aggregate amount of Claims Allowed in the applicable Class.  Additionally, any changes to any of the assumptions underlying the estimated Allowed amounts could result in material adjustments to recovery estimates provided herein or the actual Distribution received by Creditors.  The projected recoveries are based on information available to the Debtors as of the date hereof and reflect the Debtors' views as of the date hereof only.

The classification of Claims and Interests and the nature of distributions to members of each Class are summarized herein.  The Debtors believe that the consideration, if any, provided under the Plan to holders of Claims reflects an appropriate resolution of their Claims taking into account the differing nature and priority (including applicable contractual subordination) of such Claims and Interests.  The Bankruptcy Court must find, however, that a number of statutory tests are met before it may confirm the Plan.  Many of these tests are designed to protect the interests of holders of Claims or Interests who are not entitled to vote on the Plan, or do not vote to accept the Plan, but who will be bound by the provisions of the Plan if it is confirmed by the Bankruptcy Court.

### 4.5    Impaired Claims or Interests

Pursuant to the provisions of the Bankruptcy Code, only classes of claims or interests that are "impaired" (as defined in Bankruptcy Code section 1124) under a plan may vote to accept or reject such plan.  Generally, a claim or interest is impaired under a plan if the holder's legal, equitable, or contractual rights are changed under such plan.  In addition, if the holders of claims or interests in an impaired class do not receive or retain any property under a plan on account of such claims or interests, such impaired class is deemed to have rejected such plan under Bankruptcy Code section 1126(g) and, therefore, such holders are not entitled to vote on such plan.

Under the Plan, Holders of Claims in ~~the Sub-Classes in~~ Class 3 are Impaired and are entitled to vote on the Plan.  Under the Plan, Holders of Claims or Interests in Classes 4 and 5 are Impaired and will not receive or retain any property under the Plan on account of such

Claims or Interests and, therefore, are not entitled to vote on the Plan and deemed to reject the Plan.  Under the Plan, holders of Claims in Classes 1 and 2 are Unimpaired and, therefore, not entitled to vote on the Plan and are deemed to accept the Plan.

**ACCORDINGLY, A BALLOT FOR ACCEPTANCE OR REJECTION OF THE PLAN IS BEING PROVIDED ONLY TO HOLDERS OF CLAIMS IN** ~~ALL SUB-CLASSES IN~~ **CLASS 3.**

### 4.6    Confirmation Without Necessary Acceptances; Cramdown

In the event that any impaired class of claims or interests does not accept a plan, a debtor nevertheless may move for confirmation of the plan.  A plan may be confirmed, even if it is not accepted by all impaired classes, if the plan has been accepted by at least one impaired class of claims, and the plan meets the "cramdown" requirements set forth in Bankruptcy Code section 1129(b).  Bankruptcy Code section 1129(b) requires that a court find that a plan (a) "does not discriminate unfairly" and (b) is "fair and equitable," with respect to each non-accepting impaired class of claims or interests.  Here, because Holders of Claims and Interests in Classes 4 and 5 are deemed to reject the Plan, the Debtors will seek confirmation of the Plan from the Bankruptcy Court by satisfying the "cramdown" requirements set forth in Bankruptcy Code section 1129(b).  The Debtors believe that such requirements are satisfied, as no Holder of a Claim or Interest junior to those in Classes 4 and 5 is entitled to receive any property under the Plan.

A plan does not "discriminate unfairly" if (a) the legal rights of a nonaccepting class are treated in a manner that is consistent with the treatment of other classes whose legal rights are similar to those of the nonaccepting class and (b) no class receives payments in excess of that which it is legally entitled to receive for its claims or interests.  The Debtors believe that, under the Plan, all Impaired Classes of Claims or Interests are treated in a manner that is consistent with the treatment of other Classes of Claims or Interests that are similarly situated, if any, and no Class of Claims or Interests will receive payments or property with an aggregate value greater than the aggregate value of the Allowed Claims or Allowed Interests in such Class.  Accordingly, the Debtors believe that the Plan does not discriminate unfairly as to any Impaired Class of Claims or Interests.

The Bankruptcy Code provides a nonexclusive definition of the phrase "fair and equitable."  To determine whether a plan is "fair and equitable," the Bankruptcy Code establishes "cramdown" tests for secured creditors, unsecured creditors and equity holders, as follows:

*(a)*    Secured Creditors.  Either (i) each impaired secured creditor retains its liens securing its secured claim and receives on account of its secured claim deferred Cash payments having a present value equal to the amount of its allowed secured claim, (ii) each impaired secured creditor realizes the "indubitable equivalent" of its allowed secured claim or (iii) the property securing the claim is sold free and clear of liens with such liens to attach to the proceeds of the sale and the treatment of such liens on proceeds to be as provided in clause (i) or (ii) above.

*(b)*    Unsecured Creditors.  Either (i) each impaired unsecured creditor receives or retains under the plan property of a value equal to the amount of its allowed claim or (ii) the holders of

claims and interests that are junior to the claims of the dissenting class will not receive any property under the plan.

*(c)*    Interests.  Either (i) each holder of an equity interest will receive or retain under the plan property of a value equal to the greatest of the fixed liquidation preference to which such holder is entitled, the fixed redemption price to which such holder is entitled or the value of the interest or (ii) the holder of an interest that is junior to the nonaccepting class will not receive or retain any property under the plan.

As discussed above, the Debtors believe that the distributions provided under the Plan satisfy the absolute priority rule, where required.

## 4.7    Feasibility

Bankruptcy Code section 1129(a)(11) requires that confirmation of a plan not be likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtors or any successor to the Debtors (unless such liquidation or reorganization is proposed in the Plan). Inasmuch as the Assets have been, or will be, liquidated and the Plan provides for the Distribution of all of the Cash proceeds of the Assets to Holders of Claims that are Allowed in accordance with the Plan, for purposes of this test, the Debtors have analyzed the ability of the Plan Administrator to meet its obligations under the Plan.  Based on the Debtors' belief, the Plan Administrator will have sufficient assets to accomplish its tasks under the Plan.  Therefore, the Debtors believe that the liquidation pursuant to the Plan will meet the feasibility requirements of the Bankruptcy Code.

## 4.8    Best Interests Test and Liquidation Analysis

Even if a plan is accepted by the holders of each class of claims and interests, the Bankruptcy Code requires the Bankruptcy Court to determine that such plan is in the best interests of all holders of claims or interests that are impaired by that plan and that have not accepted the plan.  The "best interests" test, as set forth in Bankruptcy Code section 1129(a)(7), requires a court to find either that all members of an impaired class of claims or interests have accepted the plan or that the plan will provide a member who has not accepted the plan with a recovery of property of a value, as of the effective date of the plan, that is not less than the amount that such holder would recover if the debtor were liquidated under chapter 7 of the Bankruptcy Code.

To calculate the probable distribution to holders of each impaired class of claims and interests if the debtor was liquidated under chapter 7, a court must first determine the aggregate dollar amount that would be generated from a debtor's assets if its chapter 11 cases were converted to cases under chapter 7 of the Bankruptcy Code.  To determine if a plan is in the best interests of each impaired class, the present value of the distributions from the proceeds of a liquidation of the debtor's unencumbered assets and properties, after subtracting the amounts attributable to the costs, expenses and administrative claims associated with a chapter 7 liquidation, must be compared with the value offered to such impaired classes under the plan.  If the hypothetical liquidation distribution to holders of claims or interests in any impaired class is

greater than the distributions to be received by such parties under the plan, then such plan is not in the best interests of the holders of claims or interests in such impaired class.

Because the Plan is a liquidating plan, the "liquidation value" in the hypothetical chapter 7 liquidation analysis for purposes of the "best interests" test is substantially similar to the estimates of the results of the chapter 11 liquidation contemplated by the Plan. However, the Debtors believe that in a chapter 7 liquidation, there would be additional costs and expenses that the Estates would incur as a result of liquidating the Estates in a chapter 7 case.

The costs of liquidation under chapter 7 of the Bankruptcy Code would include the compensation of a trustee, as well as the costs of counsel and other professionals retained by the trustee. The Debtors believe such amount would exceed the amount of expenses that would be incurred in implementing the Plan and winding up the affairs of the Debtors. Conversion also would likely delay the liquidation process and ultimate distribution of the Assets. The Estates would also be obligated to pay all unpaid expenses incurred by the Debtors during the Chapter 11 Cases (such as compensation for professionals) that are allowed in the chapter 7 cases.

Accordingly, the Debtors believe that holders of Allowed Claims would receive less than anticipated under the Plan if the Chapter 11 Cases were converted to chapter 7 cases, and therefore, the classification and treatment of Claims and Interests in the Plan complies with Bankruptcy Code section 1129(a)(7).

A liquidation analysis is attached hereto as **Exhibit A**.[76]

## 4.9    Acceptance of the Plan

The rules and procedures governing eligibility to vote on the Plan, solicitation of votes, and submission of ballots are set forth in the Solicitation Procedures Order.

For the Plan to be accepted by an Impaired Class of Claims, a majority in number and two-thirds in dollar amount of the Claims voting in such Class must vote to accept the Plan. At least one Voting Class, excluding the votes of insiders, must actually vote to accept the Plan.

**IF YOU ARE ENTITLED TO VOTE ON THE PLAN, YOU ARE URGED TO COMPLETE, DATE, SIGN, AND PROMPTLY MAIL THE BALLOT YOU RECEIVE. PLEASE BE SURE TO COMPLETE ALL BALLOT ITEMS PROPERLY AND LEGIBLY. IF YOU ARE A HOLDER OF A CLAIM ENTITLED TO VOTE ON THE PLAN AND YOU DID NOT RECEIVE A BALLOT, YOU RECEIVED A DAMAGED BALLOT, OR YOU LOST YOUR BALLOT, OR IF YOU HAVE ANY QUESTIONS CONCERNING THE PLAN OR PROCEDURES FOR VOTING ON THE PLAN, PLEASE CONTACT THE SOLICITATION AND CLAIMS AGENT (I) BY TELEPHONE AT: (833) 533-7749 (U.S./CANADA, TOLL-FREE) OR +1 (646) 747-4268 (INTERNATIONAL, TOLL) OR (II) BY EMAIL AT: TAKEOFFINFO@RA.KROLL.COM (WITH "TAKEOFF SOLICITATION INQUIRY"**

---

[76] The Debtors intend to file a liquidation analysis in advance of the hearing to approve the Solicitation Procedures Order.

IN THE SUBJECT LINE).  THE SOLICITATION AND CLAIMS AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.

HOLDERS OF CLAIMS IN ~~ALL SUB-CLASSES IN~~ CLASS 3 WHO ~~DO NOT~~ WISH TO PROVIDE THE RELEASES SET FORTH IN SECTION 14.1(c) HEREIN MUST AFFIRMATIVELY INDICATE SO BY CHECKING THE "~~OPT-OUT~~OPT-IN" BOX ON THEIR BALLOT.

~~PLEASE BE ADVISED THAT ALL HOLDERS OF CLAIMS IN ALL SUB-CLASSES IN CLASS 3 THAT (I) VOTE TO ACCEPT THE PLAN; OR (II) VOTE TO REJECT THE PLAN, BUT DO NOT AFFIRMATIVELY MAKE THE OPT-OUT ELECTION ON THEIR BALLOT, SHALL BE DEEMED TO HAVE CONSENTED TO THE RELEASES SET FORTH IN SECTION 14.1(c) HEREIN.~~

## ARTICLE V
## CERTAIN RISK FACTORS TO BE CONSIDERED PRIOR TO VOTING

THE PLAN AND ITS IMPLEMENTATION ARE SUBJECT TO CERTAIN RISKS, INCLUDING, BUT NOT LIMITED TO, THE RISK FACTORS SET FORTH BELOW. HOLDERS OF CLAIMS WHO ARE ENTITLED TO VOTE ON THE PLAN SHOULD READ AND CAREFULLY CONSIDER THE RISK FACTORS, AS WELL AS THE OTHER INFORMATION SET FORTH IN THE PLAN AND THE DOCUMENTS DELIVERED TOGETHER HEREWITH OR REFERRED TO OR INCORPORATED BY REFERENCE HEREIN, BEFORE DECIDING WHETHER TO VOTE TO ACCEPT OR REJECT THE PLAN.   THESE FACTORS SHOULD NOT, HOWEVER, BE REGARDED AS CONSTITUTING THE ONLY RISKS INVOLVED IN CONNECTION WITH THE PLAN AND ITS IMPLEMENTATION.

