**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>TAKEOFF TECHNOLOGIES, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 24-11106 (CTG)<br>(Jointly Administered)<br><br>**Related D.I.: 473** |

**LIMITED OBJECTION OF RONETCO SUPERMARKETS, INC. TO THE REVISED COMBINED DISCLOSURE STATEMENT AND JOINT CHAPTER 11 PLAN OF TAKEOFF TECHNOLOGIES, INC. AND ITS DEBTOR AFFILIATES**

Creditor RoNetco Supermarkets, Inc. ("RoNetco"), by and through its undersigned counsel, respectfully submits this Limited Objection (the "Limited Objection") to the *Revised Combined Disclosure Statement and Joint Chapter 11 Plan of Takeoff Technologies, Inc. and its Debtor Affiliates* [D.I. 473] (the "Plan") filed by Takeoff Technologies, Inc. ("Takeoff") and its related debtors (collectively, the "Debtors") in these jointly administered proceedings, and in support of its Limited Objection respectfully asserts as follows:

**PRELIMINARY STATEMENT**

1. RoNetco objects to the Plan to the extent that it fails to adequately account for the secured claim and other rights of RoNetco and it seeks to improperly modify the right of RoNetco to seek recovery of the deposit monies that it paid to the Debtors, inclusive of RoNetco's right to intervene in any future avoidance action against the third-party equipment manufacturer Knapp Logistics Automation, Inc. ("Knapp L.A.") that seeks a return of monies to the estate that are traceable to Ronetco's deposit.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of the Debtors federal tax identification numbers, as deemed applicable by the Debtors, are: Takeoff Technologies, Inc. (0552); Takeoff Technologies Canada, Inc.; Takeoff Technologies Australia Pty Ltd.; Takeoff Technologies FZE; Takeoff International Subco India Private Limited; and Takeoff International Subco, LLC.

16136153-03

2.     As explained below and through its timely-filed Proof of Claim (Claim No. 47, herein after the "Claim"), RoNetco transferred nearly three million dollars to Takeoff Technologies, Inc. ("Takeoff") in reliance upon material considerations that have not been honored and RoNetco asserts that it is entitled to the return of a portion of its total Claim, such portion being entitled to treatment as a secured claim.  The Plan does not appear to adequately clarify the treatment of RoNetco's claim nor does it provide a reserve for this claim. Furthermore, the Plan would also appear to improperly impede RoNetco's ability to assert its superior right to such funds in the event that the Debtors seek to recapture the monies Takeoff wrongfully transferred to Knapp.  For these and other reasons set forth below, the Plan does not sufficiently classify, address or take account of the Claim, does not show that it satisfies the best interest of the creditors test, nor can the Plan claim to be "fair and equitable" as required by section 1129(b)(2)(B)(i).

3.     RoNetco proposes that this Limited Objection may be resolved by the inclusion of language in the prospective, proposed Plan Confirmation Order providing that RoNetco's rights, claims, and defenses concerning its secured claim, inclusive of the right to intervene in any adversary proceeding brought to recover monies directly traceable to RoNetco funds are fully preserved and unaltered by the Plan.

**BACKGROUND**

4.     RoNetco is a New Jersey corporation with corporate offices located at 1070 US Hwy 46, Suite 17, Ledgewood, New Jersey.  Declaration of David P. Romano, Co-President & C.F.O. (the "Romano Decl.")[2] ¶ 4.  RoNetco is involved in the business of operating

---

[2] All references to the Romano Declaration refer to and incorporate herein the previously filed Declaration of Mr. Romano found at D.I. 298-1.

supermarkets, and currently operates nine retail ShopRite grocery stores in Northwest New Jersey. *Id.*

5. In or about April 2022, RoNetco agreed to order certain equipment and related software support from Takeoff. *Id.* ¶ 5. RoNetco sought to quickly modernize its operations through acquiring a semi-automated warehouse picking and storage system, such system being manufactured by Knapp L.A.[3], and known as an "OSR" system. *Id.* This agreement was finalized utilizing Takeoff's form of *Technology and Platform Services Agreement,* which Takeoff and RoNetco executed and made effective April 15, 2022 (the "Contract"). *Id.* The particular OSR system to be procured from Knapp L.A. was detailed in an exhibit to the Contract (the "Equipment"). *Id.* ¶ 6.

6. In entering into the Contract, RoNetco relied on certain material considerations. RoNetco selected Takeoff to perform a critical modernization of its operations on the belief that Takeoff had the financial and practical wherewithal and all of the necessary expertise, contractual relations, and intellectual property rights to arrange for this complicated OSR system to be seamlessly constructed, installed, and operated at a site located in Netcong, New Jersey, that would need to be prepared and built out by RoNetco so as to be ready for the OSR system installation. *Id.* ¶ 7. Furthermore, in anticipation of delivery and installation of the Equipment, RoNetco expended time, money, and resources to prepare a project site for the OSR system, including obtaining necessary governmental approvals for this project to move forward. *Id.* ¶ 8.

