**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| TAKEOFF TECHNOLOGIES, INC., *et al.*,[1] | ) Case No. 24-11106 (CTG) |
| | ) |
| | ) (Jointly Administered) |
| Debtors. | ) |
| | ) **Re: Docket No. 479** |

**DECLARATION OF BRETT M. ANDERSON IN SUPPORT OF ENTRY OF ORDER CONFIRMING THE AMENDED COMBINED DISCLOSURE STATEMENT AND JOINT CHAPTER 11 PLAN OF TAKEOFF TECHNOLOGIES, INC. AND ITS AFFILIATED DEBTORS**

I, Brett M. Anderson, do hereby declare, under penalty of perjury, that:

1. I am the Deputy Chief Restructuring Officer ("Deputy CRO") of Takeoff Technologies, Inc. ("Takeoff"), the lead debtor in the above-captioned chapter 11 cases (together with its debtor affiliates, the "Debtors"). I have served as the Deputy CRO since April 2024. In that capacity, I am familiar with the business and financial affairs of the Debtors and have been actively involved in these chapter 11 cases (the "Chapter 11 Cases"). I submit this declaration in support of confirmation of the *Amended Combined Disclosure Statement and Joint Chapter 11 Plan of Takeoff Technologies, Inc. and its Debtor Affiliates* [D.I. 531] (as may be amended, supplemented, or modified from time to time, the "Combined Disclosure Statement and Plan").[2]

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of the Debtors federal tax identification numbers, as applicable, are: Takeoff Technologies, Inc. (0552); Takeoff Technologies Canada, Inc.; Takeoff Technologies Australia Pty Ltd. (ACN 639 288 958); Takeoff Technologies FZE; Takeoff International Subco India Private Limited; and Takeoff International Subco, LLC. The location of the Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is 203 Crescent Street, Suite 203, Waltham, Massachusetts 02453.

[2] Capitalized terms used but not otherwise defined herein have the meaning ascribed to them in the Combined Disclosure Statement and Plan.

32385185.2

2. I am a Senior Director of Huron Consulting Services LLC ("Huron"), a consulting firm that specializes in, among other things, restructuring, operational, and financial consulting, and interim management to financially troubled companies. I have more than 19 years of experience counseling companies through complex restructurings, operational transformations, capital raising, buy and sell side advisories, and merger integrations, primarily in special situations serving as a lead advisor in both out-of-court and court-supervised situations. I have served approximately fifty debtors and other companies with similar levels of distress, functioning for many as a chief restructuring strategist. My expertise encompasses a wide range of industries, including technology and software, aerospace manufacturing, hardwoods manufacturing, consumer goods and retail, government and defense contracting, metals, and airlines. I am currently the leader of the Technology, Media & Telecom industry vertical for Huron's Business Advisory practice.

3. I have a Bachelor of Science in finance from the University of Illinois, Urbana-Champaign. I am also a Certified Insolvency and Restructuring Advisor (CIRA), Certified Turnaround Professional (CTP), and Certified Treasury Professional (CTP).

4. Except as otherwise noted, all matters set forth herein are based on (a) my personal knowledge and belief, (b) my review of the relevant documents, including the Combined Disclosure Statement and Plan, (c) information supplied to me by other representatives of the Debtors, including the Debtors' professional advisors, (d) my view, based on my personal and professional experience and knowledge of the Debtors' business affairs and financial condition, or (e) for matters involving the requirements for confirmation of the Combined Disclosure Statement and Plan under the Bankruptcy Code, my reliance on the advice of the Debtors' bankruptcy counsel. If called to testify, I could and would testify to the facts set forth herein.

32385185.2

**THE COMBINED DISCLOSURE STATEMENT AND PLAN**

5. I have reviewed and am generally familiar with the terms and provisions of the Combined Disclosure Statement and Plan. With the Debtors' bankruptcy counsel, I was personally involved in the development of and discussions regarding the terms of the Combined Disclosure Statement and Plan, including the negotiation of the Global Settlement. The Combined Disclosure Statement and Plan is the result of extensive, arm's-length and good faith negotiations among the Debtors and other interested parties, including the Committee and DIP Lenders. Among other things, the Combined Disclosure Statement and Plan effectuates the Global Settlement and establishes the Plan Administrator to liquidate the Debtors' remaining assets, pursue the Retained Causes of Action, make Distributions in accordance with Section 9.8 of the Combined Disclosure Statement and Plan, and otherwise wind down the Debtors' affairs and the Estates in a timely and efficient manner.