### 5.1    The Plan May Not Be Accepted

The Debtors can make no assurances that the requisite acceptances to the Plan will be received, and the Debtors may need to obtain acceptances to an alternative plan of liquidation for the Debtors, or otherwise, that may not have the support of the Creditors and/or may be required to liquidate the Estates under chapter 7 of the Bankruptcy Code.  There can be no assurance that the terms of any such alternative restructuring arrangement or plan would be similar to or as favorable to Creditors as those proposed in the Plan.

### 5.2    The Plan May Not Be Confirmed

Even if the Debtors receive the requisite acceptances, there is no assurance that the Bankruptcy Court, which may exercise substantial discretion as a court of equity, will confirm the Plan.  Even if the Bankruptcy Court determined that the combined Disclosure Statement and Plan and the balloting procedures and results were appropriate, the Bankruptcy Court could still decline to confirm the Plan if it finds that any of the statutory requirements for confirmation had not been met.  Moreover, there can be no assurance that modifications to the combined Disclosure Statement and Plan will not be required for Confirmation or that such modifications would not necessitate the re-solicitation of votes.  If the Plan is not confirmed, it is unclear what

distributions Holders of Claims or Interests ultimately would receive with respect to their Claims or Interests in a subsequent plan of liquidation.

If the Plan is not confirmed, the Plan will need to be revised and it is unclear whether a chapter 11 reorganization or liquidation of the Debtors' assets could be implemented and what distribution the holders of Allowed Claims would receive. If an alternative could not be agreed to, it is possible that the Debtors would have to liquidate their remaining assets in chapter 7, in which case it is likely that the holders of Allowed Claims would receive substantially less favorable treatment than they would receive under the Plan. There can be no assurance that the terms of any such alternative would be similar to or as favorable to the Debtors' creditors as those proposed in the Plan.

## 5.3    Distributions to Holders of Allowed Claims under the Plan May Be Inconsistent with Projections

Projected Distributions are based upon good faith estimates of the total amount of Claims ultimately Allowed and the funds available for Distribution. There can be no assurance that the estimated Claim amounts set forth in the Plan are correct. These estimated amounts are based on certain assumptions with respect to a variety of factors. Both the actual amount of Allowed Claims in a particular Class and the funds available for distribution to such Class may differ from the Debtors' estimates. If the total amount of Allowed Claims in a Class is higher than the Debtors' estimates, or the funds available for distribution to such Class are lower than the Debtors' estimates, the percentage recovery to Holders of Allowed Claims in such Class will be less than projected.

## 5.4    Objections to Classification of Claims

Bankruptcy Code section 1122 requires that the Plan classify Claims and Interests. The Bankruptcy Code also provides that the Plan may place a Claim or Interest in a particular Class only if such Claim or Interest is substantially similar to the other Claims or Interests of such Class. The Debtors believe that all Claims and Interests have been appropriately classified in the Plan. To the extent that the Bankruptcy Court finds that a different classification is required for the Plan to be confirmed, the Debtors would seek to (i) modify the Plan to provide for whatever classification might be required for Confirmation and (ii) use the acceptances received from any Holder of Claims pursuant to this solicitation for the purpose of obtaining the approval of the Class or Classes of which such Holder ultimately is deemed to be a member. Any such reclassification of Claims, although subject to the notice and hearing requirements of the Bankruptcy Code, could adversely affect the Class in which such Holder was initially a member, or any other Class under the Plan, by changing the composition of such Class and the vote required for approval of the Plan. There can be no assurance that the Bankruptcy Court, after finding that a classification was inappropriate and requiring a reclassification, would approve the Plan based upon such reclassification. Except to the extent that modification of classification in the Plan requires re-solicitation, the Debtors will, in accordance with the Bankruptcy Code and the Bankruptcy Rules, seek a determination by the Bankruptcy Court that acceptance of the Plan by any Holder of Claims pursuant to this solicitation will constitute a consent to the Plan's treatment of such Holder, regardless of the Class as to which such Holder is ultimately deemed to be a member. The Debtors believe that under the Bankruptcy Rules, they would be required to

resolicit votes for or against the Plan only when a modification adversely affects the treatment of the Claim or Interest of any Holder.

The Bankruptcy Code also requires that the Plan provide the same treatment for each Claim or Interest of a particular Class unless the Holder of a particular Claim or Interest agrees to a less favorable treatment of its Claim or Interest. The Debtors believe that the Plan complies with the requirement of equal treatment. To the extent that the Bankruptcy Court finds that the Plan does not satisfy such requirement, the Bankruptcy Court could deny confirmation of the Plan. Issues or disputes relating to classification and/or treatment could result in a delay in the confirmation and consummation of the Plan and could increase the risk that the Plan will not be consummated.

## 5.5    Failure to Consummate the Plan

The Plan provides for certain conditions that must be satisfied (or waived) prior to the Confirmation Date and for certain other conditions that must be satisfied (or waived) prior to the Effective Date. As of the date of the Plan, there can be no assurance that any or all of the conditions in the Plan will be satisfied (or waived). Accordingly, there can be no assurance that the Plan will be confirmed by the Bankruptcy Court. Further, if the Plan is confirmed, there can be no assurance that the Plan will be consummated.

## 5.6    Plan Releases May Not Be Approved

There can be no assurance that the releases, as provided in Article XIV of the Plan, will be granted. Failure of the Bankruptcy Court to grant such relief may result in a plan of liquidation that differs from the Plan or the Plan not being confirmed.

## 5.7    Reductions to Estimated Creditor Recoveries

The Allowed amount of Claims in any Class could be greater than projected, which, in turn, could cause the amount of distributions to creditors in such Class to be reduced substantially. The amount of cash realized from the liquidation of the Debtors' remaining assets could be less than anticipated, which could cause the amount of distributions to creditors to be reduced substantially.

## 5.8    Certain Tax Considerations

There are a number of material income tax considerations, risks, and uncertainties associated with the plan of liquidation of the Debtors described in the combined Disclosure Statement and Plan.

**THE U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN ARE COMPLEX. NOTHING HEREIN SHALL CONSTITUTE TAX ADVICE. THE TAX CONSEQUENCES ARE IN MANY CASES UNCERTAIN AND MAY VARY DEPENDING ON A HOLDER'S PARTICULAR CIRCUMSTANCES. ACCORDINGLY, HOLDERS ARE URGED TO CONSULT THEIR TAX ADVISORS ABOUT THE**

UNITED STATES FEDERAL, STATE AND LOCAL, AND APPLICABLE FOREIGN INCOME AND OTHER TAX CONSEQUENCES OF THE PLAN.

## ARTICLE VI
## TREATMENT OF UNCLASSIFIED CLAIMS

**6.1    Administrative Claims**.  Except as otherwise set forth in this Article VI, or as soon as practicable after the Final Administrative Claim Bar Date, each Holder of an Allowed Administrative Claim shall receive in full and final satisfaction, settlement, and release of and in exchange for such Allowed Administrative Claim: (i) Cash equal to the amount of such Allowed Administrative Claim; or (ii) such other treatment as to which the Debtors or the Plan Administrator, as applicable, and the Holder of such Allowed Administrative Claim shall have agreed upon in writing.

*(a)*    **Final Administrative Claim Bar Date**.  Holders of Administrative Claims, other than Professional Fee Claims, accruing after the date of entry of the Solicitation Procedures Order through and including the Effective Date ("**Final Administrative Claims**") shall file with the Claims Agent and serve on the Plan Administrator requests for payment, in writing, together with supporting documents, substantially complying with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules, so as to actually be received on or before the Final Administrative Claim Bar Date.  The Effective Date Notice shall set forth the Final Administrative Claim Bar Date and shall constitute notice of such Bar Date.  Absent further Court order, any Final Administrative Claim not filed by the Final Administrative Claim Bar Date shall be deemed waived and the Holder of such Final Administrative Claim shall be forever barred from receiving payment on account thereof.

*(b)*    **Objections by the Plan Administrator**.  Objections to requests for payment of Administrative Claims, other than requests for payment of Professional Fee Claims, must be Filed and served on the requesting party by the Claims Objection Deadline.

*(c)*    **Professional Fee Claims**.    All applications for allowance and payment of Professional Fee Claims shall be Filed on or before the Professional Fee Claims Bar Date.  If an application for a Professional Fee Claim is not Filed by the Professional Fee Claims Bar Date, such Professional Fee Claim shall be deemed waived and the Holder of such Claim shall be forever barred from receiving payment on account thereof.  The Effective Date Notice shall set forth the Professional Fee Claims Bar Date and shall constitute notice of such Professional Fee Claim Bar Date.    Objections to any Professional Fee Claims must be Filed and served on the Plan Administrator and the requesting party by no later than fourteen (14) days after service of the applicable final application for allowance and payment of Professional Fee Claims.  Except as otherwise provided herein, Allowed Professional Fee Claims shall be paid in full, in Cash, in such amounts as are Allowed by the Bankruptcy Court upon the earlier of (i) the Effective Date or (ii) the date upon which an order relating to any such Allowed Professional Fee Claim is entered, and in each case, as soon as reasonably practicable.

*(d)*      **U.S. Trustee Fees**.  All fees payable on or before the Effective Date, pursuant to United States Code title 28 section 1930, shall be paid by the Debtors on or before the Effective Date.  Notwithstanding anything to the contrary in the Plan, the U.S. Trustee shall not be required to file a request for Administrative Claims.

**6.3      Priority Tax Claims**.  Within the time period provided in Article X of the Plan, each Holder of an Allowed Priority Tax Claim shall receive in full and final satisfaction, settlement, and release of and in exchange for such Allowed Priority Tax Claim: (i) Cash equal to the amount of such Allowed Priority Tax Claim; or (ii) such other treatment as to which the Debtors or the Plan Administrator, as applicable, and the Holder of such Allowed Priority Tax Claim shall have agreed upon in writing.

### ARTICLE  VII
### TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

~~For purposes of administrative convenience and efficiency, the Plan is a joint plan for each of the Debtors and presents together Classes of Claims against, and Interests in, the Debtors.  The Plan does not provide for the substantive consolidation of the Debtors.  Rather, this Plan constitutes a separate Plan proposed by each Debtor, and the classifications set forth in Classes 1, 2, 3, 4, and 5 of the Plan apply to each Debtor.  Each Class constitutes a separate Sub-Class of Claims against, and Interests in. each of the Debtors, as applicable, and each such Sub-Class of a Class of Claims entitled to vote on the Plan shall vote as a single separate Class for, and the confirmation requirements of section 1129 of the Bankruptcy Code must be satisfied separately with respect to, each of the Debtors.~~

All Claims and Interests are classified in the Classes set forth below in accordance with ~~section~~sections 1122 and 1123(a)(1) of the Bankruptcy Code.  A Claim or an Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes.   A Claim or an Interest is classified in a particular Class for the purpose of receiving distributions under the Plan only to the extent that such Claim or Interest is an Allowed Claim or Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date

Unless the Holder of an Allowed Claim and the Debtors or the Plan Administrator, as applicable, agree to ~~a~~ different treatment, each Holder of an Allowed Claim shall receive the following Distributions in accordance with Article X of the Plan:

**7.1      Class 1:  Priority Non-Tax Claims**.  Each Holder of an Allowed Priority Non-Tax Claim shall receive in full and final satisfaction, settlement, and release of and in exchange for such Allowed Class 1 Claim: (A) Cash equal to the amount of such Allowed Priority Non-Tax Claim; or (B) such other treatment which the Debtors or the Plan Administrator, as applicable, and the Holder of such Allowed Priority Non-Tax Claim have agreed upon in writing.