7. In reliance upon these and other material considerations, on or about May 19, 2022, RoNetco conditionally transferred two million nine hundred fifty thousand dollars ($2,950,000.00) in trust to Takeoff. *Id.* ¶ 9. Subsequently, in or about December 2023, RoNetco

---

[3] While the Contract indicates that Knapp L.A. is the responsible Knapp company to manufacture certain of the Equipment, it appears to RoNetco that Knapp, Inc. was the entity that seemed to be gearing up to perform on aspects of the Contract and that Knapp, Inc, and was invoiced by Takeoff for work with respect to the Contract.

reached an understanding with Takeoff that Takeoff would not give Knapp L.A. authorization to proceed with the actual manufacture of the OSR system until RoNetco gave further authorization regarding the same to Takeoff.  *Id.* ¶ 10.  RoNetco understood that this would mean that the funds transferred to Takeoff toward the Contract costs would not be allocated for manufacturing of the OSR system until RoNetco approved of the same.  *Id.*  Despite this, it appears that Takeoff, without first informing RoNetco, went ahead without permission and transferred $2,185,284.00 to Knapp L.A. in or about February of 2024 (of the $2,950,000.00 Contract conditionally transferred by RoNetco).  *Id.* ¶ 11.  Takeoff has not accounted for the remaining $764,716 of RoNetco's $2,950,000.00 payment.

8. Thereafter, on June 6, 2024, Takeoff and its related Debtors filed their bankruptcy petitions.  D.I. 1.

9. On June 6, 2024, the Debtors' filed their *Motion for Entry of (A) an Order (I) Scheduling a Hearing on the Approval of the Sale of All or Substantially All of the Debtors' Assets Free and Clear of All Encumbrances Other than Assumed Liabilities and Permitted Encumbrances, and the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (II) Approving Certain Bidding Procedures and Assumption and Assignment Procedures, and the Form and Manner of Notice Thereof, (III) Authorizing the Debtors to Enter into the Stalking Horse Purchase Agreement, and (IV) Granting Related Relief; and (B) an Order (I) Approving Asset Purchase Agreement, (II) Authorizing the Sale of All or Substantially All of the Debtors' Assets Free and Clear of All Encumbrances Other than Assumed Liabilities and Permitted Encumbrances, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief* [D.I. 62] (the "Sale Motion").

10. On August 1, 2024, RoNetco filed an Objection to Proposed Cure Costs and Assumption and Assignment of Contract [D.I. 298] (the "Cure Objection") related to the Sale Motion.

11. On August 16, 2024, RoNetco filed the Claim, thereby rightly asserting that it holds a total claim of no less than $3,524,827.69 against Takeoff Technologies, Inc. The Claim further asserts that of this total claim, $2,950,000.00 was provided to Takeoff as a deposit and only to be used consistent with an understanding that these funds were not to be allocated toward the manufacturing of RoNetco's OSR system without the permission of RoNetco. Of this $2,950,000.00 amount, Takeoff, in or about February 2024, proceeded to transfer $2,185,284.00 to Knapp L.A. without permission or authority. Id. ¶ 11.

12. On September 19, 2024, the Court entered an Order Authorizing the Rejection of Certain Executory Contracts, including the RoNetco Contract.

## LEGAL ARGUMENT

13. The confirmation of a plan is governed by Bankruptcy Code section 1129. Among other requirements, under section 1129(a)(3) a court should confirm a plan only if "[t]he plan has been proposed in good faith[.]" 11 U.S.C. § 1129(a)(3). With regard to impaired classes of claims or interests, section 1129(a)(7) requires that:

> (A) each holder of a claim or interest of such class--
> (i) has accepted the plan; or
> (ii) will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date; or
>
> (B) if section 1111(b)(2) of this title applies to the claims of such class, each holder of a claim of such class will receive or retain under the plan on account of such claim property of a value, as of the effective date of the plan, that is not less than the value of such

> holder's interest in the estate's interest in the property that secures such claims.
>
> [11 U.S.C. § 1129(a)(7).]

Bankruptcy Code section 1129(a)(7) is commonly referred to as the "best interests of the creditors test."

14. If a class of claims has not accepted a plan, the proponent can only confirm such plan if it meets the "cramdown" requirements of section 1129(b) in connection with such dissenting class. *Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship,* 526 U.S. 434, 441 (1999). A cramdown allows the confirmation of a plan notwithstanding an objecting impaired class so long as (a) the requirements of Bankruptcy Code section 1129(a) are satisfied; and (b) the plan "does not discriminate unfairly, and is fair and equitable" as to any dissenting impaired class. 11 U.S.C. § 1129(b)(1). To be "fair and equitable," a plan must either provide the dissenting holders of claims with the full value of their claims, or alternatively, comply with the "absolute priority rule" by ensuring that "the holder of any claim or interest that is junior to the claims of such [impaired unsecured] class will not receive or retain under the plan on account of such junior claim or interest any property[.]" 11 U.S.C. § 1129(b)(2)(B); *LaSalle,* 526 U.S. at 441-42.