6. On November 6, 2024, following a hearing on the adequacy of the Combined Disclosure Statement and Plan on an interim basis for solicitation purposes, the Court entered an order [D.I. 477] (the "Interim Approval and Procedures Order") approving the Disclosure Statement on an interim basis. To the best of my knowledge, information, and belief, the Debtors, with the assistance of the Claims Agent, complied with the solicitation and noticing procedures approved through the Interim Approval and Procedures Order, as well as the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and applicable non-bankruptcy law, as evidenced by the affidavit of service filed by the Claims Agent on December 16, 2024 [D.I. 526].

7. On December 3, 2024, the Debtors filed the Plan Supplement, which identified Ankura Trust Company, LLC, as the Plan Administrator.

**SATISFACTION OF PLAN CONFIRMATION REQUIREMENTS**

8. I have been advised by the Debtors' legal advisors and believe, based on my review of the Combined Disclosure Statement and Plan and my discussions with those advisors, that the Combined Disclosure Statement and Plan satisfies all applicable provisions of the Bankruptcy Code and should be confirmed.

*Sections 1129(a)(1) and (2) and Sections 1122 and 1123*

9. I have been advised by counsel and believe that the Debtors, as proponents of the Combined Disclosure Statement and Plan, have complied with the applicable provisions of the Bankruptcy Code, as required by section 1129(a)(1) and 1129(a)(2) of the Bankruptcy Code, respectively.

10. ***Classes of Claims.*** I believe that each Class under the Combined Disclosure Statement and Plan only contains Claims that are substantially similar to other Claims within the Class, and that the Classes under the Combined Disclosure Statement and Plan were not prepared for purposes of affecting the votes on the Combined Disclosure Statement and Plan or for any other inappropriate purposes. Further, the Combined Disclosure Statement and Plan provides for the same treatment of each Claim within a Class.

11. ***Means of Implementation.*** I believe that the Combined Disclosure Statement and Plan provides for adequate means for implementation of the Combined Disclosure Statement and Plan, including by providing for the substantive consolidation of the Debtors' Estates for plan purposes only, appointing the Plan Administrator, and providing mechanisms for the Post-Effective Date Debtors to liquidate and monetize the Assets, including the Retained Causes of Action, distribute the proceeds thereof as provided for in the Combined Disclosure Statement and Plan, and ultimately dissolve. Finally, based upon the liquidation analysis attached as Exhibit A

to the Combined Disclosure Statement and Plan, I believe that the provisions of the Combined Disclosure Statement and Plan are in the best interest of creditors.

12. ***Release and Exculpation Provisions.*** The Combined Disclosure Statement and Plan includes certain release, exculpation, and limitation of liability provisions. I believe that the Released Parties (along with the other parties released under the Combined Disclosure Statement and Plan) have provided (a) many valuable contributions to the progress of the Chapter 11 Cases, including assisting in stewarding the Debtors through the bankruptcy process, negotiating and implementing settlements with various parties (including the Global Settlement), pursuing and closing the Sale, pursuing Confirmation of the Combined Disclosure Statement and Plan, and otherwise preserving the Debtors' assets for the benefit of all stakeholders, and/or (b) valuable concessions that paved the way for confirmation of the Combined Disclosure Statement and Plan.

13. Each party exculpated under the Combined Disclosure Statement and Plan is a fiduciary of the Debtors' estates, and I believe that the protection from liability that the exculpation clause provides to these parties is appropriate given their efforts in the Chapter 11 Cases, including with respect to the Combined Disclosure Statement and Plan process, and their fiduciary relationship with the Debtors and their Estates.