**7.2      Class 2:  Secured Claims**.  Each Holder of an Allowed Secured Claim shall receive in full and final satisfaction, settlement, and release of and in exchange for such Allowed Class 2

Claim: (A) return of the collateral securing such Allowed Secured Claim; or (B) Cash equal to the amount of such Allowed Secured Claim; or (C) such other treatment which the Debtors or the Plan Administrator, as applicable, and the Holder of such Allowed Secured Claim have agreed upon in writing.

**7.3      Class 3:  General Unsecured Claims Against All Debtors**[8].  Unless the Holders agrees to a different treatment, and pursuant to the Global Settlement, each Holder of a General Unsecured Claim shall receive such Holder's pro rata share of the Distribution Proceeds.

**7.4      Class 4:  Intercompany Claims**.  Holders of Intercompany Claims shall receive no Distribution on account of their Intercompany Claims.

**7.5      Class 5: Interests**.  On the Effective Date, all Interests shall be extinguished as of the Effective Date, and owners thereof shall receive no Distribution on account of such Interests.

**7.6      Reservation of Rights Regarding Claims and Interests**.  Except as otherwise explicitly provided in the Plan, nothing shall affect the Debtors' rights and defenses, both legal and equitable, with respect to any Claims or Interests, including, but not limited to, all rights with respect to legal and equitable defenses to alleged rights of setoff or recoupment.


# ARTICLE  VIII
## ACCEPTANCE OR REJECTION OF THE PLAN

**8.1      Class Entitled to Vote**.  Because Claims in ~~all Sub-Classes in~~ Class 3 are Impaired and Holders thereof will receive or retain property or an interest in property under the Plan, only a Holder of Claims in Class 3 shall be entitled to vote to accept or reject the Plan.

**8.2      Acceptance by Impaired Classes of Claims or Interests**.   In accordance with Bankruptcy Code section 1126(c), and except as provided in Bankruptcy Code section 1126(e), an Impaired Class of Claims shall have accepted the Plan if the Plan is accepted by the Holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims in such Class that have timely and properly voted to accept or reject the Plan. In accordance with Bankruptcy Code section 1126(d) and except as provided in Bankruptcy Code section 1126(e), an Impaired Class of Interests shall have accepted the Plan if such Plan is accepted by Holders of at least two-thirds (2/3) in amount of the Allowed Interests in such Class that have timely and properly voted to accept or reject the Plan.

**8.3      Presumed Acceptance by Unimpaired Classes**.  Because Claims in Classes 1 and 2 are Unimpaired pursuant to Bankruptcy Code section 1126(f), Holders of Claims in Classes 1 and 2 are deemed to have accepted the Plan and, therefore, such Holders of Claims are not entitled to vote to accept or reject the Plan.

---

[8]     ~~Class 3 includes Sub-Classes 3A, 3B, 3C, 3D, 3E, and 3F.~~

**8.4    Presumed Rejections by Impaired Classes**.  Because Holders of Claims or Interests in Classes 4 and 5 are not entitled to receive or retain any property under the Plan, pursuant to Bankruptcy Code section 1126(g), such Holders of Claims or Interests are presumed to have rejected the Plan and are not entitled to vote to accept or reject the Plan.

**8.5    Confirmation Pursuant to Bankruptcy Code Section 1129(b)**.  To the extent that any Impaired Class rejects the Plan or is deemed to have rejected the Plan, the Debtors reserve the right to request confirmation of the Plan, as it may be modified from time to time, under Bankruptcy Code section 1129(b).  The Debtors reserve the right to alter, amend, modify, revoke, or withdraw the Plan, the documents submitted in support thereof or any schedule or exhibit, including to amend or modify it to satisfy the requirements of Bankruptcy Code section 1129(b), if necessary.

**8.6    Controversy Concerning Impairment**.  If a controversy arises as to whether any Claim or Interest is Impaired under the Plan, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

**8.7    Elimination of Vacant Classes**.  Any Class of Claims or Interests that does not contain, as of the date of the commencement of the Confirmation Hearing, a Holder of an Allowed Claim or Interest, or a Holder of a Claim temporarily allowed under Bankruptcy Rule 3018, shall be deemed deleted from the Plan for all purposes, including for purposes of determining acceptance of the Plan by such Class under Bankruptcy Code section 1129(a)(8).

**ARTICLE  IX
IMPLEMENTATION OF THE PLAN**

**9.1    Implementation of the Plan**.  The Plan will be implemented by, among other things, (i) the appointment of the Plan Administrator as the sole officer and director of the Post-Effective Date Debtors as of the Effective Date, and the representative of the Estates in accordance with section 1123 of the Bankruptcy Code, and (ii) the making of Distributions to Holders of Allowed Claims from the Plan Administration Assets. Pursuant to 8 Del. C. § 303, the Plan Administrator shall be authorized to wind-up and dissolve the Debtors once the Plan Administration Assets have been monetized and Distributions have been made to Holders of Allowed Claims.

**9.2    Substantive Consolidation**.  The Debtors analyzed, *inter alia*, the Debtors' books and records, intercompany accounting practices, corporate structure, shared staff and services, financial reporting, and cash management practices.  Because the Debtors' businesses were operated as one consolidated enterprise, the Plan contemplates entry of an Order substantively consolidating the Estates and the Chapter 11 Cases as set forth below.  Absent the substantive consolidation proposed under the Plan, the process of winding down the Estates and administering Distributions would be more time consuming and costly.  As such, given the limited amount of funds available for distribution and the expense involved in winding down the Estates and administering Distributions, recoveries will be maximized by consolidating the Assets and liabilities of the Debtors as provided herein.

> *(a)*    Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Code sections 105(a) and 1123(a)(5)(C), effective as of the

Effective Date, of the substantive consolidation of the Estates of the Debtors for the purposes of confirming and consummating the Plan, including, but not limited to, voting, Confirmation and Distributions.

*(b)*     On and after the Effective Date, (i) all Assets and liabilities of the Debtors shall be treated as though they were pooled, (ii) each Claim filed or to be filed against any Debtor, as to which two or more Debtors are jointly liable as a legal or contractual matter, shall be deemed filed as a single Claim against, and a single obligation of, the Debtors, (iii) all Claims held by a Debtor against any other Debtor shall be cancelled or extinguished, (iv) no Distributions shall be made under the Plan on account of any Claim held by a Debtor against any other Debtor, (v) all Interests shall be cancelled, (vi) no Distributions shall be made under the Plan on account of any Interest held by a Debtor in any other Debtor, (vii) all guarantees of any Debtors of the obligations of any other Debtor shall be eliminated so that any Claim against any Debtor and any Claim based upon a guarantee thereof executed by any other Debtor shall be treated as one Claim against the substantively-consolidated Debtors, and (viii) any joint or several liability of any of the Debtors shall be one obligation of the substantively consolidated Debtors and any Claims based upon such joint or several liability shall be treated as one Claim against the substantively-consolidated Debtors.

*(c)*     The substantive consolidation of the Debtors under the Plan shall not (other than for purposes related to funding Distributions under the Plan) affect (i) the legal and organizational structure of the Debtors, (ii) executory contracts or unexpired leases that were entered into during the Chapter 11 Cases or that have been or will be assumed or rejected, (iii) any agreements entered into by the Liquidating Trust on or after the Effective Date, (iv) the Debtors' or the Liquidating Trust's ability to subordinate or otherwise challenge Claims on an entity-by-entity basis, (v) any Retained Causes of Action or defenses thereto, which in each case shall survive entry of the Confirmation Order as if there had been no substantive consolidation of the Estates of the Debtors, and (vi) distributions to the Debtors or the Liquidating Trust from any insurance policies or the proceeds thereof.  Notwithstanding the substantive consolidation provided for herein, each and every Debtor shall remain responsible for the payment of U.S. Trustee Fees until its particular case is closed (pursuant to this Plan or otherwise), dismissed or converted.

*(d)*     This combined Disclosure Statement and Plan shall serve as, and shall be deemed to be, a motion for entry of an Order of the Bankruptcy Court approving the substantive consolidation of the Estates and Chapter 11 Cases.  If no objection to the Plan is timely filed and served by any Holder of an Impaired Claim affected by the Plan as provided herein on or before the Voting Deadline or such other date as may be established by the Bankruptcy Court, the Plan, including the substantive consolidation of the Estates and Chapter 11 Cases, may be approved by the Bankruptcy Court as part of the Confirmation Order.  If any such objections are timely filed and served, the Plan and the objections thereto shall be considered by the Bankruptcy Court at the Confirmation Hearing.

*(e)* Nothing in this Section 9.2 shall augment or increase the property that constitutes collateral or any offset or similar right securing any Claim or otherwise increase the secured portion of any Claim under Bankruptcy Code section 506(a).

*(f)* If the Bankruptcy Court determines that the deemed substantive consolidation of any given Debtors is not appropriate, then, with the consent of the Committee and the DIP Lenders, the Debtors may request that the Bankruptcy Court otherwise confirm the Plan and approve the treatment of and Distributions to the different Classes under the Plan on an adjusted, Debtor-by-Debtor basis.  Furthermore, the Debtors reserve their rights to, with the consent of the Committee and the DIP Lenders: (i) seek confirmation of the Plan without implementing deemed consolidation of any given Debtor, and, in the Debtors' reasonable discretion, request that the Bankruptcy Court approve the treatment of and Distributions to any given Class under the Plan on an adjusted, Debtor-by-Debtor basis; and (ii) seek deemed consolidation of all Debtors whether or not all Impaired Classes entitled to vote on the Plan vote to accept the Plan.

**9.3** ~~9.2~~ **Source of Consideration**. All consideration necessary to make all monetary payments in accordance with the Plan shall be obtained from the remaining Cash, and cash equivalents of the Debtors and their Estates, or their subsidiaries, and the proceeds of Plan Administration Assets to be monetized through the Plan Administrator.

**9.4** ~~9.3~~ **Vesting of Assets**. Except as otherwise provided herein, on the Effective Date, all property of the Estate, including any net operating losses or similar tax attributes, shall vest in the Estates of the Post-Effective Date Debtors, free and clear of all Claims, liens, charges, other encumbrances and Interests.  On and after the Effective Date, except as otherwise provided herein, the Plan Administrator may use, acquire, or dispose of Assets and compromise or settle any Claims, subject to the Plan Administration Agreement, without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

**9.5** ~~9.4~~ **Directors and Officers**. On the Effective Date, each of the Debtors' directors, officers, members, and managers shall be terminated automatically without the need for any corporate action or approval and without the need for any corporate filings, and shall have no continuing obligations to the Debtors following the occurrence of the Effective Date. On the Effective Date, the Plan Administrator shall be automatically appointed as the sole officer and director of each of the Debtors.