15. Here, the Plan as proposed cannot be confirmed because it is impermissibly vague, uncertain, and contradictory as to the treatment of RoNetco's timely-filed Claim, including the secured portion of the $2,950,000.00 that RoNetco asserts should be treated as an equitable lien/constructive trust since the monies transferred by Ronetco to Takeoff were either still subject to treatment as a deposit under the terms of the Contract and/or the Debtors had agreed not to transfer any of the deposited money to Knapp absent written agreement from Takeoff.

16. The Plan appears to provide that secured claims shall be entitled to receive "(A) return of the collateral securing such Allowed Secured Claim; or (B) Cash equal to the amount of such Allowed Secured Claim; or (C) such other treatment which the Debtors or the Plan Administrator, as applicable, and the Holder of such Allowed Secured Claim have agreed upon in writing." [D.I. 473 at 14]. The Plan, however, only estimates that about $1,000.00 of secured claims exist. [*id*.]

17. The language in the Plan also does not appear to adequately and fairly address the likely interplay between the Debtor or Plan Administrator's potential future action against Knapp and how such an action may be impacted by RoNetco's superior claim for the return of its $2,185,284.00 transferred to Knapp by Takeoff.

18. At a basic level, the Plan does not take account of the secured-versus-unsecured portions of RoNetco's Claim, and therefore in that regard the Plan is inadequate as to the manner of its classification scheme. *See, e.g., John Hancock Mut. Life Ins. Co. v. Route 37 Business Park Associates,* 987 F.2d 154, 159 (3d Cir. 1993) (in matter wherein Third Circuit addressed the factors to be considered in determining whether a classification scheme is reasonable, and wherein proposed plan classified mortgagee's unsecured portion of claim, approximately $3.7 million, in a class, and all other unsecured claims, an estimated total of $492,000, in a separate class, rejecting debtor's reasoning regarding dilution or domination of voting by certain creditors). Here, the Plan is silent as to the exact treatment of RoNetco's secured claim and the Plan does not appear to have set aside an appropriate reserve to address this issue. This uncertainty as to RoNetco's treatment is complicated by the Debtor's apparent wrongful transfer of monies earmarked for the building of RoNetco's fulfillment center to Knapp.

19. Accordingly, RoNetco submits that the lack of clarity for the treatment of RoNetco's secured claim is impermissibly vague and in the absence of clarification could result in a Plan that is not feasible and should not be confirmed.

20. To resolve this Plan issue, RoNetco would agree to the inclusion of language in the Confirmation Order that clarifies that RoNetco's rights, claims, and defenses concerning its secured claim, inclusive of its right to intervene in any adversary proceeding brought to recover monies directly traceable to RoNetco funds are fully preserved and unaltered by the Plan.

## RESERVATION OF RIGHTS

21. The Contract at issue contains a confidentiality clause potentially hampering RoNetco's ability to present the full record before the Court.  Accordingly, should the Court seek or require further information, or should the Debtors in their reply speak to any purportedly confidential information, RoNetco respectfully reserves the right to at a later time seek to supplement the record under seal pursuant to Bankruptcy Code section 107(b)(1).  Additionally, RoNetco reserves the right to supplement and/or amend its Limited Objection in response to any further Plan related documents that may be filed with the Court and/or in response to any arguments made with respect to the Limited Objection.

## CONCLUSION

22. For the reasons set forth above, RoNetco respectfully requests that the Plan in its current form be not be confirmed and that the Court grant such other and further relief as it deems necessary or appropriate.

*[REMAINDER OF PAGE LEFT INTENTIONALLY BLANK]*

16136153-03

| | |
|---|---|
| Dated: December 10, 2024<br>Wilmington, Delaware | **SAUL EWING LLP**<br><br>*/s/ Evan T. Miller*<br>Evan T. Miller (No. 5364)<br>1201 N Market St., Ste 2300<br>Wilmington, DE 19801<br>Tel.: (302) 421-6864<br>Fax: (302) 421-6813<br>Email: evan.miller@saul.com<br><br>-   and   -<br><br>*/s/ Philip W. Allogramento III*<br>Philip W. Allogramento III  *(admitted pro hac vice)*<br>CONNELL FOLEY LLP<br>56 Livingston Avenue<br>Roseland, NJ 07068<br>Tel.: (973) 535-0500<br>Fax: (973) 535-9217<br>Email: pallogramento@connellfoley.com<br><br>*Counsel for Creditor/Contract Counterparty RoNetco Supermarkets, Inc.* |

16136153-03