14. In light of these different contributions, I believe the releases and exculpations included as part of the overall compromise and settlement embodied by the Combined Disclosure Statement Plan are fair, equitable, and reasonable. Article XIV of the Combined Disclosure Statement and Plan provides for certain releases of Claims and Causes of Action held by the Debtors and by third parties. I believe that the release provisions in the Combined Disclosure Statement and Plan are necessary and integral components of the Combined Disclosure Statement and Plan. In addition to being supported by the Committee and receiving the overwhelming

support of creditors voting on the Combined Disclosure Statement and Plan, the releases in the Combined Disclosure Statement and Plan are in exchange for, and are supported by, fair, sufficient and adequate consideration provided by the parties receiving such releases and are a good faith settlement and compromise of the Claims and Causes of Action released pursuant to the Combined Disclosure Statement and Plan.  Under the consensual release provided for in Section 14.1(c) of the Combined Disclosure Statement and Plan (i.e., the Third-Party Releases discussed more fully below), the Releasing Parties do not waive or release Claims or Causes of Action arising from any acts or omissions that are determined by a Final Order to have constituted gross negligence, actual fraud or willful misconduct.

15. ***Debtor Releases.***  Section 14.1(b) of the Combined Disclosure Statement and Plan (the "<u>Debtor Releases</u>") provides for certain releases of Claims and Causes of Action held by the Debtors against the Released Parties.  In addition, the Global Settlement provides for additional releases by the Debtors in favor of the DIP Lenders.  It is my belief that the Debtor Releases, including the releases in the Global Settlement, were instrumental in formulating and obtaining support for the Combined Disclosure Statement and Plan, which is the result of, among other things, extensive arm's-length and good faith negotiations among the Debtors, the Committee, and the DIP Lenders.  Moreover, it is my understanding that the Committee supports the proposed releases.  Based on my participation in the negotiations regarding the Combined Disclosure Statement and Plan, I am not aware of any valid Causes of Action that might be asserted against any of the Released Parties by the Debtors.

16. Many of the Released Parties, including a number of officers, directors, and estate professionals, have served the Debtors during the Chapter 11 Cases, and I believe that they have worked tirelessly to maximize value for the benefit of all stakeholders.  Based on my participation

in the negotiations regarding the Combined Disclosure Statement and Plan, and based on my consideration of the information provided to me by the Debtors' legal and other advisors, I believe that the Debtor Releases are essential components of the Combined Disclosure Statement and Plan, including the Global Settlement, and constitute a sound exercise of the Debtors' business judgment. During the course of negotiations regarding the Combined Disclosure Statement and Plan, including the Global Settlement, it was clear that the Debtor Releases would be necessary conditions to implementing the Combined Disclosure Statement and Plan. I believe that without the Debtor Releases, the Debtors would neither have been able to secure the significant benefits provided by the Combined Disclosure Statement and Plan and the Global Settlement, nor build consensus around the Plan. I believe that the Debtor Releases were a material inducement to the concessions and contributions from the Released Parties under the Combined Disclosure Statement and Plan.

17.     **_Third-Party Releases_**. Section 14.1(c) of the Combined Disclosure Statement and Plan provides for releases by the Releasing Parties (the "Third-Party Releases") of any and all claims, interests, obligations, rights, suits, damages, causes of action, remedies and liabilities whatsoever, including any derivative claims or claims asserted or assertable on behalf of the Debtors and the Estates, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, fixed or contingent, matured or unmatured, existing or hereafter arising, in law, equity or otherwise against the Released Parties.

18.     I believe that the Solicitation Package and other noticing materials filed and served in connection with the Combined Disclosure Statement and Plan provided recipients with timely, sufficient, appropriate and adequate notice of the Third-Party Releases, including that all holders of Claims that voted to accept or reject the Combined Disclosure Statement and Plan would grant

the Third-Party Release if they elected on their Ballot to opt in to the Third-Party Release. Accordingly, I also believe that each Releasing Party affirmatively consented to the Third-Party Releases and, therefore, the Third-Party Releases should be approved as consensual third-party releases.