**9.6** ~~9.5~~ **Wind-Up and Dissolution of the Debtors**. On the Effective Date, and in accordance with the Plan Administration Agreement: (i) all of the Debtor Affiliates shall be merged into Debtor Takeoff Technologies, Inc. and the Plan Administrator may dissolve such Debtor Affiliates and complete the winding up of such Debtor Affiliates without the necessity for any other or further actions to be taken by or on behalf of such dissolving Debtor or its shareholder or any payments to be made in connection therewith, other than the filing of a certificate of dissolution with the appropriate governmental authorities; and (ii) the Chapter 11 Cases of the Debtor Affiliates may be closed by the Plan Administrator in accordance with Section 16.10 of this Plan. ~~In the reasonable discretion of the Debtors, after~~After the Effective Date, the Plan Administrator may engage in any other transaction in furtherance of this Plan. ~~Any such transactions may be effective as of the Effective Date pursuant to the Confirmation Order without any further action by the stockholders, members, general or limited partners, or directors of any of the Debtors.~~

**9.7** ~~9.6~~ **Plan Administrator and Plan Administration Agreement**. From and after the Effective Date, except as expressly set forth in the Plan or the Confirmation Order, pursuant to and in accordance with the terms and provisions of the Plan and the Plan Administration Agreement, the Plan Administrator shall be <u>deemed the Estates' representative with respect to the Plan Administration Assets in accordance with section 1123 of the Bankruptcy Code, and shall be</u> empowered and directed to: (i) take all steps and execute all instruments and documents necessary to make Distributions to Holders of Allowed Claims ~~and Interests~~, and to perform the duties assigned to the Plan Administrator under the Plan or the Plan Administration Agreement; (ii) comply with <u>and implement</u> the Plan and the obligations under the Plan; (iii) employ, retain or replace professionals to represent the Plan Administrator with respect to the Plan Administrator's responsibilities; (iv) object to Claims and Interests as provided in the Plan and prosecute such objections; (v) compromise and settle any issue or dispute regarding the amount, validity, priority, treatment or allowance of any Claims or Interests; (vi) exercise such other powers as may be vested in the Plan Administrator pursuant to the Plan, the Plan Administration Agreement or any other Order of the Bankruptcy Court, including the Confirmation Order, or otherwise act on behalf of and for the Debtors and the Plan Administrator from and after the Effective Date; (vii) file applicable tax returns for the Debtors; (viii) monetize any of the Plan Administration Assets; and (ix) prosecute, compromise, resolve or withdraw any of the Retained Causes of Action. In the event any provision in the Plan Administration Agreement conflicts with the Plan, the terms of the Plan shall prevail.

The Plan Administrator may, without the need for further Court approval, retain or employ agents, financial advisors, attorneys, <u>accountants,</u> consultants, independent contractors, representatives and other professionals to advise the Plan Administrator in the performance of the Plan Administrator's duties, which may include counsel ~~for the Debtors, and~~or other advisors for the Debtors <u>or the Committee</u>. The Plan Administrator may employ, without further order of

the Bankruptcy Court, professionals (including those previously retained by the Debtors or the Committee) to assist in carrying out the Plan Administrator's duties hereunder and may compensate and reimburse the reasonable expenses of these professionals without further Order of the Bankruptcy Court from the Plan Administration Assets in accordance with the Plan and the Plan Administration Agreement.

The Plan Administrator shall be authorized to obtain and pay for, out of the funds of the Estate, all reasonably necessary insurance coverage for the Plan Administrator, the Plan Administrator Professionals, and the Debtors, their officers and directors, including, but not limited to, coverage with respect to: (i) any property that is or may in the future become the property of the Debtors or their Estates; and (ii) the Plan Administrator Expenses, the latter of which insurance coverage may remain in effect for a reasonable period of time after the termination of the Plan Administration Agreement, as determined by the Plan Administrator.

**9.8** ~~9.7~~ **Distributions by Plan Administrator**. The Plan Administrator, on behalf of the Post-Effective Date Debtors, shall make continuing efforts to monetize all Plan Administration Assets in accordance with the Plan and the Plan Administration Agreement; provided that, the timing of all Distributions shall be made by the Plan Administrator to Holders of Allowed Claims ~~and Interests~~ at its reasonable discretion; provided, further, that Distributions to Holders of Allowed Claims ~~and Interests~~ shall be consistent with the ~~Wind Down Budget~~Plan and made as soon as practicable after applicable Bar Dates have passed.

**9.9** ~~9.8~~ **Cash Investments**. The Plan ~~Administrator'~~Administrator's Cash shall be invested in ~~demand and time deposits in banks or other savings institutions, or in other temporary, liquid investments, such as Treasury bills,~~a manner consistent with the ~~liquidity needs of the Plan Administrator as determined by the Plan Administrator, in accordance with Bankruptcy Code section 345~~objectives of Section 345(a) of the Bankruptcy Code and in the Plan Administrator's reasonable and prudent exercise of discretion, unless the Bankruptcy Court otherwise requires. The Plan Administrator shall have no obligation or liability to Holders of Allowed Claims, or any other party, in connection with such investments in the event of any unforeseeable insolvency of any financial institution where such funds are held.

**9.10** ~~9.9~~ **Limitation of Liability; Indemnification**. The Plan Administrator and all of its respective designees, employees, agents, representatives or professionals shall not be liable for the act or omission of any other member, ~~designees~~designee, agent or representative of the Plan Administrator, nor shall they be liable for any act or omission taken or omitted to be taken in their respective capacities, other than acts or omission resulting from willful misconduct, gross negligence, or actual fraud. The Plan Administrator shall be entitled to enjoy all of the rights, powers, immunities and privileges applicable to a chapter 7 trustee. The Plan Administrator may, in connection with the performance of its functions, consult with attorneys, accountants, financial advisors and agents, which consultation may act as a defense for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such persons. Notwithstanding such authority, the Plan Administrator shall not be under any obligation to consult with attorneys, accountants, financial advisors or agents, and ~~their~~its determination not to do so shall not result in the imposition of liability, unless such determination is based on willful misconduct, gross negligence, or actual fraud. The ~~Plan Administrator~~Post-Effective Date Debtors shall indemnify and hold harmless the Plan Administrator and its designees and professionals, and all duly designated agents and representatives thereof (in their capacity as such), from and against and in respect of all liabilities, losses, damages, claims, costs and expenses, including, but not limited to reasonable attorneys' fees and costs arising out of or due to such actions or omissions, or consequences of their actions or omissions with respect or related to the performance of their duties or the implementation or administration of the Plan; provided, however, that no such indemnification will be made to such persons for such actions or omissions as a result of willful misconduct, gross negligence or fraud.

**9.11**    **9.10** **Compensation and Duties of Plan Administrator**.  The salient terms of the Plan Administrator's employment, including the Plan Administrator's duties and compensation, shall be set forth in the Plan Administration Agreement.  The Plan Administrator shall be entitled to reasonable compensation in an amount consistent with that of similar functionaries in similar types of bankruptcy cases.  The Plan Administrator shall also be reimbursed for all documented, actual, reasonable, and necessary out-of-pocket expenses incurred in the performance of his or her duties under the Plan Administration Agreement, subject to the Wind-Down Budget.

**9.12**    **9.11** **Certain Tax Considerations.**

(a)    *General*.  **HOLDERS CONCERNED WITH HOW THE PLAN MAY AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR OWN ACCOUNTANTS, ATTORNEYS, AND ADVISORS.  THE BELOW TAX SUMMARY HAS BEEN PROVIDED FOR GENERAL INFORMATIONAL PURPOSES ONLY.  THE U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN ARE COMPLEX. NOTHING HEREIN SHALL CONSTITUTE TAX ADVICE.  THE TAX CONSEQUENCES ARE IN MANY CASES UNCERTAIN AND MAY VARY DEPENDING ON A HOLDER'S PARTICULAR CIRCUMSTANCES.**

The following discussion summarizes certain United States federal income tax consequences of the Plan to the Debtors and to certain holders of Claims.  This discussion is based on the IRC, the Treasury Regulations promulgated thereunder, judicial decisions, and published administrative rulings and pronouncements of the IRS, all as in effect on the date hereof.  Legislative, judicial, or administrative changes in law or its interpretation, as well as other events occurring after the date of this Disclosure Statement, and which may be retroactive, could materially alter the tax treatment described below.  Furthermore, this discussion is not binding on the IRS or any other tax authority.  There is no assurance that a tax authority will not take, or that a court will not sustain, a position with respect to the tax consequences of the Plan that differs from the tax consequences described below.  No ruling has been or will be sought from the IRS, no opinion of counsel has been or will be obtained, and no representations are made regarding any tax aspect of the Plan.

The following discussion does not address all aspects of U.S. federal income taxation that may be relevant to a particular Holder in light of such Holder's facts and circumstances, or to certain types of Holders subject to special treatment under the IRC (for example, governmental entities and entities exercising governmental authority, non-U.S. taxpayers, banks and certain other financial institutions, broker-dealers, insurance companies, tax-exempt organizations, real estate investment trusts, regulated investment companies, persons holding a Claim as part of a hedge, straddle, constructive sale, conversion transaction, or other integrated transaction, Holders that are or hold their Claims through a partnership or other pass-through entity, and Persons that have a functional currency other than the U.S. dollar).  This summary does not address state, local, or non-United States tax consequences of the Plan, nor does this summary address federal taxes other than income taxes.  Furthermore, this discussion generally does not address U.S. federal income tax consequences to Holders that are unimpaired under the Plan or that are not entitled to receive or retain any property under the Plan or to Persons who are deemed to have rejected the Plan.

(b)    *Federal Income Tax Consequences to the Debtors.*

(i)    *Sale of Assets.*    The Sale will constitute taxable dispositions of the Debtors' assets.    The Debtors will recognize gain or loss equal to the difference between the amount received for those assets in the Sale and the Debtors' adjusted tax basis in those assets.    The Debtors expect to have tax losses generated from other activities in the current year that may be used to offset gain from the Sale.    The Debtors also expect to have net operating losses ("**NOLs**") from prior taxable years available that may be carried forward to offset a portion of the gain from the Sale.    For NOLs arising prior to 2018, such NOLs can generally be carried forward for 20 years to offset taxable income.    As a result of the enactment Tax Cuts and Jobs Act of 2017, NOLs arising in 2018 and thereafter can be carried forward indefinitely, but can only offset 80% of taxable income for a taxable year.    The Debtors have not done an analysis of the amount of pre-2018 NOLs and NOLs arising in 2018 and thereafter to determine if all taxable income arising from the Debtors' assets sales can be offset with prior NOLs.    To the extent current year losses and NOLs and other tax deductions are not available to offset Debtors' gain from the Sale, Debtors will owe tax on such gains.    Any such tax will be an Administrative Claim.

(ii) Cancellation of Indebtedness and Reduction of Tax Attributes.    For U.S. federal income tax purposes, gross income generally includes income from cancellation of indebtedness ("**COD**").    In general, the Debtors will have COD income equal to the excess of the amount of debt discharged pursuant to the Plan over the adjusted issue price of the debt, less the amount of cash and the fair market value of property distributed to holders of the debt.    Various statutory or judicial exceptions limit the incurrence of COD income (such as where payment of the cancelled debt would have given rise to a tax deduction).    COD income also includes interest accrued on obligations of the Debtors but unpaid at the time of discharge.    An exception to the recognition of COD income applies to a debtor in a chapter 11 bankruptcy proceeding.    Bankrupt debtors generally do not include COD in taxable income, but must instead reduce certain tax attributes (such as NOLs, capital losses, certain credits, and the excess of the tax basis of the debtor's property over the amount of liabilities outstanding after discharge) by the amount of COD income that was excluded under the bankruptcy exception.    Tax benefits are reduced after the tax is determined for the year of discharge.    Existing NOLs will therefore be available to offset gains on asset sales in the year of the discharge regardless of the amount by which NOLs are reduced due to COD income.

(c)    *Exemption from Certain Transfer Taxes.*

To the maximum extent provided by section 1146(a) of the Bankruptcy Code, any post-Confirmation sale by any Debtor, or any transfer from any Entity pursuant to, in contemplation of, or in connection with this Plan or pursuant to (1) the issuance, distribution, transfer, or exchange of any debt, equity security, or other interest in the Debtors or (2) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance

of, or in connection with, this Plan, including any deeds, bills of sale, assignments, or other instruments of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to this Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, in each case to the extent permitted by applicable bankruptcy law, and the appropriate state or local government officials or agents shall forego collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

(d)      *Federal Income Tax Consequences to Holders.*

(i)      *Characterization.* The tax treatment of Holders, and the character, amount, and timing of income, gain, or loss recognized as a consequence of the Plan and any Distributions pursuant to the Plan may vary, depending upon, among other things: (A) whether the Claim (or a portion of the Claim) is for principal or interest; (B) the type of consideration the Holder receives for the Claim, (C) whether the Holder receives Distributions under the Plan in more than one taxable year; (D) the manner in which the Holder acquired the Claim; (E) the length of time that the Claim has been held; (vi) whether the Claim was acquired at a discount; (F) whether the Holder of the Claim has taken a bad debt deduction with respect to part or all of the Claim; (G) whether the Holder of the Claim has previously included in income accrued but unpaid interest on the Claim; (H) the Holder's method of tax accounting; (I) whether the Claim is an installment obligation for U.S. federal income tax purposes; (J) whether the Claim, and any instrument received in exchange for the Claim, is a "security" for U.S. federal income tax purposes; and (K) whether and the manner in which the "market discount" rules of the IRC apply to the holder of the Claim.