19. Based on my participation in the negotiations regarding the Combined Disclosure Statement and Plan and discussions with the Debtors' legal advisors, I believe that the Third-Party Releases are an essential component of the Combined Disclosure Statement and Plan. I further believe that without the Third-Party Releases, the Debtors and their stakeholders would neither have been able to secure the substantial benefits provided by the Combined Disclosure Statement and Plan, including the Global Settlement and the other benefits noted above, nor build consensus around the Combined Disclosure Statement and Plan. It is my understanding that the Third-Party Releases were a critical component of the Combined Disclosure Statement and Plan and were material inducement to the Combined Disclosure Statement and Plan. Accordingly, the Third-Party Releases are fair and necessary to the implementation of the Combined Disclosure Statement and Plan and should be approved.

20. ***Exculpation and Plan Injunction.*** Section 14.1(a) of the Combined Disclosure Statement and Plan provides for exculpation of the Exculpated Parties, which parties have fiduciary obligations to the Estates, except in cases involving bad faith, willful misconduct or gross negligence by such parties as determined by a Final Order of the Bankruptcy Court. Sections 14.1(a) and 14.1(d) of the Combined Disclosure Statement and Plan, together, provide that all Entities are enjoined, on and after the Effective Date through the closing of the Chapter 11 Cases, on account of any Claim or Interest, from commencing or continuing in any manner any actions

or other proceeding of any kind in respect of any Claim, Interest, or Cause of Action released or exculpated under Article XIV of the Combined Disclosure Statement and Plan.

21.     Based upon my review of the Combined Disclosure Statement and Plan, my personal knowledge of the circumstances leading up to its development, and my discussions with the Debtors' legal advisors, I believe that the exculpation and injunction provisions of Article XIV of the Combined Disclosure Statement and Plan are proper because, among other things, they are the product of extensive arm's-length negotiations, have been critical to obtaining the support of the various constituencies for the Combined Disclosure Statement and Plan, and are an inherent part of the Combined Disclosure Statement and Plan.  The Debtors are unaware of any claims against any Exculpated Party that are being released or otherwise barred through Section 14.1(a) of the Combined Disclosure Statement and Plan.  Nonetheless, the exculpation and injunction provisions of the Combined Disclosure Statement and Plan are important in that they remove the threat of litigation from the Estates and the Exculpated Parties.  I also believe the Exculpated Parties played critical roles in, and made significant contributions to, the Chapter 11 Cases and that such contributions represent good and valuable consideration to the Debtors, their Estates, and creditors.  Additionally, I believe that the injunction provisions of Section 14.1(d) are critical to the releases provided for in Article XIV of the Combined Disclosure Statement and Plan.  It is also my understanding and belief that exculpation and injunction provisions provided for in Article XIV of the Combined Disclosure Statement and Plan are fair and equitable, confer material benefits on, and are in the best interests of, the Debtors, their Estates, and creditors, and are necessary to implementation of the Combined Disclosure Statement and Plan.

*Section 1129(a)(3)*

22.     ***The Combined Disclosure Statement and Plan Has Been Proposed in Good Faith and Not by Any Means Forbidden by Law.***  The Combined Disclosure Statement and Plan has been proposed by the Debtors in good faith, with the legitimate and honest purpose of liquidating the Debtors' Assets and winding down the Debtors' business affairs in an orderly fashion and maximizing the value of the Debtors and the recoveries of all creditors under the circumstances of the Chapter 11 Cases.  The Combined Disclosure Statement and Plan is the product of extensive, arm's-length negotiations among the Debtors' key stakeholders and is fully supported by the Committee, and the DIP Lenders.

23.     The Debtors filed the Combined Disclosure Statement and Plan with the expectation that it will allow for a timely and efficient liquidation and distribution of the Assets to the Debtors' creditors in accordance with the Combined Disclosure Statement and Plan.  Further, I believe that the Combined Disclosure Statement and Plan maximizes the value of the estates for their creditors.

*Section 1129(a)(4)*

24.     ***The Combined Disclosure Statement and Plan Provides that Payments Made by the Debtors for Services or Costs and Expenses are Subject to Approval***.  Any payments made or to be made for services or for costs and expenses incurred in connection with the Chapter 11 Cases are subject to the Court's approval.  I also believe that all of the payments to be made under the Combined Disclosure Statement and Plan are reasonable and appropriate in the Chapter 11 Cases, and I believe that the payments for the costs and expenses of the Plan Administrator set forth in the Combined Disclosure Statement and Plan will secure and compensate parties for

providing services necessary to implementing the Combined Disclosure Statement and Plan and the wind-down of the Debtors' Estates.