(ii)      *Gain and Loss Recognition.* Holders that receive cash and property other than stock and securities for their Claim will recognize gain or loss for U.S. federal income tax purposes equal to the difference between the "amount realized" by the Holder and the Holder's tax basis in the Claim.  The "amount realized" is the sum of the amount of cash and the fair market value of any other property received under the Plan in respect of the Claim (other than amounts received in respect of a Claim for accrued unpaid interest).  The Holder's tax basis in the Claim (other than a Claim for accrued unpaid interest) is generally the Holder's cost, though tax basis could be more or less than cost depending on the specific facts of the Holder.  Any gain or loss realized may be capital gain or loss or ordinary gain or loss, depending on the circumstances of the Holder.

(iii)      *Interest Issues.* Holders that previously included in income accrued but unpaid interest on a Claim may be entitled to a deductible loss to the extent such interest is not satisfied under the Plan.  Conversely, a Holder has ordinary income to the extent of the amount of cash or the fair market value of property received in respect of a Claim for (or the portion of a Claim treated as allocable to) accrued unpaid interest that was not previously included in income by the Holder.  The Plan treats all amounts payable to a Holder as principal until the principal amount of the Claim has been paid in full.  The Debtors' tax returns will be filed in a manner consistent with this allocation, but it is uncertain whether this allocation will be respected by the

IRS.  The IRS may take the position that payments should be allocated first to interest or should be pro-rated between principal and interest.  If the IRS prevails in this assertion, Holders may be required to recognize ordinary interest income even though they have an overall loss (and possibly a capital loss, the deductibility of which may be limited) with respect to such Holder's Claims.  Each Holder is urged to consult such Holder's own tax advisor regarding the amount of such Holder's Claim allocable to accrued unpaid interest and the character of any loss with respect to accrued but unpaid interest that the holder previously included in income.

(iv)    *Bad Debt and Worthless Security Deductions*.  A Holder who receives, in respect of such Holder's Claim, an amount that is less than such Holder's tax basis in the Claim may be entitled to a bad debt or worthless securities deduction.  The rules governing the character, timing, and amount of these deductions depend upon the facts and circumstances of the Holder, the obligor, and the instrument with respect to which the deduction is claimed, including whether (i) the Holder is a corporation or (ii) the Claim constituted (a) a debt created or acquired (as the case may be) in connection with the Holder's trade or business or (b) a debt, the loss from worthlessness of which is incurred in the holder's trade or business.  A Holder that has previously recognized a loss or deduction in respect of such Holder's Claim may be required to include in income amounts received under the Plan that exceed the Holder's adjusted basis in its Claim.

(iv)    *Installment Obligations*.  A Holder ~~if~~of a Claim that is an installment obligation for U.S. federal income tax purposes may be required to recognize any gain remaining with respect to such obligation if, pursuant to the Plan, the obligation is considered to be satisfied at other than its face value, distributed, transmitted, sold, or otherwise disposed of within the meaning of Section 453B of the IRC.

(v)    *Market Discount*.  A Holder of a Claim that acquires a Claim at a market discount generally is required to treat any gain realized on the disposition of the Claim as ordinary income to the extent of the market discount that accrued during the period the Claim was held by the Holder and that was not previously included in income by the Holder.

(vi)    *Withholding*.  Amounts paid to Holders are subject to generally applicable withholding, information, and backup withholding rules.  The Plan authorizes the Debtors and the Plan Administrator, as applicable, to withhold and report amounts required by law to be withheld and reported.  Amounts properly withheld from Distributions to a Holder and paid over to the applicable taxing authority for the account of such Holder will be treated as amounts distributed to such Holder.  Holders are required to provide the Debtors and the Plan Administrator, as applicable, with the information necessary to effect information reporting and withholding as required by law.  Notwithstanding any other provision of the Plan, holders of Claims that receive a Distribution pursuant to the Plan are responsible for the payment and satisfaction of all tax obligations, including income, withholding, and other tax obligations imposed with respect to the Distribution, and no Distribution shall be made until a Holder has made arrangements satisfactory to the Debtors or the Plan Administrator, as applicable, for the payment and satisfaction of such obligations.

(vii)    *Backup Withholding*.  Holders may be subject to backup withholding on payments pursuant to the Plan unless the Holder (A) is not a corporation and is not otherwise

exempt from backup withholding and, when required, demonstrates that or (B) provides a correct taxpayer identification and certifies under penalty of perjury that the taxpayer identification number is correct and that the Holder is not subject to backup withholding because of previous failure to report dividend and interest income. Amounts withheld due to backup withholding will be credited against the Holder's federal income tax liability and excess withholding may be refunded if a timely claim for refund (generally, a U.S. federal income tax return) is filed with the IRS.

(viii) *Certain Disclosure Requirements*. Treasury regulations require tax return disclosure of certain types of transactions that result in the taxpayer claiming a loss in excess of specified thresholds. Holders are urged to consult their own tax advisors regarding these regulations and whether the transactions contemplated by the Plan would be subject to these regulations and would require such disclosure.

## ARTICLE X
## PROVISIONS GOVERNING DISTRIBUTIONS

**10.1    Distributions for Allowed Claims**

Except as otherwise provided herein or as ordered by the Bankruptcy Court, all Distributions to Holders of Allowed Claims as of the applicable distribution date shall be made on or as soon as practicable after the applicable distribution date. Distributions on account of Claims that first become Allowed Claims after the applicable distribution date shall be made pursuant to the terms of this Plan and on the day selected by the Plan Administrator.

The Plan Administrator may accelerate any Distribution date with respect to Distributions if the facts and circumstances so warrant and to the extent not inconsistent with the Plan.

Distributions made as soon as reasonably practicable after the Effective Date or such other date set forth herein shall be deemed to have been made on such date**.**

**10.2    Interest of Claims**. Expect to the extent expressly provided in Bankruptcy Code section 506(b), the Plan, or the Confirmation Order, post-petition interest shall not accrue or be paid on Claims, and no Holder of an Allowed Claim shall be entitled to interest accruing on any Claim from and after the Petition Date.

**10.3    Distributions by Plan Administrator as Disbursement Agent**. From and after the Effective Date, the Plan Administrator shall serve as the Disbursement Agent under the Plan with respect to Distributions to Holders of Allowed Claims (provided that the Plan Administrator may hire professionals or consultants to assist with making disbursements or to act as the Disbursement Agent). The Plan Administrator shall cause to be made all Distributions required to be made to such Holders of Allowed Claims pursuant to the Plan and the Plan Administration Agreement. The Plan Administrator shall not be required to give any bond or surety or other security for the performance of the Plan Administrator's duties as Disbursement Agent unless otherwise ordered by the Bankruptcy Court.

**10.4    Means of Cash Payment**. Cash payments under the Plan shall be made, at the option, and in the sole discretion, of the Plan Administrator, by wire, check, or such other method as the Plan Administrator deems appropriate under the circumstances.  Cash payments to foreign creditors may be made, at the option, and in the sole discretion, of the Plan Administrator, in such funds and by such means as are necessary or customary in a particular foreign jurisdiction. Pursuant to Section 10.7 of the Plan, cash payments in the form of checks issued by the Plan Administrator shall be null and void if not cashed within ninety (90) days of the date of the issuance thereof and deemed undeliverable Distributions.  ~~Following the expiration of ninety (90) days after issuance of such null and void checks~~The Plan Administrator shall not reissue any check except upon directly receiving a request in writing from the Holder that was originally issued such check within one-hundred and eighty (180) days of the disbursement of the Distribution.  If the 180-day period lapses without the Holder requesting the check be reissued, in accordance with Section 10.13 of the Plan, the amounts in respect of these undeliverable Distributions shall be become unrestricted Assets redistributed to Holders of Allowed Claims after reserving as necessary for payment of Plan Administration Expenses.  ~~Such~~If the 180-day period lapses without the Holder requesting the check be reissued, such Holder shall be deemed to have forfeited its right to any reserved and future Distributions from the Plan Administrator, and any Claims held by such Holder shall be deemed cancelled, and the Claims of such Holder shall be forever barred.

For purposes of effectuating Distributions under the Plan, any Claim denominated in foreign currency shall be converted to U.S. Dollars pursuant to the applicable published exchange rate in effect on the Petition Date.

**10.5    Fractional Distributions**.  Notwithstanding anything in the Plan to the contrary, no payment of fractional cents shall be made pursuant to the Plan.  Whenever any payment of a fraction of a cent under the Plan would otherwise be required, the actual Distribution made shall reflect a rounding of such fraction to the nearest whole penny (up or down), with half cents or more being rounded up and fractions less than half of a cent being rounded down.

**10.6    De Minimis Distributions**.  Notwithstanding anything to the contrary contained in the Plan, the Plan Administrator shall not be required to distribute, and shall not distribute, Cash or other property to the Holder of any Allowed Claim if the amount of Cash or other property to be distributed on account of such Claim is less than $50.  Any Holder of an Allowed Claim on account of which the amount of Cash or other property to be distributed is less than $50 shall be forever barred from asserting such Claim against Plan Administration Assets.

**10.7    Delivery of Distributions; Unclaimed Distributions**.  All Distributions to Holders of Allowed Claims shall be made at the address of such Holder as set forth in the claims register maintained in the Chapter 11 Cases (subject to any transfer effectuated pursuant to Bankruptcy Rule 3001(e) or, after the Effective Date, a change of address notification provided by a Holder in a manner reasonably acceptable to the Plan Administrator) or, in the absence of a Filed proof of Claim, the Schedules.  The responsibility to provide the Plan Administrator a current address of a Holder of Claims shall always be the responsibility of such Holder and at no time shall the Plan Administrator have any obligation to determine a Holder's current address.  Nothing contained in the Plan shall require the Plan Administrator to attempt to locate any Holder of an Allowed Claim, though the Plan Administrator may, in its sole discretion, attempt to do so.

Amounts in respect of undeliverable Distributions made by the Plan Administrator shall be held in trust on behalf of the Holder of the Claim to which they are payable by the Plan Administrator until the earlier of the date that such undeliverable Distributions are claimed by such Holder and the date ~~ninety~~one hundred and eighty (~~90~~180) days after the date the undeliverable Distributions were made.  Following the expiration of ~~ninety~~one hundred and eighty (~~90~~180) days after the date the undeliverable Distributions were made, the amounts in respect of undeliverable Distributions shall be become unrestricted Assets redistributed to Holders of Allowed Claims after reserving as necessary for payment of Plan Administration Expenses.  Such Holder shall be deemed to have forfeited its right to any reserved and future Distributions from the Plan Administrator and such interests shall be deemed cancelled, and the Claims of such Holder shall be forever barred.

**10.8    Application of Distribution Record Date**.  At the close of business on the Distribution Record Date, the Debtors' claims registers shall be closed, and there shall be no further changes in the record holders of Claims or Interests.   Beneficial interests in the Plan ~~Administrator~~Administration Assets shall be non-transferable except upon death of the interest holder or by operation of law.  Except as provided herein, the Plan Administrator and the Plan Administrator's respective agents, successors, and assigns shall have no obligation to recognize any transfer of any Claim or Interest occurring after the Distribution Record Date and shall be entitled instead to recognize and deal for all purposes hereunder with only those record holders stated on the claims registers as of the close of business on the Distribution Record Date irrespective of the number of Distributions to be made under the Plan to such Entities or the date of such Distributions.