*Section 1129(a)(5)*

25.     ***Resignation of Debtors' Members, Managers and Officers, and Appointment of The Plan Administrator.***  In accordance with section 1123(a)(5) of the Bankruptcy Code, Article IX of the Combined Disclosure Statement and Plan provides adequate means for the Combined Disclosure Statement and Plan's implementation, including the deemed resignation or termination of the Debtors' current directors and officers, and the appointment of the Plan Administrator.  The Plan Supplement included the identity and compensation of the Plan Administrator.  I believe that the appointment of the Plan Administrator is in the best interests of creditors and consistent with public policy.

26.     The responsibilities of the Plan Administrator will include:  (1) winding down the Debtors' Estates as expeditiously as reasonably possible and liquidating the Assets, including the Retained Causes of Action, (2) resolving any Disputed Claims, (3) making Distributions to Allowed Claims in accordance with the Combined Disclosure Statement and Plan, (4) enforcing and prosecuting Claims, interests, rights, and privileges under any Retained Causes of Action in an efficient manner and only to the extent the benefits of such enforcement or prosecution are reasonably believed to outweigh the costs associated therewith, and (5) exercising such other powers as may be vested in it pursuant to an order of the Bankruptcy Court or pursuant to the Combined Disclosure Statement and Plan, or as it reasonably deems to be necessary and proper to carry out the provisions of the Combined Disclosure Statement and Plan.  The Plan Administrator shall be vested with the right to liquidate the Assets and make Distributions to Holders of Allowed Claims in accordance with Section 9.8 of the Combined Disclosure Statement and Plan.

27. ***Substantive Consolidation***. Section 9.2 Combined Disclosure Statement and Plan proposes to substantively consolidate the Estates for purposes of confirming and consummating the Combined Disclosure Statement and Plan, including, but not limited to, voting, Confirmation, and Distributions. Based on the balloting results, I understand that each class of Creditors that will be affected by the proposed consolidation has voted to accept the Plan, which makes such consolidation consensual.

28. Additionally, the Debtors' businesses were operated as one consolidated enterprise. Absent the substantive consolidation proposed under the Combined Disclosure Statement and Plan, the process of winding down the Estates and administering Distributions would be more time consuming and costly. As such, given the limited amount of funds available for distribution and the expense involved in winding down the Estates and administering Distributions, I believe and am advised by the Debtors' professionals that recoveries will be maximized by consolidating the Assets and liabilities of the Debtors as provided in the Combined Plan and Disclosure Statement.

*Section 1129(a)(6)*

29. ***The Combined Disclosure Statement and Plan Does Not Contain Any Rate Changes Subject to the Jurisdiction of Any Governmental Regulatory Commission.*** The Debtors' business does not involve the establishment of rates subject to approval of any governmental regulatory commission, and, as a result, the Combined Disclosure Statement and Plan does not propose the change of any such rates.

*Section 1129(a)(7)*

30. ***The Combined Disclosure Statement and Plan is in the Best Interests of Creditors***. As described in Section 4.8 of the Combined Disclosure Statement and Plan, entitled "Best Interests Test and Liquidation Analysis," and the liquidation analysis attached as Exhibit A

to the Combined Disclosure Statement and Plan, because the Combined Disclosure Statement and Plan is a liquidating plan, the "best interests" test is substantially similar to the estimates of the results of the chapter 11 liquidation contemplated by the Combined Disclosure Statement and Plan. The Global Settlement is the source of significant additional recoveries for Allowed General Unsecured Claims, and such settlement would not be available to Holders of such claims in a conversion to a chapter 7 case. Conversely, pursuant to the terms of the Combined Disclosure Statement and Plan, the DIP Lenders have consented to confirmation of the Combined Disclosure Statement and Plan, which utilizes the proceeds of the Assets for purposes of satisfying all Allowed Administrative Claims, Other Secured Claims, Priority Tax Claims, and Priority Non-Tax Claims, and provides for distributions to Holders of Allowed General Unsecured Claims.