**10.9    Withholding, Payment and Reporting Requirements With Respect to Distributions**.  All Distributions under the Plan shall, to the extent applicable, comply with all tax withholding, payment, and reporting requirements imposed by any federal, state, provincial, local, or foreign taxing authority, and all Distributions shall be subject to any such withholding, payment, and reporting requirements.  The Plan Administrator shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding, payment, and reporting requirements.  The Plan Administrator may require, in the Plan Administrator's sole and absolute discretion and as a condition to the receipt of any Distribution, that the Holder of an Allowed Claim complete and return to the Plan Administrator the appropriate Form W-8 or Form W-9, as applicable, to each Holder.  Notwithstanding any other provision of the Plan, (a) each Holder of an Allowed Claim that is to receive a Distribution pursuant to the Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding, and other tax obligations, on account of such Distribution, and including, in the case of any Holder of a Disputed Claim that has become an Allowed Claim, any tax obligation that would be imposed upon the Plan Administrator in connection with such Distribution, and (b) no Distribution shall be made to or on behalf of such Holder pursuant to the Plan unless and until such Holder has made arrangements reasonably satisfactory to the Plan Administrator for the payment and satisfaction of such withholding tax obligations or such tax obligation that would be imposed upon the Plan Administrator in connection with such Distribution.

**10.10    Setoffs**.  Except as otherwise expressly provided for in this Plan, each Debtor and the Plan Administrator, pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code),

applicable non-bankruptcy law or as may be agreed to by the Holder of a Claim ~~or an Interest~~, may set off against any Allowed Claim ~~or Allowed Interest~~ and the Distributions to be made pursuant to this Plan on account of such Allowed Claim ~~or Allowed Interest~~ (before any Distribution is made on account of such Allowed Claim ~~or Allowed Interest~~), any Claims, rights and Causes of Action of any nature that such Debtor or the Plan Administrator, as applicable, may hold against the Holder of such Allowed Claim ~~or Allowed Interest~~, to the extent such Claims, rights or Causes of Action against such Holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to this Plan or otherwise); *provided*, *however*, that neither the failure to effect such a setoff nor the allowance of any Claim ~~or Interest~~ pursuant to this Plan shall constitute a waiver or release by such Debtor of any such Claims, rights and Causes of Action that such Debtor may possess against such Holder. In no event shall any Holder of Claims ~~or Interests~~ be entitled to set off any Claim ~~or Interest~~ against any claim, right or Cause of Action of the Debtor unless such Holder has Filed a motion with the Bankruptcy Court requesting the authority to perform such setoff on or before the Confirmation Date. For the avoidance of doubt, the Filing of a ~~Proof~~proof of Claim is sufficient to preserve a right of setoff hereunder.

**10.11   No Distribution in Excess of Allowed Amounts**.   Notwithstanding anything to the contrary herein, no Holder of an Allowed Claim shall receive in respect of such Claim any Distribution of a value as of the Effective Date in excess of the Allowed amount of such Claim.

**10.12   Allocation of Distributions**.   The Plan Administrator may, in the Plan Administrator's sole discretion, make Distributions jointly to any Holder of a Claim and any other Entity who has asserted, or whom the Plan Administrator has determined to have, an interest in such Claim; *provided, however*, that the Plan Administrator shall provide notice of such Distribution to any Holder of a Claim or other Entity that has asserted an interest in such Claim.

**10.13   Forfeiture of Distributions**.   If the Holder of a Claim fails to cash a check payable to it within the time period set forth in Section 10.4, fails to claim an undeliverable Distribution within the time limit set forth in Section 10.7, or fails to complete and return to the or Plan Administrator the appropriate Form W-8 or Form W-9 within one hundred twenty (120) days of a request for the completion and return to it of the appropriate form pursuant to Section 10.9, then such Holder shall be deemed to have forfeited its right to any reserved and future Distributions and the claims of such Holder shall be forever barred. The forfeited Distributions shall become Plan Administration Assets and shall be redistributed to Holders of Allowed Claims ~~and Interests~~ after reserving as necessary for payment of Plan Administrator Expenses and otherwise in compliance with the Plan and the Plan Administration Agreement. In the event the Plan Administrator ~~determine~~determines that any such amounts are too small in total to redistribute cost-effectively to Holders of Allowed Claims ~~and Interests~~, the Plan Administrator may instead donate them to a charitable organization(s) free of any restrictions thereon, notwithstanding any federal or state escheat laws to the contrary.

### ARTICLE XI
### PROVISIONS FOR CLAIMS OBJECTIONS AND ESTIMATION OF CLAIMS

**11.1   Claims Administration Responsibility**.   Except as otherwise specifically provided in the Plan ~~and~~or the Plan Administration Agreement, after the Effective Date, the Plan

Administrator shall have the sole authority (a) to file, withdraw, or litigate to judgment objections to Claims, (b) to settle, compromise, or Allow any Claim or Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court, (c) to amend the Schedules in accordance with the Bankruptcy Code, and (d) to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court. Any agreement entered into by the Plan Administrator (acting in accordance with the terms of the Plan Administration Agreement) with respect to the Allowance of any Claim shall be conclusive evidence and a final determination of the Allowance of such Claim.

**11.2    Claims Objections**. All objections to Claims shall be Filed by the Plan Administrator on or before the Claim Objection Deadline, which date may be extended by the Bankruptcy Court upon a motion filed by the Plan Administrator on or before the Claim Objection Deadline with notice only to those parties entitled to notice in the Chapter 11 Cases pursuant to Bankruptcy Rule 2002 as of the filing of such motion. If a timely objection has not been Filed to a proof of Claim or the Schedules have not been amended with respect to a Claim that was scheduled by the Debtors but was not set forth in the Schedules by the Debtors as contingent, unliquidated, and/or disputed, then the Claim to which the proof of Claim or the Claim set forth in the Schedules relates will be treated as an Allowed Claim.

**11.3    Estimation of Contingent or Unliquidated Claims**. The Plan Administrator may, at any time, request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to Bankruptcy Code section 502(c), regardless of whether the Debtors have previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. In the event the Bankruptcy Court so estimates any contingent or unliquidated Claim, that estimated amount shall constitute the Allowed amount of such Claim. All of the aforementioned Claims objection, estimation, and resolution procedures are cumulative and are not necessarily exclusive of one another.

**11.4    Expungement and Disallowance of Certain Claims**. Any Claim that has been paid, satisfied, duplicated, or otherwise dealt with or treated in the Plan (by virtue of substantive consolidation or otherwise), may be adjusted or expunged on the Claims Register at the direction of the Plan Administrator on or after 14 calendar days after the date on which notice of such adjustment or expungement has been filed with the Bankruptcy Court, without an objection to such Claim having to be filed, and without any further action, order or approval of the Bankruptcy Court. On the Confirmation Date, any Claim that is scheduled by the Debtors in the Schedules as disputed or listed at zero and as to which no proof of Claim has been timely filed (or deemed timely filed by Final Order entered by the Bankruptcy Court) shall be deemed a Disallowed Claim.

**11.5    Distributions on Account of Disputed Claims**. Distributions may be made on account of an undisputed portion of a Disputed Claim. The Plan Administrator shall, on the applicable distribution date, make Distributions on account of any Disputed Claim (or portion thereof) that has become an Allowed Claim. Such Distributions shall be based upon the Distributions that

would have been made to the Holder of such Claim under the Plan if such Claim had been an Allowed Claim on the Effective Date in the amount ultimately Allowed.

**11.6    Claims Paid and Payable by Third Parties**.  A Claim shall be Disallowed without an Objection thereto having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not the Debtors, or the Plan Administrator.

**11.7    Adjustment to Claims Without Objection**. Any Claim that has been paid or otherwise satisfied may be designated on the Claims Register as such at the direction of the Plan Administrator by the Filing of a Notice of Satisfaction by the Plan Administrator, and without any further notice to or action, order, or approval of the Bankruptcy Court.

## ARTICLE XII
## EXECUTORY CONTRACTS

**12.1    Executory Contracts Deemed Rejected**.  On the Effective Date, all Executory Contracts will be deemed rejected as of the Effective Date in accordance with, and subject to, the provisions and requirements of Bankruptcy Code sections 365 and 1123, except to the extent: (a) the Debtors previously have assumed, assumed and assigned or rejected such Executory Contract, or (b) prior to the Effective Date, the Debtors have Filed a motion to assume, assume and assign, or reject an Executory Contract on which the Bankruptcy Court has not ruled.  Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of all rejections of Executory Contracts pursuant to this Article and Bankruptcy Code sections 365(a) and 1123. Any and all Claims arising from the rejection of Executory Contracts under this Plan must be filed and served on the Plan Administrator no later than thirty days after the Effective Date, provided that the foregoing deadline shall apply only to Executory Contracts that are rejected automatically by operation of this Article XII of the Plan.  For the avoidance of doubt, all insurance policies of the Debtors, and all agreements related thereto, shall not be deemed Executory Contracts and shall not be rejected pursuant to this Section.

## ARTICLE XIII
## CONFIRMATION AND CONSUMMATION OF THE PLAN

**13.1    Conditions Precedent to Confirmation of the Plan**.  Confirmation of the Plan is conditioned upon the satisfaction of each of the following conditions precedent: (i) an order finding that the Disclosure Statement contains adequate information pursuant to section 1125 of the Bankruptcy Code shall have been entered; and (ii) the Confirmation Order shall be in a form and substance reasonably satisfactory to the Debtors, the Committee, and the DIP Lenders.**Conditions Precedent to the Effective Date**.  Each of the following is a condition precedent to the occurrence of the Effective Date:  The Confirmation Order shall have become a Final Order in full force and effect with no stay thereof then in effect;

> (b) all actions, documents, and agreements necessary to implement this combined Disclosure Statement and Plan, including, without limitation, all actions, documents, and agreements necessary to implement any transactions

contemplated under this combined Disclosure Statement and Plan, shall have been effectuated or executed; and

*(c)* the Plan Administration Agreement shall be executed.

**13.3** ~~13.2~~ **Notice of Effective Date**. On or before five (5) Business Days after the Effective Date, the ~~Debtors or the~~ Plan Administrator shall mail or cause to be mailed to all Holders of Claims a notice that informs such Entities of (a) the occurrence of the Effective Date, (b) notice of the Final Administrative Claim Bar Date and the Professional Fee Claim Bar Date, (c) the deadline to file Claims arising from the rejection of Executory Contracts under Article XII of the Plan, and (d) such other matters as the Plan Administrator deems appropriate or as may be ordered by the Bankruptcy Court.

**13.4** ~~13.3~~ **Waiver of Conditions Precedent to the Effective Date**. The Debtors, with the consent of the Committee and DIP Lenders, may, at any time, without notice or authorization of the Bankruptcy Court, waive in writing any or all of the conditions precedent to the Effective Date set forth in this Article, whereupon the Effective Date shall occur without further action by any Entity, ~~*provided, however,* that the condition specified in section 13.1(a) may not be waived~~. The Debtors reserve the right to assert that any appeal from the Confirmation Order shall be moot after the Effective Date of the Plan.

**13.5** ~~13.4~~ **Effect of Non-Occurrence of Effective Date**. If each of the conditions specified in ~~this~~ Article 13.2 have not been satisfied or waived in the manner provided herein within ninety (90) calendar days after the Confirmation Date (or such later date as may be agreed to by the Debtors and the Committee), then: (i) the Confirmation Order shall be vacated and of no further force or effect; (ii) no Distributions under the Plan shall be made; (iii) the Debtors and all Holders of Claims against or Interests in the Debtors shall be restored to the status quo as of the day immediately preceding the Confirmation Date as though the Confirmation Date had never occurred; and (iv) all of the Debtors' obligations with respect to Claims and Interests shall remain unaffected by the Plan and nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtors or any other Entity or to prejudice in any manner the rights of the Debtors or any Entity in any further proceedings involving the Debtors, and the Plan shall be deemed withdrawn. Upon such occurrence, the Debtors shall File a written notification with the Bankruptcy Court and serve it upon such parties as the Bankruptcy Court may direct.