31. Further, I understand from discussions with the Debtors' advisors that the costs of liquidation under chapter 7 of the Bankruptcy Code would include the compensation of a trustee, as well as the costs of counsel and other professionals retained by the trustee. I believe that such amount would exceed the amount of expenses that would be incurred in implementing the Combined Disclosure Statement and Plan and winding up the affairs of the Debtors. Conversion also would likely delay the liquidation and distribution process. The Estates would also be obligated to pay all unpaid expenses incurred by the Debtors during the Chapter 11 Cases (such as compensation for professionals) that are allowed in the chapter 7 cases.

32. Accordingly, it is my belief that Holders of Allowed Claims would receive less than anticipated under the Combined Disclosure Statement and Plan if the Chapter 11 Cases were converted to chapter 7 cases, and therefore, the classification and treatment of Claims and Interests in the Combined Disclosure Statement and Plan complies with Bankruptcy Code section 1129(a)(7). Based on the foregoing, I believe that the Combined Disclosure Statement and Plan

satisfies the "best interests test" because no creditor or equity holder in Classes 3 through 6 (the Impaired classes under the Combined Disclosure Statement and Plan) would receive or retain property on account of its Claim or Interest under a liquidation scenario of a value that is more than such party will receive under the Combined Disclosure Statement and Plan.

*Sections 1129(a)(8) and 1129(b)*

33. ***The Combined Disclosure Statement and Plan Has Been Accepted by an Impaired Voting Class and Satisfies the "Cramdown" Requirements under Bankruptcy Code Section 1129(b) for Non-Accepting Classes.*** I understand that Classes 1 and 2 are deemed to accept in accordance with the Combined Disclosure Statement and Plan. I understand that Class 3 voted to accept the Combined Disclosure Statement and Plan. I understand that Classes 4 and 5 (the "Deemed Rejecting Classes") are deemed to reject the Combined Disclosure Statement and Plan. As such, I am advised that the Combined Disclosure Statement and Plan does not meet the requirements of section 1129(a)(8) of the Bankruptcy Code, but that the Combined Disclosure Statement and Plan can still be confirmed because the Combined Disclosure Statement and Plan satisfies the "cram down" provisions of 1129(b) of the Bankruptcy Code.

34. No Claims or Interests junior to the Deemed Rejecting Classes are receiving or retaining any property under the Combined Disclosure Statement and Plan, and on the basis of my discussions with the Debtors' legal advisors, I believe that the Combined Disclosure Statement and Plan satisfies the "cram down" requirements. Furthermore, as evidenced by the estimated recoveries set forth in the Combined Disclosure Statement and Plan, no Class of Claims or Interests are receiving more than full payment on account of their Claims. Additionally, the Combined Disclosure Statement and Plan provides for similarly situated creditors to receive the same

treatment and as a result, I do not believe the Combined Disclosure Statement and Plan unfairly discriminates between any creditors. Accordingly, I believe that the cram down test of section 1129(b) of the Bankruptcy Code is satisfied.

*Section 1129(a)(9)*

35. ***The Combined Disclosure Statement and Plan Provides for Payment in Full of All Allowed Priority Claims.*** I have been advised and believe that the Combined Disclosure Statement and Plan's treatment of Administrative Expense Claims, Other Secured Claims, Professional Fee Claims, Priority Tax Claims, and Priority Non-Tax Claims satisfies section 1129(a)(9) of the Bankruptcy Code.

*Section 1129(a)(10)*

36. ***At Least One Impaired, Non-Insider Class Has Accepted the Plan.*** Holders of Class 3 Claims voted to accept the Combined Disclosure Statement and Plan without counting any acceptance of an insider.