## ARTICLE XIV
## EFFECTS OF CONFIRMATION

### 14.1    Exculpation, Releases, and Injunctions

**The exculpations, releases, and injunctions provided for in Section 14.1 of the Plan shall be effective upon the Effective Date.**

*(a)* **Exculpation and Limitation of Liability.**  **Notwithstanding anything contained in this Plan to the contrary, effective as of the Effective Date, no Exculpated Party shall have or incur liability or obligation for, and each Exculpated Party is hereby exculpated from any right of action for any claim related to any act or omission occurring between the Petition Date and the Effective Date in connection with, relating to, or arising out of, (i) the Chapter 11 Cases, (ii) formulating, negotiating or implementing the combined Disclosure Statement and Plan or any contract, instrument, release or other agreement or document created or entered into in connection with the combined Disclosure Statement and Plan; (iii) the Sale; (iv) any other postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring, sale or liquidation of the Debtors; (v) the solicitation of acceptances of the Plan, the pursuit of confirmation of the Plan, the Confirmation of the Plan, the Consummation of the Plan or (vi) the property to be distributed under the Plan, except for their actual fraud, gross negligence or willful misconduct as determined by a Final Order, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.**

*(b)* **Releases by the Debtors.**  **Except as otherwise expressly provided in the Plan or the Confirmation Order, including Section 14.1(e) hereof, on the Effective Date, for good and valuable consideration, each of the Debtors, on their own behalf and as a representative of their respective Estates, shall, and shall be deemed to, completely and forever release, waive, void, extinguish and discharge unconditionally, each and all of the Released Parties of and from any and all Claims, Causes of Action, obligations, suits, judgments, damages, debts, rights, remedies and liabilities of any nature whatsoever, whether liquidated or unliquidated, fixed or Contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise, that are or may be based in whole or part on any act, omission, transaction, event or other circumstance taking place or existing on or prior to the Effective Date (including prior to the Petition Date) in connection with or related to any of the Debtors, their respective Assets, the Estates, the Chapter 11 Cases, any of the Debtors' in- or out-of-court restructuring efforts, or the combined Plan and Disclosure Statement,  that may be asserted by or on behalf of any of the Debtors or their respective Estates, against any of the Released Parties, except for their actual fraud, gross negligence or willful misconduct as determined by a Final Order.  For the avoidance of doubt, except as set forth in the Global Settlement, such release by the Debtors shall not affect or impair the right or ability of the Debtors, or any successors or assigns of the Debtors, including the Plan Administrator, to object to or to seek disallowance any Claim or proof of Claim asserted by any Released Party. Nothing in this Section 14.1(b) shall in any way limit or impair the release granted to the DIP Lenders as part of the Global Settlement set forth in Section 3.3(f) of this Plan."**

*(c)* **Consensual Party Releases by Certain Parties.**  **As of the Effective Date, each Releasing Party is deemed to have released and discharged each Debtor and Released Party from any and all Causes of Action, whether known or unknown, including any derivative claims asserted on behalf of the Debtors, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions between or among the Debtors, the**

Chapter 11 Cases, the historical relationship between the Debtors and the DIP Lenders, the Sale, any other matters addressed in the Global Settlement, and the formulation, preparation, dissemination, negotiation, or filing of the Interim and Final DIP OrderOrders, the Sale, the Global Settlement, the Disclosure Statement, the Plan, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Interim and Final DIP OrderOrders, the Sale, the Global Settlement, the Disclosure Statement, or the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of consummation, the administration and implementation of the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any post-Effective Date obligations, or(ii) obligations in any document, instrument, or agreement (including those set forth in the Final DIP Order and the Sale Order) executed to implement the Plan, or (iii) actual fraud, gross negligence or willful misconduct as determined by a Final Order. For the avoidance of doubt, except as set forth in the Global Settlement, the DIP Lenders are not releasing their DIP Loan Claims, their Deficiency DIP Loan Claims, or any amount asserted as pre-petition general unsecured claim in any Filed proof of Claim by such DIP Lender.

(d)      **Non-Discharge of the Debtors; Injunction**.  In accordance with Bankruptcy Code section 1141(d)(3), the Plan does not discharge the Debtors.  Bankruptcy Code section 1141(c) nevertheless provides, among other things, that the property dealt with by the Plan is free and clear of all Claims and Interests against the Debtors.  As such, no Entity holding a Claim against the Debtors may receive any payment from, or seek recourse against, any assets that are to be distributed under the Plan other than assets required to be distributed to that Entity under the Plan.  All parties are precluded from asserting against any property to be distributed under the Plan any Claims, rights, Causes of Action, liabilities, or Interests based upon any act, omission, transaction, or other activity that occurred before the Effective Date except as expressly provided in the Plan or the Confirmation Order.

Except as otherwise expressly provided for in the Plan or in obligations issued pursuant to the Plan, all Entities are permanently enjoined, on and after the Effective Date, on account of any Claim or Interest, from:

(1) Except as expressly provided in the Plan, the Confirmation Order, or a Final Order of the Bankruptcy Court, or as agreed to by the Debtors and a holder of a Claim against or Interest in the Debtors with the consent of the Committee, all Entities who have held, hold, or may hold claims against or interests in the Debtors (whether Proof of such Claims or Interests has been filed or not and whether or not such Entities vote in favor of, against or abstain from voting on the Plan or are presumed to have accepted or deemed to have rejected the Plan) and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates are enjoined, on and after the Effective

Date through and until the date upon which all Assets of the Debtors that has vested in the post-Effective Date Debtors has been liquidated and distributed to creditors or otherwise in accordance with the terms of the Plan and the Plan Administration Agreement, and the Plan has been fully administered, subject to further extension or reduction by motion on notice, with all parties' rights with respect to such extension or reduction reserved, solely with respect to any Claims, Interests, and Causes of Action that will be or are treated by the Plan from (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind ~~against any of the Estates,~~(including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Debtors, their Estates, or the Plan Administrator, ~~their successors and assigns, and any of their assets and properties~~

~~(2)~~ as applicable, or the property of any of the Debtors, their Estates, or the Plan Administrator, as applicable; (ii) enforcing, levying, attaching (including, without limitation, any prejudgment attachment), collecting, or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree, or order against ~~any Estate,~~the Debtors, their Estates, or the Plan Administrator~~, their successors and assigns, and any of their assets and properties~~

~~(3)~~ ; or the Assets of any of the Debtors, or the post-Effective Date Debtors, as applicable; (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against ~~any Estate, the~~the post-Effective Date Debtors, or the Assets of any of the Debtors, the post-Effective Date Debtors, or the Plan Administrator, ~~their successors and assigns, and any of their assets and properties;~~as applicable; (iv) asserting any right of setoff, directly or indirectly, against any obligation due from the Debtors, or the post-Effective Date Debtors, as applicable, or against property or interests in property of any of the Debtors, or the post-Effective Date Debtors, except as contemplated or Allowed by the Plan; and, (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan. The injunctions set forth herein shall extend to any successors of the Debtors.

~~(4)~~ ~~asserting any right of setoff~~ or ~~subrogation of any kind against any obligation due from any Estate, the Plan Administrator or their successors and assigns, or against any of their assets and properties, except to the extent a right to setoff or subrogation is asserted with respect to~~ a timely filed proof of Claim; or

By accepting distributions pursuant to the Plan, each holder of an Allowed Claim or Interest extinguished, discharged, or released pursuant to the Plan will be deemed to have affirmatively and specifically consented to be bound by the Plan, including, without limitation, the injunctions set forth herein.

~~(5) commencing or continuing in any manner any action or other proceeding of any kind in respect of any Claim or Interest or Cause of Action released under Article XIV of the Plan.~~

**Any Entity injured by any willful violation of such injunction may seek actual damages and, in appropriate circumstances, may seek punitive damages from the willful violator.**

*(e)*    **Litigation Against, and Limitation of Liability of, the Prepetition Directors and Officers.**  The Plan Administrator may commence litigation against the Prepetition Directors and Officers only with respect to acts or omissions occurring prior to the Petition Date and only in accordance with the following conditions: (i) the total recovery by way of settlement or judgment in all such litigation may not exceed the aggregate total amounts that may be available under any current insurance policies of the Debtors, and any award of damages (inclusive of expenses) may be pursued only against any applicable insurers; or (ii) notwithstanding anything to the contrary in the Global Settlement, to the extent that the Plan Administrator abandons any claims or causes of action against any of the Prepetition Directors and Officers, such claims and causes of action shall not transfer to any other party.

**14.2    Term of Bankruptcy Injunction or Stays.**  ~~All~~Unless otherwise provided herein, all injunctions or stays provided for in the Chapter 11 Cases under Bankruptcy Code sections 105 or 362, under the Plan, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the closing of the Chapter 11 Cases.

~~**14.3 Comprehensive Settlement of Claims and Controversies**. Pursuant to Bankruptcy Rule 9019, and in consideration for the classification, Distribution and other benefits provided under the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and controversies resolved pursuant to the Plan, including all claims arising prior to the Petition Date, whether known or unknown, foreseen or unforeseen, asserted or unasserted, by or against any Released Party, or holders of Claims, arising out of, relating to or in connection with the business or affairs of or transactions with the Debtors, as well as the compromises and arrangements provided for in the Global Settlement.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of each of the foregoing compromises or settlements, and all other compromises and settlements provided for in the Plan, and the Bankruptcy Court's findings shall constitute its determination that such compromises and settlements are in the best interests of the Debtors, the Estates, creditors and other parties in interest, and are fair, equitable and within the range of reasonableness. The provisions of the Plan, including its release, injunction, exculpation and compromise provisions, are mutually dependent and non-severable~~

**ARTICLE  XV**
**RETENTION OF JURISDICTION**

**15.1    Exclusive Jurisdiction of Bankruptcy Court**.  Pursuant to Bankruptcy Code sections 105(a) and 1142, and notwithstanding entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases and the Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

*(a)*    allow, disallow, determine, subordinate, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Interest (whether filed before or after the Effective Date and whether or not Contingent, Disputed or unliquidated or for contribution, indemnification or reimbursement), including the compromise, settlement and resolution of any

request for payment of any Claims or Interests, the resolution of any Objections to the allowance or priority of Claims or Interests and to hear and determine any other issue presented hereby or arising hereunder, including during the pendency of any appeal relating to any Objection to such Claim or Interest to the extent permitted under applicable law;

(b)     grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for periods ending on or before the Effective Date;

(c)     hear and determine any and all adversary proceedings, motions, applications, and contested or litigated matters, including, but not limited to, all Causes of Action, and consider and act upon the compromise and settlement of any Claim or Interest, or Cause of Action;

(d)     determine and resolve any matters related to the assumption, assumption and assignment or rejection of any Executory Contract to which the Debtors are a party or with respect to which the Debtors may be liable, and to hear, determine and, if necessary, liquidate any Claims arising there from;

(e)     ensure that all Distributions to Holders of Allowed Claims under the Plan and the performance of the provisions of the Plan are accomplished as provided herein and resolve any issues relating to Distributions to Holders of Allowed Claims pursuant to the provisions of the Plan;

(f)     construe, take any action and issue such orders, prior to and following the Confirmation Date and consistent with Bankruptcy Code section 1142, as may be necessary for the enforcement, implementation, execution and Consummation of the Plan and all contracts, instruments, releases, other agreements or documents created in connection with the Plan, including, without limitation, the Disclosure Statement and the Confirmation Order, for the maintenance of the integrity of the Plan in accordance with Bankruptcy Code sections 524 and 1141 following the occurrence of the Effective Date;

(g)     determine and resolve any cases, controversies, suits or disputes that may arise in connection with the Consummation, interpretation, implementation or enforcement of the Plan (and all exhibits and schedules to the Plan) or the Confirmation Order, including the releases, exculpation, and injunction provisions set forth in and contemplated by the Plan or the Confirmation Order, or any entity's rights arising under or obligations incurred in connection therewith;

(h)     modify the combined Plan and Disclosure Statement or the Confirmation Order before or after the Effective Date, pursuant to Bankruptcy Code section 1127, as well as any contract, instrument, release, or other agreement or document created in connection with the Plan, the Disclosure Statement or the Confirmation Order, or remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, or other agreement or document created in connection with the combined Plan and Disclosure Statement or the Confirmation Order, in such manner as may be necessary or appropriate to consummate the Plan, to the extent authorized by the Bankruptcy Code and the Plan;

(i)      issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any entity with Consummation, implementation or enforcement of the Plan or the Confirmation Order;

(j)      enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

(k)      determine any other matters that may arise in connection with or relating to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, or other agreement or document created in connection with the combined Plan and Disclosure Statement or the Confirmation Order;

(l)      determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(m)      hear and determine matters concerning state, local and federal taxes in accordance with Bankruptcy Code sections 346, 505 and 1146;

(n)      enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Chapter 11 Cases;

(o)      determine and resolve controversies related to the Estates, the Debtors, ~~the Plan Administrator~~ or the Plan Administrator from and after the Effective Date;

(p)      hear and determine any other matter relating to the combined Plan and Disclosure Statement; and

(q)      enter a final decree closing any or all the Chapter 11 Cases.