*Section 1129(a)(11)*

37. ***The Combined Disclosure Statement and Plan is Feasible.*** The Combined Disclosure Statement and Plan is a plan of liquidation designed to maximize the value of the Debtors' Assets, including the Retained Causes of Action, and to distribute the proceeds in an orderly and efficient manner to the holders of Allowed Claims in accordance with the Combined Disclosure Statement and Plan. Based on a review of actual claims asserted against the Debtors, the Debtors expect to have sufficient Cash, and any proceeds of the Retained Causes of Action to ensure that the holders of Allowed Administrative Expense Claims, Professional Fee Claims, Priority Tax Claims, Other Secured Claims, and Priority Non-Tax Claims will be Paid in Full. Any remaining Cash will be distributed to Holders of Allowed General Unsecured Claims in

32385185.2

15

accordance with the Combined Disclosure Statement and Plan. Because the Debtors are liquidating their remaining assets, I do not believe that the Debtors will require further financial reorganization following the Effective Date. Accordingly, the Combined Disclosure Statement and Plan satisfies the requirements of feasibility under Bankruptcy Code section 1129(a)(11).

*Section 1129(a)(12)*

38.     ***All Statutory Fees Have or Will be Paid.*** The Combined Disclosure Statement and Plan provides that all fees required under 28 U.S.C. § 1930 will be paid on or before the Effective Date, or when such fees come due in the ordinary course, and I believe the Debtors or the post-Effective Date Debtors, as applicable, have adequate means to make such payments.

*Section 1129(a)(13)*

39.     ***The Combined Disclosure Statement and Plan Appropriately Treats Retiree Benefits***. The Debtors do not have any retiree benefit programs within the meaning of section 1114 of the Bankruptcy Code.

*Section 1129(c)*

40.     The Combined Disclosure Statement and Plan is the only chapter 11 plan that has been proposed in the Chapter 11 Cases.

*Section 1129(d)*

41.     The Combined Disclosure Statement and Plan does not have as one of its principal purposes the avoidance of taxes or avoidance of the requirements of Section 5 of the Securities Act of 1933, and I am unaware of any filing by any governmental agency asserting such avoidance.

*Section 1123(b)(2)*

42.     Article XII of the Combined Disclosure Statement and Plan provides for the rejection, and in some cases assumption, of Executory Contracts that have not been previously

assumed or rejected under section 365 of the Bankruptcy Code. The Debtors have reviewed their executory contracts and unexpired leases and determined which executory contracts and unexpired leases to assume or reject in connection with the Combined Disclosure Statement and Plan, and I believe that they have exercised sound business judgment in identifying the Executory Contracts to be assumed or rejected.

*Section 1123(b)(3)*

43. I have been informed that, in accordance with section 1123(b)(1) of the Bankruptcy Code, the Combined Disclosure Statement and Plan provides for the settlement and/or adjustment of certain claims or interests belonging to the Debtors or their estates.

44. In particular, the Global Settlement, which is a necessary component of the Combined Disclosure Statement and Plan, represents a fair and reasonable resolution of all disputes between the Debtors, the Committee, and the DIP Lenders, as provided for in the Combined Disclosure Statement and Plan. The Global Settlement, as set forth in the Combined Disclosure Statement and Plan: (i) is fair and equitable; (ii) obviates the expense, delay, inconvenience, and uncertainty that would be incurred as a result of certain litigation; and (iii) advances the paramount interest of creditors. The Global Settlement, which is a comprehensive resolution negotiated between the Debtors, the Committee, and the DIP Lenders, increases expected recoveries for Holders of Allowed General Unsecured Claims and paves the wave for an efficient and consensual resolution of the Chapter 11 Cases and confirmation of the Combined Disclosure Statement and Plan. For these reasons, I believe that confirmation of the Combined Disclosure Statement and Plan as it pertains to the Global Settlement is necessary and appropriate.

## CONCLUSION

45. I believe, in my business judgment, that the Combined Disclosure Statement and Plan will enable the Holders of Allowed Claims to realize the highest possible recoveries under

the circumstances of the Chapter 11 Cases. I therefore conclude, in my business judgment, that the Combined Disclosure Statement and Plan is in the best interests of all creditors, and respectfully request that the Court enter an order confirming the Combined Disclosure Statement and Plan.

I certify under penalty of perjury that, based upon my knowledge, information, and belief as set forth in this Declaration, the foregoing is true and correct.

Dated: December 17, 2024

*/s/ Brett M. Anderson*
Brett M. Anderson
Deputy Chief Restructuring Officer

32385185.2