### ARTICLE  XVI
### MISCELLANEOUS PROVISIONS

**16.1    Modification of the Plan**.  ~~The~~With the consent of the Committee and the DIP Lenders, the Debtors may alter, amend, or modify the Plan or any exhibits or schedules hereto under Bankruptcy Code section 1127(a) at any time prior to or after the Confirmation Date but prior to the substantial Consummation of the Plan, provided, however, that any such alteration, amendment or modification does not materially and adversely affect the treatment of Holders of Claims or Interests under the Plan.    Any Holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended, or modified, if the proposed alteration, amendment, or modification does not materially and adversely change the treatment of the Claim of such Holder.  The Debtors shall provide notice to the DIP Lenders, the U.S. Trustee, ~~and~~ the Committee, and any other party entitled to notice in the Chapter 11 Cases under Rule 2002 of any such alteration, amendment, or modification.

**16.2    Revocation, Withdrawal, or Non-Confirmation of the Plan**.  The Debtors reserve the right to revoke or withdraw the Plan prior to the Confirmation Hearing, with the consent of the

Committee.  If the Plan is revoked or withdrawn prior to the Confirmation Hearing, or if the Plan is not confirmed by the Bankruptcy Court, then:

*(a)*      the Plan shall be null and void in all respects, and

*(b)*      nothing contained in the combined Plan and Disclosure Statement shall (i) constitute a waiver or release of any Claims by or against, or any Interests in, the Debtors or any other Entity, (ii) prejudice in any manner the rights of the Debtors or any other Entity, or (iii) constitute an admission of any sort by the Debtors or any other Entity.

**16.3    Binding Effect**.  Except as otherwise provided in Bankruptcy Code section 1141(d)(3) and subject to the occurrence of the Effective Date, on and after the Confirmation Date, the provisions of the Plan shall bind any Holder of a Claim against, or Interest in, the Debtors and such Holder's respective successors and assigns, whether or not the Claim or Interest of such Holder is Impaired under the Plan and whether or not such Holder has accepted the Plan.

**16.4    Subordination Rights**.  The classification and manner of satisfying all Claims and the respective Distributions and treatments hereunder take into account and/or conform to the relative priority and rights of the Claims in each Class in connection with the contractual, legal and equitable subordination rights relating thereto, whether arising under contract, general principles of equitable subordination, Bankruptcy Code section 510(b) Code or otherwise.  All subordination rights that a Holder of a Claim may have with respect to any Distribution to be made under the Plan shall be implemented through the Plan, and all actions by such Holder of a Claim related to the enforcement of such subordination rights shall be enjoined permanently.  The provisions of any contractual or structural subordination of Claims shall remain enforceable by the Plan Administrator on behalf of the Estates after the occurrence of the Effective Date.  Without limitation hereunder, the Plan Administrator, on behalf of the Estates, may likewise enforce any right of the Debtors or the Estates to equitably or otherwise subordinate Claims under Bankruptcy Code section 510, which rights are deemed transferred to, remain and are preserved in the Plan Administrator, except as otherwise expressly set forth herein or as expressly provided in a Final Order of the Bankruptcy Court in the Chapter 11 Cases.

**16.5    Severability of Plan Provisions**.  If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, at the request of the Debtors, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may be altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.  Notwithstanding the foregoing, the Debtors will not seek to alter, amend or obtain a Confirmation Order

confirming the Plan if the Bankruptcy Court determines that any part of the Global Settlement is invalid, void or unenforceable without the consent of the Committee and the DIP Lenders.

**16.6    Payment of Statutory Fees; Filing of Quarterly Reports**.  All fees due and payable pursuant to section 1930 of Title 28 of the U.S. Code, together with the statutory rate of interest set forth in section 3717 of Title 31 of the U.S. Code to the extent applicable ("**Quarterly Fees**") prior to the Effective Date shall be paid by the Debtors on the Effective Date.  After the Effective Date the Post-Effective Date Debtors and any entity making disbursements on behalf of any Debtor or any Post-Effective Date Debtor, or making disbursements on account of an obligation of any Debtor or any Post-Effective Date Debtor (each a "**Disbursing Entity**"), shall be jointly and severally liable to pay Quarterly Fees when due and payable.  The Debtors shall file with the Bankruptcy Court all monthly operating reports due prior to the Effective Date when they become due, using UST Form 11-MOR.  After the Effective Date, the Post-Effective Date Debtors, and any entity making disbursements on behalf of any Debtor or any Post-Effective Date Debtor, or making disbursements on account of an obligation of any Debtor or any Post-Effective Date Debtor, shall file with the Bankruptcy Court separate UST Form 11-PCR reports when they become due.  Notwithstanding the deemed consolidation of Class 4 called for in the Plan, each and every one of the Debtors, the Post-Effective Date Debtors, and Disbursing Entities shall remain obligated to pay Quarterly Fees to the Office of the U.S. Trustee until the earliest of that particular Debtor's case being closed, dismissed or converted to a case under Chapter 7 of the Bankruptcy Code. The U.S. Trustee shall not be required to file any Administrative Claim in the case and shall not be treated as providing any release under the Plan.

**16.7    Dissolution of the Committee**.  The Committee shall dissolve automatically on the Effective Date and the members of such Committee shall be released and discharged from all further rights and duties arising from or related to the Chapter 11 Cases, except with respect to, and to the extent of, any applications for Professional Fee Claims or expense reimbursements for members of such Committee, including preparing same, objecting to same, defending same and attending any hearing with respect to same.  The Committee and its retained Professionals may also participate in any appealmotions, appeals, or other actions pending as of the Effective Date or filed thereafter, the outcome of which could affect the treatment of prepetition creditors (including Holders of Allowed Priority Claims and 503(b)(9) Claims), including, but not limited to, any cases, controversies, suits or disputes arising in connection with the Consummation, interpretation, implementation or enforcement of the Plan or the Confirmation Order.  The Professionals retained by the Committee shall not be entitled to assert any Administrative Claims, nor shall they have anany Allowed Administrative Claims, for any services rendered or expenses incurred after the Effective Date except in respect of the preparation and prosecution of or any objection to any Filed fee application and participation in any appealsmotions, appeals, or other actions in which the Committee may participate in accordance with this Section and further subject to Section 3.3(f).

**16.8    Exemption from Section 1146**.  Pursuant to Bankruptcy Code section 1146(a), under the Plan, (i) the issuance, distribution, transfer or exchange of any debt, equity security or other interest in the Debtors; or (ii) the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments or other instrument of transfer executed in connection with any transaction

arising out of, contemplated by, or in any way related to the Plan, shall not be taxed under any law imposing a stamp tax or similar tax. To the extent that the Debtors or Plan Administrator elect to sell any property prior to or after the Confirmation Date, such sales of property will be exempt from any transfer taxes in accordance with Bankruptcy Code section 1146(c). All subsequent issuances, transfers or exchanges of securities, or the making or delivery of any instrument of transfer by the Debtors in the Chapter 11 Cases shall be deemed to be or have been done in furtherance of the Plan.

**16.9    Closing of Chapter 11 Cases; Caption Change**. As of the Effective Date, the Plan Administrator may file a motion on notice pursuant to Bankruptcy Rule 3002 and Local Rule 3002-1 to close the Chapter 11 Cases of all of the Debtors except for Debtor Takeoff Technologies, Inc., and ~~changing~~to change the caption of the Chapter 11 Cases accordingly. Upon the Filing of a motion to close the Chapter 11 Case of Takeoff Technologies, Inc., the Plan Administrator shall file a final report with respect to all of the Chapter 11 Cases pursuant to Local Rule 3022-1(c). ~~Furthermore, the Voting Agent is authorized to destroy all paper/hardcopy records related to this matter two (2) years after the Effective Date has occurred.~~

**16.10    Filing of Additional Documents**. On or before the Effective Date of the Plan, the Debtors may issue, execute, deliver, and File with the Bankruptcy Court or record any agreements and other documents, and take any action as may be necessary or appropriate to effectuate, consummate and further evidence the terms and conditions of the Plan, with the consent of the Committee.

**16.11    Insurance**. Notwithstanding anything to the contrary contained herein, Confirmation of the Plan and the occurrence of the Effective Date shall have no effect on insurance policies of the Debtors in which the Debtors are or were insured parties. Each insurance company is prohibited from, and the Confirmation Order shall include an injunction against, denying, refusing, altering, or delaying coverage on any basis regarding or related to the Chapter 11 Cases, the Plan or any provision within the Plan, including the treatment or means of liquidation set out within the Plan for insured Claims.

**16.12    Successors and Assigns**. The rights, benefits and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such Entity.

**16.13    Governing Law**. Except to the extent that the Bankruptcy Code or Bankruptcy Rules or other federal laws is applicable, and subject to the provisions of any contract, instrument, release, or other agreement or document entered into in connection with the Plan, the construction, implementation and enforcement of the Plan and all rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware, without giving effect to conflicts of law principles which would apply the law of a jurisdiction other than the State of Delaware or the United States of America.

**16.14    Exhibits and Schedules**. All exhibits and schedules annexed hereto, and all documents submitted in support hereof, are incorporated into and are a part of the Plan as if set forth in full herein. Holders of Claims and Interests may obtain copies of the Filed exhibits and schedules upon written request to the Debtors. Upon their Filing, the exhibits and schedules may be

inspected in the Office of the Clerk of the Bankruptcy Court or its designee during normal business hours.  The documents contained in the exhibits and schedules shall be approved by the Bankruptcy Court pursuant to the Confirmation Order.  To the extent any exhibit or schedule annexed hereto is inconsistent with the Plan, the contents of the Plan shall control.

**16.15   Computation of Time**.  In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

**16.16   Reservation of Rights**.  The Filing of the combined Disclosure Statement and Plan, any statement or provision contained in the combined Disclosure Statement and Plan, or the taking of any action by the Debtors with respect to the Plan shall not be, and shall not be deemed to be, an admission or waiver of any rights of the Debtors with respect to the Holders of Claims and Interests.

Dated:  ~~September 27~~November 5, 2024

**Takeoff Technologies, Inc.,** *et al.*

*/s/ Brett M. Anderson*

Name:  Brett M. Anderson

Title:   Deputy Chief Restructuring Officer

| Summary report:<br>Litera Compare for Word 11.5.0.74 Document comparison done on<br>11/5/2024 3:56:53 PM | |
| --- | --- |
| **Style name:** Default Style | |
| **Intelligent Table Comparison:** Active | |
| **Original DMS:** iw://ycstwork.ycst.com/YCST01/32303061/1 | |
| **Modified DMS:** iw://ycstwork.ycst.com/YCST01/32303061/9 | |
| **Changes:** | |
| Add | 484 |
| Delete | 401 |
| Move From | 15 |
| Move To | 15 |
| Table Insert | 0 |
| Table Delete | 5 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 920 |